IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RILEY GAINES, *et al.*

     *Plaintiffs,*

v.

NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION, *et al.*,

     *Defendants.*

Civil Action No.
1:24-cv-1109-MHC

## STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

| | |
|---|---|
| Josh Belinfante | 047399 |
| Vincent R. Russo | 242628 |
| Edward A. Bedard | 926148 |
| Javier Pico Prats | 664717 |
| Anna Edmondson | 289667 |

ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
  vrusso@robbinsfirm.com
  ebedard@robbinsfirm.com
  jpicoprats@robbinsfirm.com
  aedmondson@robbinsfirm.com

*Counsel for State Defendants*

# TABLE OF CONTENTS

Introduction ................................................................................................2

Background ................................................................................................2

  I.   The Parties. ........................................................................................2

  II.  Lia Thomas, the NCAA's Transgender Eligibility Policies, and the
       2022 NCAA Women's Swimming & Diving Championships. ..................5

  III. Plaintiffs' Claims Against State Defendants. ..........................................6

Standard of Review ....................................................................................7

Argument ...................................................................................................8

  I.   Plaintiffs Lack Article III Standing to Pursue Claims Against
       State Defendants. ................................................................................8

      A.   Plaintiffs have not demonstrated an injury-in-fact. ...........................8

      B.   Plaintiffs fail to establish that their speculative injuries are
           traceable to the State Defendants or would be redressable by
           an order against them. .................................................................11

  II.  Plaintiffs' Claims for Damages Against State Defendants Fail. ............15

      A.   Sovereign immunity bars Plaintiffs' non-Title IX claims
           against the Board of Regents and the Individual Defendants
           in their official capacities. .............................................................15

      B.   Damages are not available against the Individual State
           Defendants in their individual capacities. ......................................15

  III. Plaintiffs Fail to State a Title IX Claim Against State
       Defendants. ......................................................................................17

  IV. Plaintiffs' Equal Protection Claims Against the Individual State
       Defendants Fail. ...............................................................................21

      A.   Plaintiffs have failed to identify any "state action"
           attributable to State Defendants that was the proximate
           cause of Plaintiffs' injuries. ...........................................................21

      B.   Individual Defendants did not engage in "intentional
           discrimination." ...........................................................................23

  V.   Plaintiffs' "Right to Bodily Privacy" Claim Fails Because There Is
       No Allegation of State Coercion. ......................................................24

Conclusion ...............................................................................................25

## INTRODUCTION

Plaintiffs dislike certain NCAA policies regarding the participation of transgender athletes in NCAA events. Given this, it is not surprising that their 154-page complaint seeks injunctive and monetary relief against the NCAA. What is far less understandable is why the complaint also names public officials and institutions of the State of Georgia when none of those parties created, enforced, or advocated for the challenged NCAA policies. Indeed, the State Defendants (all defendants but the NCAA) generally share many of the Plaintiffs' concerns about the NCAA's policies at issue. Ultimately, however, the issues Plaintiffs have with the NCAA are not the fault of the State Defendants, who are little more than collateral damage in this lawsuit, as they do not control the NCAA's policies any more than Plaintiffs do. Consequently, based on well-established threshold defenses and binding precedent discussed below, the complaint should be dismissed against the State Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

**I.   The Parties.**

**Plaintiffs.** Plaintiffs are 16 current and former female[1] collegiate

---

[1] As in the complaint, in this motion, the terms "male" and "female" refer to a person's biological sex (or, as others have passively put it, their "sex assigned at birth"). *See* (Doc. 1 at 5 n.1.)

athletes who competed or are competing at various NCAA-member schools in Divisions I, II, and III. The Plaintiffs can be broken down into the following groups:

- **Ineligible Plaintiffs.** Kylee Alons, Riley Gaines, Reka Gyorgy, Katilynn Wheeler, and Swimmer B are former swimmers who each competed in the 2022 NCAA Women's Division I Swimming and Diving Championships (the "2022 Championships"). (Compl. ¶¶ 117–20.) None have remaining NCAA eligibility. (*Id.* ¶ 133.)

- **SEC Plaintiffs.** A second group of Plaintiffs—soccer and track athlete Ainsley Ezren (University of Arkansas) and Ellie Eades (University of Kentucky)—still have remaining eligibility to compete in the NCAA and attend a school in the Southeastern Conference ("SEC"). (*Id.* ¶¶ 121–22.)

- **Division II and III Plaintiffs.** The third group still have remaining NCAA eligibility in Division II or III. Lily Mullens, Carter Satterfield, Katie Blankinship, Susanna Price, Kate Pearson, and Julianna Morrow are all current students at Roanoke College in Virginia and compete on the Roanoke's women's swimming team in Division III (the "Roanoke Swimmers"). (*Id.* ¶¶ 123–28.) Track Athlete A competes at an undisclosed Division III school in the All-Atlantic Region Track & Field Conference, which does not include any academic institutions in Georgia. *Id.* ¶¶ 129, 541. Volleyball Athlete A competes at an undisclosed NCAA Division II school. (*Id.* ¶ 130.)

- **Swimmer A.** Swimmer A retains eligibility at an unidentified NCAA-affiliated academic institution, and she competed in the 2022 Women's NCAA Swimming Championships. (*Id.* ¶¶ 115; 133.)

**State Defendants.** In addition to the NCAA, the complaint asserts claims against the (1) the Board of Regents of the University System of Georgia ("Board of Regents"), which governs and manages Georgia's public colleges and universities, including academic institutions named in this suit; (2) the

– 3 –

Georgia Institute of Technology ("Georgia Tech"); (3) the University of Georgia ("UGA"); (4) the University of North Georgia ("UNG"); (5) Georgia Tech President, Ángel Cabrera, and (6) 23 current and former members of the Board of Regents, and their unnamed agents and employees included as John Does 26-50, collectively referred to as the "Individual Defendants." (*Id.* ¶¶ 92, 146.)[2]

**The NCAA.** The NCAA is a voluntary association comprised of over 1,100 member colleges and universities. (Compl. ¶ 17); *see also NCAA v. Tarkanian*, 488 U.S. 179, 183 (1988). NCAA members pay dues to the organization. (*Id.* ¶ 138.) Among other things, the NCAA: (1) "sponsor[s], regulate[s] and/or organize[s] competitions and NCAA national championships in which NCAA policies and rules are applied" (*id.* ¶ 142); and (2) "issues and enforces" and indeed "dictate[s]" eligibility rules in collegiate sport like the transgender eligibility policies (the "2022 Transgender Policies") at issue in this lawsuit. (*Id.* ¶¶ 6, 137, 140-41.) The complaint alleges that the NCAA has demonstrated the "ability to obtain compliance with its rules from members."

---

[2] Georgia Tech, UGA, and UNG (as well as the "University System of Georgia") are not proper parties because they are not entities which, under Georgia law, are capable of suing and being sued. *Picou v. NCAA*, No. 1:20-CV-4697-MHC, 2021 WL 3400593, at *1 (N.D. Ga. Feb. 22, 2021) (Cohen, J.) ("the Board of Regents is the proper party to sue … not a member institution"). Per discussions between counsel, State Defendants do not move to dismiss on this ground at this time. If Count I survives State Defendants' motion to dismiss (and it should not), State Defendants will not oppose Plaintiffs amending their complaint to address this issue.

(*Id.* ¶ 21.) This is, in part, because as a condition of membership in the NCAA (and in order to have access to NCAA championship events), NCAA members must accept what "the NCAA decides to permit (or restrict) from all students and staff members involved in college athletics." (*Id.* ¶ 140.)

## II.   Lia Thomas, the NCAA's Transgender Eligibility Policies, and the 2022 NCAA Women's Swimming & Diving Championships.

In the fall of 2021, Lia Thomas—a senior swimmer from the University of Pennsylvania ("Penn")—began competing in women's Division I swimming events. (Compl. ¶¶ 13–16.) Thomas previously competed on Penn's men's swimming team. (*Id* ¶ 15.) On the Penn women's team, Thomas experienced immediate success and became the number one ranked swimmer in several women's freestyle swimming events. (*Id.* ¶¶ 14-15.) Thomas's success in 2021 increased attention on the NCAA's 2010 Policy.[3] (*Id.* ¶ 327–28.)

In January 2022, less than two months before the start of the 2022 Championships, the NCAA revised the 2010 Policy and adopted the 2022 Transgender Policies. (*Id.* ¶¶ 228, 336–37.) The new policies adopt a "sport-by-sport approach," where eligibility rules differ by sport and were to be determined by the policy of the sport's national governing body, international federation, or the International Olympic Committee. (*Id.* ¶¶ 228–29.) Plaintiffs

---

[3] The NCAA's 2010 Transgender Participation Policy required only one year of testosterone suppression therapy. (Compl. ¶ 318.)

contend, however that the *NCAA* has not achieved "substantial alignment" with at least the Olympic Movement's rules. (*Id.* ¶ 230.)

On March 2, 2022, the NCAA identified 281 swimmers, including Thomas, who qualified for the 2022 Championships that were to be held at Georgia Tech on March 16–19, 2022. (Compl. ¶¶ 143, 351, 353.) Thomas won or otherwise placed in many of the women's events in the 2022 Championships. (*Id.* ¶¶ 418–518.) The complaint also alleges, "upon information and belief [an] agreement" between the NCAA and some State Defendants, including Georgia Tech, to designate (but not mark) the male and female locker rooms as "'unisex' in order to permit Thomas uninhibited access" to rooms that were "used by, and designated for" female athletes, and that Thomas did use the rooms along with the Plaintiffs. (*Id.* ¶¶ 368-71.) Plaintiffs do not allege that any State Defendant suggested, required, or encouraged Thomas to do so.

### III. Plaintiffs' Claims Against State Defendants.

The complaint raises three counts; each is against the NCAA, and this brief addresses only those against the State Defendants, which vary. As to the State Defendants: Count I seeks injunctive relief only against the University System of Georgia, Georgia Tech, UGA, and UNG for alleged violations of Title IX caused by Thomas's competing in the 2022 Championships and the use of the unisex locker room. (Compl. ¶¶ 582-620.) Citing the same circumstances, Count II's heading alleges violations of Title IX (against the University System

of Georgia and Georgia Tech for damages and perhaps injunctive relief, and against UGA and UNG for injunctive relief only), and the Equal Protection Clause against the Individual Defendants (for injunctive and monetary relief). (*Id.* ¶¶ 621-28.) Count III seeks damages against the Individual Defendants based on Thomas's use of the unisex locker room and what the Plaintiffs argue is a constitutional right to bodily privacy. (*Id.* ¶¶ 629-37.)

## STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) can be "based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack is based on the complaint alone, and the Rule 12(b)(6) standard of review applies. *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1281 (N.D. Ga. 2023) (Cohen, J.). A factual attack, however, may rely on "extrinsic evidence," which courts are "'free to weigh.'" *Id.* (citations omitted).

Rule 12(b)(6) mandates the dismissal of complaints that lack sufficient factual allegations to state a facially "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The "sheer possibility" of unlawful action does not demonstrate plausibility. *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022). While the Court must accept all well-pleaded allegations as true, this deference does not apply to allegations constituting: "labels and

conclusions," "naked assertion[s devoid of] further factual enhancement," or "formulaic recitation[s] of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

## ARGUMENT

### I. Plaintiffs Lack Article III Standing to Pursue Claims Against State Defendants.

The requirement of Article III standing is "perhaps the most important of the jurisdictional requirements," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and it must be considered first. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The burden of demonstrating standing is individualized and imposed on each Plaintiff "for each claim." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotations omitted). Plaintiffs have failed to do so under Rule 12(b)(1), and this matters even at "the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,570 n.5 (1992). Specifically, the complaint fails to allege sufficient facts—as a facial and factual matter—to establish a (1) "concrete, particularized, and actual or imminent" injury in fact; (2) traceable to the State Defendants; (3) which may be redressed by an order of this Court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

### A. Plaintiffs have not demonstrated an injury-in-fact.

Claims for prospective injunctive relief must be based on a "material" or

"substantial" risk of harm. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 928, 933 (11th Cir. 2020) (en banc). And, the "threatened injuries [must be] "'certainly impending.'" *Jacobson v. Fla. Sec. of State*, 974 F.3d 1236, 1245 (2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). Plaintiffs have not shown this and, instead, allege only insufficient "conclusory allegations of hypothetical and speculative future harm based on an alleged increased risk." *Everhart v. Colonial Pipeline Co.*, 1:21-CV-3559-MHC, 2022 WL 3699967, at *4 (N.D. Ga. July 22, 2022) (addressing identity theft).

**Ineligible Plaintiffs.** Because they are admittedly no longer eligible to compete in future NCAA competitions, the Ineligible Plaintiffs cannot establish any risk of future harm, much less an impending or material one. *See* (Compl. ¶ 133.) This is fatal to their requests for prospective injunctive relief.

**The Division II and III Plaintiffs.** None of the Division II and III Plaintiffs have alleged an injury for damages, as none are alleged to have utilized the unisex bathroom during the 2022 Championships. (Compl. ¶ 111.) Their other claims for damages and injunctive relief also fail, because none allege that they actually competed against a transgender athlete at an event hosted or that may be hosted in Georgia, and only Track Athlete A, alleges that she will be compelled to compete against a transgender athlete in the near future. (Compl. ¶ 546.) By contrast, the Roanoke Swimmers' alleged injury is based on a transgender athlete who intended to join the women's team but

"decided to withdraw from participating." (*Id.* ¶¶ 523-24, 540.)

Volleyball Player A's alleged injury is even more attenuated and rests on seven layers of "hypothetical and speculative future harm[s]." *Everhart*, 2022 WL 3699967, at *4. Specifically: (1) Volleyball Player A will continue to play volleyball on her women's team throughout her remaining years of eligibility; (2) during that time, a currently unknown male athlete presently "playing volleyball at the high school level" will seek to play on a collegiate woman's volleyball team; (3) an NCAA member institution will "recruit[]" him to play on a women's volleyball team; (4) he will choose to enroll in a Division II institution; (5) where the unnamed male athlete will make and play for the school's women's volleyball team; (6) at some unidentified point in time, the hypothetical Division II women's volleyball team with the male athlete will compete against Volleyball Player A's team; and (7) that competition will occur at one of Georgia's colleges and universities. (Compl. ¶¶ 549-50.) Each of these *potential* occurrences demonstrate that Volleyball Player A's alleged speculative and hypothetical injury cannot satisfy Eleventh Circuit precedent. *See Jacobson*, 974 F.3d at 1245; *Muransky*, 979 F.3d at 927.

**SEC Plaintiffs.** The SEC Plaintiffs also do not allege that they have been injured by any potential past competitions against transgender athletes or that they will be compelled to compete against a transgender athlete in the

future.[4] This precludes any claim for monetary and injunctive relief. Under these circumstances, the SEC Plaintiffs' alleged injuries rely on the same hypotheticals as Volleyball Player A, with the exception being there is a greater likelihood that the SEC Plaintiffs will compete in the State of Georgia given that UGA is in the SEC.[5] (Compl. ¶¶ 554–55.) The injuries are not "certainly impending" as required by *Jacobson*. 974 F.3d at 1245.

**Swimmer A.** All that is known about Swimmer A is that she is a United States resident who competed in the 2022 Championships. (Comp. ¶¶ 115, 131.) These bare allegations require even more speculation than those of Volleyball Player A, including that Swimmer A maintains any years of NCAA eligibility, and that she intends to continue swimming at her unidentified academic institution. This is dispositive as to all requested forms of relief.

### B. Plaintiffs fail to establish that their speculative injuries are traceable to the State Defendants or would be redressable by an order against them.

Even if Plaintiffs alleged cognizable injuries for relief, the complaint has not demonstrated that such injuries (whether for injunctive or monetary relief)

---

[4] The SEC Plaintiffs claim they may have unknowingly competed against a transgender athlete on an SEC school's women's team. (Compl. ¶ 554.)

[5] The complaint cites transgender athletes playing competing on teams other than those in Division I like the SEC Plaintiffs. (Compl. ¶ 552.)

are traceable to or redressable by the State Defendants.[6] Article III's traceability standard requires the "injury [to] result from the defendant's action and is not the result of an independent action of some third party." *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024). Put simply, Plaintiffs must identify acts or omissions of the State Defendants—and not the NCAA or Thomas or Roanoke College—that caused their alleged injuries. Similarly, redressability requires any potential "judgment on the defendant— not an absent third party—[to] redresses the plaintiff's injury, whether directly or indirectly." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (emphasis in original). Plaintiffs' claims against the State Defendants do not satisfy these burdens.

**Traceability.** For several reasons, Plaintiffs have not established traceability. First, the State Defendants did not create the NCAA's Transgender Policies; the NCAA "issue[d] it." (Compl. ¶ 6; *see also, id.* ¶¶ 21, 137, 140-41). Second, "the NCAA permitted Thomas to compete for the remainder of the 2022 season," including at the 2022 Championships. (*Id.* ¶¶ 345, 351.) The State Defendants did not, nor is it alleged that the State

---

[6] Pursuant to Federal Rule of Civil Procedure 25(b) and binding precedent, prospective injunctive relief is not available against those Individual Defendants who are no longer members of the Board of Regents: Aldridge, Hopkins, Langford, Little, Perez, Shailendra, and Waters. *See Daker v. Owens*, 6:14-CV-47, 2021 WL 983136, at *2 n.3 (S.D. Ga. Mar. 16, 2021).

Defendants caused the NCAA to deem Thomas eligible to compete against women swimmers, nor could it. Third, and relatedly, the NCAA (and not the State Defendants) enforce the Transgender Policies at NCAA events, wherever they are hosted. (*Id.*) Fourth, the complaint concedes that the NCAA has been able to "obtain compliance with its rules from its members," and that it "exists in part to dictate and enforce [its] rules." (*Id.* ¶ 21, 137.) The Roanoke Swimmer's allegations are based on an individual Roanoke College student and that administration's decision to adopt the Transgender Policies. (Compl. ¶¶ 524, 529.) Thus, Plaintiffs themselves acknowledge that the State Defendants did not create the Transgender Policies and lack the discretion to require different ones at NCAA events even as the State Defendants generally share some of Plaintiffs' concerns. Finally, the complaint does not allege that the State Defendants control where, geographically, Thomas competes.

Any remaining doubt is resolved by the NCAA policies cited in the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (requiring consideration of documents referenced in a complaint when reviewing a motion under Rule 12(b)(6)). For example, the "NCAA Transgender Student-Athlete Participation Policy Phase Two" provides that "student athletes and athletic staff are *directed by the NCAA* [to the website with the policy] *in order to comply with the NCAA's policies*." (Compl. ¶¶ 248 n.36, 249.) (emphasis added). Compliance is mandatory: "a school *must*, on behalf of a

trans woman student-athlete intending to compete in an NCAA women's sport during the 2022-23 and 2023-24 academic years, establish eligibility of the student-athlete." (*Id.* (emphasis added).) Other provisions of the Transgender Policies' "eligibility requirements apply to *all* NCAA competition [and] to *any* transgender woman competing on an NCAA women's team." (*Id.* ¶ 252 n.37.)

Under these circumstances, the Plaintiffs' alleged injuries do not arise from some act of the State Defendants but rather from the NCAA's (or Roanoke College's) independent decisions to create, mandate, and/or enforce the Transgender Policies that allowed Thomas to compete in women's swimming events or have the opportunity to share a locker room with the Plaintiffs.[7] In similar circumstances the Eleventh Circuit said that when parties like the State Defendants do "not enforce the challenged law," the alleged injuries are not "fairly traceable to the[m] nor redressable by a judgment against" them. *Jacobson*, 974 F.3d at 1241.

**Redressability.** the Plaintiffs' alleged injuries are also not redressable by State Defendants who do not make the rules for the collegiate sports, including those that take place at Georgia's public academic institutions. Consequently, an order against the State Defendants would not change the

---

[7] In fact, if this Court only ordered the State Defendants to disregard the NCAA's policies, it is at least conceivable that Georgia's own student athletes would be deprived of the opportunity to compete at all in the events Plaintiffs understandably describe "significant" and "integral." (Compl. ¶¶ 45-46, 453.)

NCAA's Transgender Policies and only prevent the State Defendants from hosting NCAA championship events and potentially preclude Georgia's public university student athletes from competing in NCAA-sanctioned competitions. In short, Plaintiffs' declaratory and injunctive relief is only available with an order against the entity that created and enforces the Transgender Policies: the NCAA.

## II. Plaintiffs' Claims for Damages Against State Defendants Fail.

### A. Sovereign immunity bars Plaintiffs' non-Title IX claims against the Board of Regents and the Individual Defendants in their official capacities.

The Board of Regents is the state entity "usually entitled to Eleventh Amendment immunity." *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012). Thus, to the extent any of Plaintiffs' claims under 42 U.S.C. § 1983 are against the Board of Regents or the Individual Defendants in their official capacities, they fail: "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Schopler v. Bliss*, 903 F.2d 1373, 1378-79 (11th Cir. 1990) (addressing Fourteenth Amendment).

### B. Damages are not available against the Individual State Defendants in their individual capacities.

Plaintiffs' claims for monetary damages against the Individual State Defendants in their individual capacities also fail. (Compl. ¶¶ 626-28.) Those

arising under Title IX fail on statutory grounds, because the statute does not apply to individuals but only "funding recipients." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007).

The constitutional claims fail for a different reason: the doctrine of qualified immunity. It "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Rights are clearly established only if they are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194 (2001). In the Eleventh Circuit, whether a right is sufficiently apparent will in "many—if not most—instances … be established by … preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that [courts] can say every objectively reasonable officer would have been on 'fair notice' that the behavior violated a constitutional right." *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). Qualified immunity can be raised on a motion to dismiss, and once raised, the burden of persuasion on that issue is on the plaintiff." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Plaintiffs cannot demonstrate that the law was clearly established that the Constitution is violated when transgender athletes either compete in

women's sports or use unisex locker rooms potentially with women athletes. The complaint relies heavily on *Adams by & through Kasper v. School Board of St. Johns County*, 57 F.4th 791, 807 (11th Cir. 2022), but that decision was issued months after the 2022 Championships, and it addressed a policy that prevented transgendered students from using a bathroom of their choice. Nothing shows that the alleged "violation of the right to bodily privacy" was clearly established either. Indeed, Plaintiffs do not even identify whether the supposed right applies outside of situations where a state maintains custody over the individual (e.g., prisons, foster care). (Compl. ¶ 107 (citing *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).) This is not a close call.

## III.  Plaintiffs Fail to State a Title IX Claim Against State Defendants.

In Counts I and II of the complaint, Plaintiffs seek injunctive (and potentially monetary) relief under Title IX based on the NCAA's conduct and allegations that the State Defendants: (1) implemented the Transgender Policies; (2) authorized Thomas and other men to compete in collegiate women's competitions; (3) granted awards, trophies and other accolades to Thomas at the 2022 Championships; and (4) provided unisex locker rooms that Thomas and some of the Plaintiffs utilized. (Compl. ¶¶ 614.) These fail, however, because the NCAA's policies, including those at issue here, are the NCAA's and not the State Defendants' policies.

Plaintiffs' Title IX claim appears to have three elements: (1) the

plaintiffs were excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; "(2) the exclusion was on the basis of sex; and (3) … the defendant receives federal financial assistance."[8] *Palmer ex rel. Palmer v. Santa Rosa Cnty.*, Fla., Sch. Bd., 3:05CV218/MCR, 2005 WL 3338724, at *4 (N.D. Fla. Dec. 8, 2005). In another context, the Supreme Court said the "simple 'but for' common law causation test … supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action … includ[ing] federal antidiscrimination laws." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020) (addressing 42 U.S.C. § 1981).

Applying this precedent warrants dismissing the Title IX claims. First, there is no allegation that State Defendants—by merely hosting the 2022 Championships or anything else—"implement[ed]" the NCAA's Transgender Policies, "authoriz[ed]" biological men to compete in women's collegiate competitions, or "grant[ed]" trophies or other awards to Thomas or other

---

[8] Most Title IX cases arise in different contexts. *See, e.g.*, *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282 (2007) (sexual harassment); *Joseph v. Bd. of Regents of Univ. Sys. of Georgia*, 1:20-CV-00502-VMC, 2023 WL 2393974, at *32 (N.D. Ga. Mar. 3, 2023) (disparity of resources); *Hall v. Alabama State Univ.*, 2:16-CV-593-GMB, 2019 WL 137593, at *1 (M.D. Ala. Jan. 8, 2019) (retaliation). These distinctions matter, as "separate and distinct type[s] of [Title IX] claim[s] [are] to be analyzed separately." *Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1122 (M.D. Ala. 1997).

transgender athletes. (Compl. ¶¶ 614(a)-(c).) Indeed, the complaint acknowledges that the NCAA did so. (Compl. ¶¶ 91, 210, 347, 585, 610.)

Only four of the 637 paragraphs in the complaint even suggest the State Defendants (and not the NCAA) implement the Transgender Policies. (*Id.* ¶¶ 93, 94, 98, 614, 624.) The allegations, however, do not explain *how* the State Defendants did so, or *how* the State Defendants supposedly caused Plaintiffs' injuries; consequently, they are conclusory and cannot overcome a motion to dismiss. *See, e.g.*, *Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*, 850 F. Supp. 2d 1371, 1373 (S.D. Ga. 2011), *aff'd*, 434 Fed. Appx. 826 (11th Cir. 2011) (finding allegations conclusory that did not explain how a defendant was liable). The complaint is also void of any allegations on how the State Defendants, as opposed to the NCAA, "authoriz[ed]" Thomas and other unidentified transgender athletes to use the same locker rooms and restrooms as Plaintiffs, much less does the complaint allege that the State Defendants compelled any transgender athletes to do so. Here again, the complaint acknowledges that the NCAA mandated unisex locker rooms, and any allegations about the State Defendants are conclusory at best. *See Arch Ins. Co.*, 850 F. Supp. 2d at 1373.

Second, Plaintiffs erroneously rely on federal regulations to provide the basis for the substantive basis for their Title IX claim, but "private rights of action to enforce federal law must be created by Congress," *Alexander v.*

*Sandoval*, 532 U.S. 275, 286 (2001). (Compl. ¶¶ 605, 607-08.)

Third, the Plaintiffs have not alleged that the State Defendants (or which of them) had actual notice of the Plaintiffs' concerns prior to the 2022 Championships. This provides another bar to at least Plaintiffs' claims for damages (to the extent made) under Title IX in Count II.[9] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998).

Finally, the Plaintiffs have not sufficiently alleged that, but for the acts of the State Defendants, they would not have suffered their alleged injuries. As shown, the Plaintiffs would have undergone the same experience at the 2022 Championships if different NCAA members hosted the event. The complaint recognizes that, unlike State Defendants, NCAA members in the Ivy League agreed with and enthusiastically adopted the NCAA's Transgender Policies. (Compl. ¶ 335.) This further demonstrates that the cause of Plaintiffs' alleged injuries are Thomas's decision to use the same locker room as the Plaintiffs and the NCAA's decisions to adopt and enforce the Transgender Policies. *Comcast Corp.*, 589 U.S. at 332. The State Defendants were not involved. Finally, the complaint does not allege that the State Defendants were deliberately indifferent to the Plaintiffs' concerns, which is the standard

---

[9] The Eleventh Circuit has not decided if *Gebser's* actual-notice requirement applies to Title IX claims that seek only injunctive relief, but there is no reason it should not apply in this context. *Kocsis v. Florida State Univ. Bd. of Trustees*, 788 Fed. Appx. 680, 684 n.2 (11th Cir. 2019).

applicable in at least some Title IX claims. *See Sauls v. Pierce Cty. Sch. Dist.*,

399 F.3d 1279 (11th Cir. 2005) (addressing harassment claim).

**IV. Plaintiffs' Equal Protection Claims Against the Individual State Defendants Fail.**

**A. Plaintiffs have failed to identify any "state action" attributable to State Defendants that was the proximate cause of Plaintiffs' injuries.**

Plaintiffs allege constitutional violations pursuant to 42 U.S.C. § 1983.

To state a claim under § 1983, Plaintiffs must allege "an affirmative causal

relationship between the action taken by a particular person 'under color of

state law' and the constitutional deprivation.'" *Fair Fight Action, Inc. v.

Raffensperger*, 634 F. Supp. 3d 1128, 1199 (N.D. Ga. 2022) (citing *Williams v.

Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (additional citations omitted)).

In this context, the "state action" requirements of § 1983 and the Fourteenth

Amendment are identical. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929

(1982). Consequently, a state can be held responsible for a private decision

"only when it has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the choice must in law be deemed

to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also

Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982). A state actor's "mere

approval of or acquiescence in the initiatives of a private party" is not enough

to establish liability. *Blum*, 457 U.S. at 1004. Alternatively, a private entity

can be deemed a state actor if it has exercised powers that are "traditionally the exclusive prerogative of the state." *Id.* at 1005. But importantly:

> It is not enough that an institution is highly regulated and subsidized by a state. If the state in its regulatory or subsidizing function does not order or cause the action complained of, and the function is not one traditionally reserved to the state, there is no state action.

*Arlosoroff v. NCAA*, 746 F.2d 1019, 1021–22 (4th Cir.1984) (emphasis added). As other courts have held, "regulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function." *McHale v. Cornell University*, 620 F. Supp. 67, 70 (N.D.N.Y. 1985); *see also NCAA v. Alston*, 594 U.S. 69, 74-79 (2021) (discussing the history of intercollegiate sports). Here, Plaintiffs fail to allege facts that the Individual Defendants exercised "coercive power" or provided "significant encouragement" for the NCAA's Transgender Policies.

The question is whether the Individual Defendants' participation, if any, in the NCAA—a voluntary association of private and public institutions—and their enforcement of NCAA rules constitute "state action." For the State Defendants, the answer is "no," regardless of whether the NCAA is deemed a state actor. Either way, the State Defendants lack the "power to make official decisions" about NCAA policies and, therefore, are not the official "decisionmaker[s]" needed to allege liability. *Kamensky v. Hillsborough*

*County*, 148 Fed. Appx. 878, 879 (11th Cir. 2005) (citing *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir.2003)). As an example, the complaint does not claim that any of the Individual Defendants have the ability to decide eligibility policies for any teams other than Georgia's public college and universities, but it seeks to hold the State Defendants liable for decisions made at other academic institutions and at other NCAA-sponsored events. This turns on its head the rule that state liability is limited to situations where the state is actually responsible for the alleged injury. *Blum*, 457 U.S. at 1004. Here, the complaint fails to properly allege state action and proximate causation.

### B. Individual Defendants did not engage in "intentional discrimination."

The complaint admits that the NCAA created and enforces the Transgender Policies. Therefore, the only decision attributable to the Individual Defendants is their general decision to join the NCAA. To succeed on an Equal Protection challenge to such a facially neutral policy, Plaintiffs must allege that the Individual Defendants adopted or followed that policy for a discriminatory *purpose*. *Red Door Asian Bistro v. City of Fort Lauderdale*, No. 22-11489, 2023 WL 5606088, at *7 (11th Cir. Aug. 30, 2023). In other words, the decision to join the NCAA must have been made with discriminatory intent. It is not, and Plaintiffs do not allege anything different.

## V.   Plaintiffs' "Right to Bodily Privacy" Claim Fails Because There Is No Allegation of State Coercion.

Lastly, and in addition to the defense of qualified immunity, Plaintiffs' claim against the individual State Defendants for violations of an alleged constitutional "right to bodily privacy" should be dismissed. Plaintiffs allege that Thomas's use of the unisex locker subjected the female athletes to be "exposed in the presence of Thomas without their consent and against their wills[.]" (Compl. ¶¶ 622, 624.) As sympathetic as State Defendants generally may be, the State Defendants did not compel this to occur.

Cases that have recognized a "constitutional right to bodily privacy" have done so in situations involving persons under state custody, which raises very different concerns than what happens when a public university hosts an event pursuant to the rules of a third party. For example, in *Fortner v. Thomas*, the Eleventh Circuit joined other circuits in recognizing the claim based on allegations of male prisoners' privacy in the presence of female correctional officers. 983 F.2d at 1030. Since then, the Eleventh Circuit has affirmed this right in similar situations, but only where the government *coerced* or otherwise imposed the public exposure. *See, e.g.*, *Boxer X v. Harris*, 437 F.3d 1107, 1110–11 (11th Cir. 2006) (emphasizing "the harm of compelled nudity"); *Mitchell v. Stewart*, 608 F. App'x 730, 722–23, 732 (11th Cir. 2015) (addressing transporting arrestees while nude); *Cox v. McVickers*, No. 1:12-CV-911-WKW,

2014 WL 221817, at *3 (M.D. Ala. Jan. 21, 2014) (recognizing the limited contexts where the Eleventh Circuit recognized violations of the right to bodily privacy). Plaintiffs properly do not contend they were under state custody while at the 2022 Championships or other potential future events. This "very narrow" right should not be expanded in this lawsuit. *Boxer X*, 437 F.3d at 1110; *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1304 (11th Cir. 2003) (cautioning against expanding substantive due process).

Here, the Complaint contains no allegations of a custodial or coercive relationship, let alone allegations that the State Defendants used that power to threaten or actually coerce or compel anyone. Without more, Plaintiffs cannot demonstrate a violation of the right to bodily privacy recognized in *Fortner* and its progeny. Accordingly, Plaintiffs' right to bodily privacy claim against the individual State Defendants must be dismissed.

## CONCLUSION

For the reasons stated above, State Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' claims against them.

Respectfully submitted, this 5th day of June, 2024.

*/s/ Josh Belinfante*
Josh Belinfante          047399
Vincent R. Russo        242628
Edward A. Bedard       926148
Javier Pico Prats         664717
Anna Edmondson        289667
ROBBINS ALLOY BELINFANTE

LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

*Counsel for State Defendants*

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this State Defendants' Brief in Support of Their Motion to Dismiss has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Josh Belinfante*
Josh Belinfante

– 27 –