UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RILEY GAINES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-01109-MHC |
| v. | ) | |
| | ) | |
| NATIONAL COLLEGIATE ATHLETIC | ) | |
| ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT NCAA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The Supreme Court has held that the NCAA is not covered by Title IX. *NCAA v. Smith*, 525 U.S. 459 (1999) (*Smith I*). The Supreme Court has also held that the NCAA is not a state actor that can be sued under Section 1983. *NCAA v. Tarkanian*, 488 U.S. 179 (1988). Despite those binding precedents from our Nation's highest court, Plaintiffs have filed a lawsuit suing the NCAA for alleged violations of those laws (Title IX [Counts I and II] and Section 1983 [Counts II and III]), and they do so with an impermissible shotgun pleading filed by a group of Plaintiffs who lack standing to assert any claims for injunctive relief. For these reasons, the claims against the NCAA should be dismissed with prejudice.

## I.   <u>The Complaint is an Impermissible Shotgun Pleading</u>

The Court should dismiss Plaintiffs' Complaint (Dkt. 1 ["Compl."]) because it is an impermissible shotgun pleading that does not comply with the Federal Rules of Civil Procedure. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015); *Smith v. Bell*, No. No. 1:23-CV-2091-MHC, 2023 U.S. Dist. LEXIS 232145, *5-7 (N.D. Ga. Nov. 30, 2023) (Cohen, J.). Rule 8(a)(2) demands "a short and plain statement of the claim showing that the pleader is entitled to relief." But Plaintiffs' 155-page, 637-paragraph pleading "is in no sense the 'short and plain statement of the claim' required by Rule 8." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing 58-page complaint); *Mishiyev v. Beasley Media Grp., LLC*, No. 8:23-cv-1940-KKM-TGW, 2023 U.S. Dist. LEXIS 163774, at *3 (M.D. Fla. Sept. 13, 2023) (dismissing 45-page complaint as "anything but plain and short"). The Eleventh Circuit has "condemned shotgun pleadings time and again," and has "repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). The Eleventh Circuit has identified four types of impermissible shotgun pleadings, and Plaintiffs' complaint embodies three of them.

First, Plaintiffs commit the "mortal sin" of shotgun pleading, which is "the most common type," by filing "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count

to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321-22. After 581 paragraphs of largely immaterial factual allegations and legal argument, Count I "restate[s] . . . paragraphs numbered 1 through 581" (Compl. ¶ 582), Count II "restate[s] . . . paragraphs numbered 1 through 620" (*Id.* ¶ 621), and Count III, "restate[s] . . . paragraphs numbered 1 through 628" (*Id.* ¶ 629), thus embodying precisely the prohibited "combination of the entire complaint." Established Eleventh Circuit law prohibits complaints like this one where the result is "that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta*, 256 F.3d at 1284.[1]

Second, in their 637-paragraph complaint, Plaintiffs also commit the "venial sin" of a shotgun pleading "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 702 F.3d at 1322. Rather than a short, plain statement to give the NCAA and the other Defendants notice of the claims against it, Plaintiffs offer immaterial scientific citations (*e.g.*, Compl. ¶¶ 202-217, ¶¶ 294-296), improper legal arguments (*e.g.*, *id.* ¶¶ 32-52), and unnecessary facts, including 101 paragraphs of nearly minute-by-minute

---

[1] To give just one obvious example of improper incorporation of nonmaterial allegations, paragraph 582 serves to insert the legal discussion of 28 U.S.C. § 1983 from paragraphs 102-111 into Count I relating to Title IX.

description of the 2022 swimming championships (*id.* ¶¶ 418-518), all of which do nothing to improve the notice to Defendants of an individual Plaintiff's claims. Indeed, much of the Complaint, including unnecessarily descriptive and incendiary language (*e.g.*, "glimmering pools," *id.* ¶ 1; "exploitative conduct" and "enormous profits," *id.* ¶ 24), feels more like a jury argument or a press release than a legal pleading that must conform to the strictures of Rule 8. Such complaints against multiple defendants that contain extensive recitation of immaterial facts and present speeches designed to advance a political agenda have been deemed to be improper shotgun pleadings. *E.g.*, *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1215 (S.D. Fla. 2023) (collecting cases); *see also Cousart v. Openai LP*, 2024 U.S. Dist. LEXIS 93571, at *3 (N.D. Cal. May 23, 2024) (Chhabria, J.) (dismissing complaint that was "not only excessive in length," but also "include[d] rhetoric and policy grievances that are not suitable for resolution by federal courts").

Third, Plaintiffs find a way to commit "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. Count I exemplifies the problem by presenting two bullet-pointed lists of alleged Title IX "discrimination" and then accusing all defendants of all of them in an undifferentiated fashion:

> The above-described actions, practices, and/or policies of the NCAA and/or the University System of Georgia,

> Georgia Tech, the University of Georgia, the University of
> North Georgia which violate Title IX have injured and/or
> threaten to injure Plaintiffs and one or more classes of
> similarly situated individuals in the future.

Compl. ¶ 615. Count II combines claims under Title IX and the Equal Protection
Clause then accuses all Defendants of all violations in an undifferentiated fashion.
As in other cases, Plaintiffs' shotgun pleading fails because it improperly accuses all
Defendants of having "performed certain acts or omissions without identifying the
particular defendant who acted or failed to act, [thus] making it impossible to
identify which defendant was responsible for which act or omission." *Heriveaux v.
Junior*, No. 23-11284, 2024 U.S. App. LEXIS 7886, at \*6 (11th Cir. Apr. 3, 2024).
For all these reasons, the Complaint is an impermissible shotgun pleading that the
Court should dismiss.

## II.   The Court Should Dismiss the Title IX Claims Against the NCAA

Even if it were possible to determine which alleged Title IX violations
Plaintiffs' shotgun pleading asserts against the NCAA, those claims would have to
be dismissed because Plaintiffs fail to state any valid claim against the NCAA. To
fit under Title IX, a plaintiff must allege "(1) that she was excluded from
participation in, denied benefits of, or subjected to discrimination in an educational
program; (2) that the exclusion was on the basis of sex; and (3) that the defendant
receives federal financial assistance." *Riddle v. Orange Cty. Sch. Bd.*, 2019 U.S.
Dist. LEXIS 249520, at \*6-7 (M.D. Fla. July 2, 2019) (citation omitted); *accord*

5

*Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). But Plaintiffs have not met that third required prong.[2] Twenty-five years ago, the Supreme Court held that a college athlete could not sue the NCAA under Title IX merely because it receives dues payments from colleges. *See Smith I*, 525 U.S. at 462. Since then, no court has applied Title IX to the NCAA because its member institutions receive federal funding. *See, e.g.*, *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 674 (D.N.J. Dec. 28, 2015) (dismissing Title IX claims because "there is no allegation that the NCAA has received Federal financial assistance such that it would be subject to suit under Title IX").

Given that insurmountable legal roadblock, Plaintiffs offer no allegations that the NCAA is a direct recipient of federal funding. Instead, they assert that Title IX applies to the NCAA using a vague, general allegation that "colleges and universities which are recipients of federal financial assistance cede control over aspects of college athletics to the NCAA." Compl. ¶ 44. But that attempt fails as a matter of law. No court has ever applied Title IX to the NCAA under a "ceding control" theory, and the Third Circuit has rejected that argument twice.

In *Smith v. NCAA*, 266 F.3d 152 (3d Cir. 2001) (*Smith II*), the Third Circuit directly addressed and closed as a matter of law the ceding-control issue that

---

[2] Plaintiffs also cannot meet the first or second prongs, but it is not necessary to argue those points in this Motion.

Plaintiffs here describe as having been "left open" by the Supreme Court in *Smith I*

Compl. ¶ 44. Like Plaintiffs here, the *Smith II* plaintiffs grounded their ceding-

control theory on the allegation "that the NCAA exercised controlling authority over

its federally-funded member institutions because it had the power to establish rules

governing intercollegiate athletics at member schools." 266 F.3d at 157. *Smith II*

granted the NCAA's motion to dismiss because "'[t]he fact that the institutions make

. . . decisions cognizant of NCAA sanctions does not mean the NCAA controls

them.'" *Id.* at 156 (quoting *Cureton v. NCAA*, 198 F.3d 107, 116 (3d Cir. 1999)).

     *Smith II* relied on that court's *Cureton* decision granting summary judgment

to the NCAA and holding as a matter of law "that the NCAA's members have not

ceded controlling authority to the NCAA by giving it the power to enforce its

eligibility rules directly against the students." 198 F.3d at 117-18.[3] *Cureton*

specifically rejected the argument that Plaintiffs appear to be making here:

> [W]e cannot understand how the fact that the NCAA
> promulgates rules and regulations with respect to
> intercollegiate athletics somehow means that the NCAA
> has controlling authority over its members' programs or
> activities receiving Federal financial assistance. After all,
> the institutions decide what applicants to admit, what
> employees to hire, and what facilities to acquire.

---

[3] Although *Cureton* applied Title VI, rather than Title IX, the Third Circuit held that
"the statutes are essentially similar." 198 F.3d at 117.

*Id.* at 118. *Cureton* relied on the Supreme Court's holding in *Tarkanian* "that the NCAA does not 'control' its members." *Id.* at 117 (citing 488 U.S. at 192). *Cureton* also relied on the NCAA constitution, which "expressly provides for the retention of institutional control over individual athletic programs." *Id.* at 118.

Plaintiffs' shotgun pleading improperly presents five pages of legal argument on Title IX and their "ceding control" theory (Compl. ¶¶ 32-52) but notably never mentions those two directly relevant circuit court decisions involving the NCAA. *See Soroka v. MSC Cruises, S.A.*, 2020 U.S. Dist. LEXIS 265769, at *5 (S.D. Fla. May 5, 2020) (dismissing shotgun pleading because "paragraphs of legal argument, quotations, and citations have no place in a complaint") (citation omitted). Instead, Plaintiffs offer a string cite of factually dissimilar cases involving state and local athletic associations that operate very differently from the NCAA. Compl. ¶ 43 (citing, *inter alia*, *Williams v. Bd. of Regents*, 477 F.3d 1282, 1294 (11th Cir. 2007), and *Horner v. Kentucky High Sch. Ath. Ass'n*, 43 F.3d 265 (6th Cir. 1994)). *Cureton* distinguished *Horner* because the state athletic association there was the statutory agent of a state education board that controlled $396 million in Federal funds. 198 F.3d at 116. Similarly, the Eleventh Circuit in *Williams* found that the plaintiffs specifically alleged that the university created an affiliated nonprofit entity to operate its athletic department and transferred significant funds to that entity, and thus the court permitted a ceding-control theory to move forward. 477 F.3d at 1294.

Those factually distinguishable cases do not support Plaintiffs' attempt to assert Title IX claims against the NCAA here, and the Court should dismiss those claims with prejudice as a matter of law.

Even if Plaintiffs were legally permitted to assert Title IX claim against the NCAA (which they are not), the Court would still have to dismiss them because the Complaint lacks sufficient factual allegations of how any NCAA member has ceded control over its athletic programs and provided extensive funding to the NCAA to operate the university's athletic programs. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). But Plaintiffs merely mouth the conclusion "cede control" without any facts. Compl. ¶ 22 ("colleges and universities cede their control over the regulation of college sports to the NCAA"); ¶ 44 ("colleges and universities . . . cede control over aspects of college athletics to the NCAA); ¶ 49 ("the NCAA's members . . . have ceded control over the rules and regulation of college athletics to the NCAA"). Plaintiffs also offer a slightly different formulation that is no less conclusory, factually bereft, and thus insufficient. Compl. ¶ 45 ("NCAA member educational institutions delegate rulemaking and enforcement authority to the NCAA over college athletic programs."). Plaintiffs fail

to plausibly show with facts how any of the NCAA's members have "ceded control" over an athletic program to the NCAA.

Plaintiffs also seem to imply (without affirmatively asserting) that the NCAA is in a "joint venture" with its members but again fail to offer any relevant factual allegations. Compl. ¶¶ 47-48. Instead of facts, Plaintiffs misconstrue and misrepresent the NCAA's position in briefing in the unrelated *Alston* litigation. The NCAA did not argue in *Alston* that it is engaged in a joint venture with its member schools under Georgia or any other state's law. Similar attempts to misuse the *Alston* briefing have been rejected by other courts. *See, e.g.*, *Haw v. NCAA*, 260 Md. App. 310, 366, 309 A.3d 64, 96 (2024) (rejecting reliance on *Alston* briefing and highlighting lack of "any showing that the NCAA satisfies any definition of a 'joint venture' under the law of Maryland or any other state"). In short, Plaintiffs have not—and cannot—assert a claim against the NCAA under Title IX, and the Court should dismiss the Title IX claims with prejudice.

## III.   The Court Should Dismiss the Section 1983 Claims Against the NCAA

### A.   The NCAA Is Not a State Actor Subject to Section 1983 Liability

Plaintiffs' allegations do not meet the requirement of 42 U.S.C. § 1983 to show that the NCAA's alleged conduct was committed by a state actor acting under color of state law. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 156-57 (1978)). Plaintiffs do not show

that the NCAA acted with "power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). That failure is fatal because "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).

Plaintiffs' allegations that the state university defendants acted in accordance with NCAA policies are not sufficient to turn the NCAA into a state actor under Section 1983. The Supreme Court so held in *Tarkanian* when it **rejected** the argument that a Nevada state university clothed the NCAA with state authority by delegating its own functions to the NCAA. 488 U.S. at 192. *Tarkanian* held the NCAA was not a Nevada state actor because Nevada state law was not the source of the NCAA's rulemaking. *Id.* Instead, the NCAA's rules arose from and were enforced by the NCAA's several hundred member institutions most of which were in other states, and thus the NCAA did not act under color of Nevada law or any other state's law. *Id.*

The Court concluded that "[n]either [the university's] decision to adopt the NCAA's standards nor its minor role in their formulation is a sufficient reason for concluding that the NCAA was acting under color of Nevada law when it

promulgated standards governing athlete recruitment, eligibility, and academic performance." *Id.* at 195; *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297-98 (2001) (reiterating *Tarkanian's* holding that the NCAA's "connection with [the state is] too insubstantial to ground a state-action claim" because "the NCAA's policies were shaped not by the [university] alone, but by several hundred member institutions, most of them having no connection with [the state], and exhibiting no color of [state] law"); *Collier v. Nat'l Collegiate Athletic Ass'n*, 783 F. Supp. 1576, 1578 (D.R.I. 1992) (ruling the NCAA was not a state actor). Under *Tarkanian*, the Georgia state university Defendants' conduct in compliance with NCAA policies is insufficient to convert the NCAA into a state actor, and for that reason alone, the Court should dismiss Counts II and III.

## B. Plaintiffs' Allegations Are Insufficient to Justify a Section 1983 Claim Against the NCAA

Nor do Plaintiffs' conclusory allegations that the state defendants were "joint participants" with the NCAA permit Plaintiffs to pursue Section 1983 claims against the NCAA. The Eleventh Circuit has made clear that "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey*, 949 F.2d at 1130. This is not one of those rare cases. Plaintiffs' threadbare allegations do not meet any of the three tests for conduct by a private party to be considered state action: (1) the **"state compulsion test"** (which considers whether the State coerced or at least significantly encouraged the action alleged to violate the

Constitution), (2) the **"public function test"** (which asks whether the private party performed a public function that was traditionally the exclusive prerogative of the State), and (3) the **"nexus/joint action test"** (which considers whether the State so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise). *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001); *Jain v. Myers*, No. 20-11908, 2024 U.S. App. LEXIS 217, at *7 (11th Cir. Jan. 4, 2024).

**State Compulsion Test**. First, the complaint lacks any allegations that any government actor coerced or encouraged the NCAA to violate Plaintiffs' rights, which provides the necessary basis to reject state compulsion as a ground for satisfying the state action requirement here. *See*, *e.g.*, *McCoy v. Johnson*, 176 F.R.D. 676, 680 (N.D. Ga. 1997) (rejecting state compulsion theory where plaintiff made no allegations of any state compulsion on defendant); *Smith v. Lifeline Animal Project, Inc.*, No. 1:22-CV-2325-SEG, 2024 US Dist. LEXIS 55715, *12-13 (N.D. Ga. Feb. 16, 2024).

**Public Function Test**. Second, the complaint lacks the required allegations that the NCAA, as a private actor, "perform[ed] functions that are traditionally the *exclusive* prerogative of the state." *Langston v. ACT*, 890 F.2d 380, 384 (11th Cir. 1989); *Harvey*, 949 F.2d at 1131. The Supreme Court has held that few activities are "exclusively reserved to the states." *Flagg Bros.*, 436 U.S. at 158. The Court has

also held that, by fostering amateur athletics at the college level, the NCAA does not perform a public function. *See Tarkanian*, 488 U.S. at 197 n.18 ("[W]hile we have described that function as 'critical,' . . . by no means is it a traditional, let alone an exclusive state function." (internal citation omitted)); *see also Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) ("The case law makes pellucid that the administration of an amateur sports program lacks the element of exclusivity and therefore is not a traditional public function."); *McHale v. Cornell University*, 620 F. Supp. 67, 70 (N.D.N.Y. 1985) (holding that the "[r]egulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function"); *cf. San Francisco Arts & Athletics v. U.S. Olympic Comm.*, 483 U.S. 522, 545 (1987) (regulation of Olympic sports teams by a private organization was not an exclusively public function).

**Joint Action Test**. Third, the complaint lacks sufficient allegations of joint action because it does not show with facts that Georgia has "so far insinuated itself into a position of interdependence" with the NCAA that NCAA is "merely a surrogate for the state." *Focus on the Fam.*, 344 F.3d at 1278-79. "To charge a private party with a state action under [the nexus/joint action test], the governmental body and private party must be intertwined in a symbiotic relationship." *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1027 (11th Cir. 1988) (internal

quotation marks and citation omitted). This "symbiotic relationship must involve the alleged constitutional violation." *Id.*

Plaintiffs do not plead adequate facts to meet that test; instead, they merely repeat the words of the test in a conclusory manner and recite in rote fashion that the Georgia Defendants "have so far insinuated themselves into a position of interdependence with the NCAA that [the] governmental entities may be recognized as joint participants in the challenged activities of the NCAA" and that the NCAA and Georgia Defendants "collaborated and participated" in constitutional violations. Compl. ¶¶ 623, 626, 631, 635. Because Plaintiffs' allegation that the NCAA may be considered a state actor for purposes of § 1983 is entirely conclusory, it is insufficient to establish state action here. *Iqbal*, 556 U.S. at 678.

## C. No Other Allegations Are Sufficient to Allow a Section 1983 Claim.

Having failed to meet any of the three state-actor tests, Plaintiffs offer a variety of other allegations to plead a Section 1983 claim against the NCAA, but those also fail to establish state action. For example, the gist of the Complaint is that the NCAA developed rules for athletic competitions. But State action does not exist merely because a private party formulates rules and regulations later implemented by the state. *See Tarkanian*, 488 U.S. at 194 (holding that a state actor's voluntary decision to adopt a private association's rules did not transform the private association's rules into state rules nor did it transform the private actor into a state

actor); *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1384-85 (7th Cir. 1992) (finding three bar associations had not engaged in state action by formulating disciplinary rules in question); *Willis v. Ga. Dep't of Juv. Just.*, 2007 U.S. Dist. LEXIS 70012, at *23-24 (M.D. Ga. Sept. 21, 2007) (comparing the case to *Tarkanian* and noting "[i]n both cases, that states' reliance on and adoption of a private party's actions are not sufficient to make that private party a state actor" and "[a]lthough these state entities acted in compliance with private parties when they allegedly violated the plaintiffs' rights, that does not transform private parties' actions into actions of the state").

Plaintiffs allege that the NCAA receives state funds. But state action does not exist merely because a state provides government funding to a private party. *Shell v. Foulkes*, 362 F. App'x 23, 27 (11th Cir. 2010) ("State action is not established merely because a private entity receives government funding."). Rather, the private party must be so "allied with the state as to characterize that party as a 'state actor.'" *Cobb v. Ga. Power Co.*, 757 F.2d 1248, 1250 (11th Cir. 1985) (internal quotation marks and citation omitted). Plaintiffs fail to provide any factual allegations to support such a characterization.

Plaintiffs also allege that the NCAA and Georgia Defendants adopted, implemented, and enforced the NCAA Transgender Eligibility Policies in public buildings on a public university campus. Compl. ¶ 624. But state action does not

exist merely because a state provides a forum to a private entity. *Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir. 1974);[4] *see also Frazier v. Bd. of Trs. of Nw. Miss.*, 765 F.2d 1278, 1288 n. 21, *modified on other grounds*, 777 F.2d 329 (5th Cir. 1985), *cert. denied*, 476 U.S. 1142 (1986) ("[T]he sharing of [a] space [by government and private actors] is not alone sufficient in this case.").

And Plaintiffs allege a conspiracy with state actors. But that also is not enough. To establish a prima facie case of Section 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights. *Rowe v. City of Fort Lauderdale*, 279 F. 3d 1271, 1283 (11th Cir. 2002). Moreover, Plaintiffs may not rely on unsupported speculation and suspicions of a conspiracy but must instead allege sufficient facts to show that a definite agreement was made. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). In other words, "[i]t is insufficient to 'merely string together' discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." *Benjamin v. Chemtall Inc.*, 2013 U.S. Dist. LEXIS 103014, at *3 (S.D. Ga. July 22, 2013) (quoting *Harvey*, 949 F.2d at 1133), *R. & R. adopted*, 2013 U.S. Dist.

---

[4] Cases decided by the former Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

LEXIS 103016 (S.D. Ga. July 22, 2013). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992).

Here, Plaintiffs do not allege any communication between the NCAA and any government actors – in particular, between the NCAA and the State Defendants – related to the adoption of the policies challenged in this lawsuit. Plaintiffs, instead, rely entirely on conclusory allegations, based only "on information and belief," that the NCAA allegedly "conspired" with public colleges and universities to discourage speech and that "by agreement" the locker rooms were designated as "unisex." Compl. ¶¶ 360, 368.

Simply repeating the legal test is insufficient to establish a conspiracy to violate their constitutional rights. *See Reed v. Strickland*, 2023 U.S. Dist. LEXIS 100792, at *17 (M.D. Ala. June 9, 2023) (finding the plaintiff's "ambiguous and conclusory factual allegations" to be insufficient to nudge the plaintiff's claim forward as the allegations did not establish when an agreement may have been formed or the substance of the agreement). Rather, the Plaintiffs' claims are merely naked assertions of an alleged "conspiracy" that lack the type of supportive operative facts required to state a claim under Section 1983. *See Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Accordingly, for this reason too, any Section 1983 claim against the NCAA fails, and the Court should dismiss Counts II and III with

prejudice. *See Williams v. Brooks Trucking Co., Inc. of Memphis*, 757 F. App'x 790,795 (11th Cir. 2018) (holding that a plaintiff's Section 1983 claim was unsuccessful because he did not sufficiently allege defendants acted under color of state law or conspired with a state actor).

## IV.   **Plaintiffs Lack Standing to Seek Injunctive Relief**

Even if any damages claim under Title IX or Section 1983 could survive, the Court should dismiss all claims for injunctive relief because none of these Plaintiffs present sufficient allegations to establish Article III standing. Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Under Rule 12(b)(1), a district court should dismiss a case for lack of subject matter jurisdiction when a plaintiff lacks standing. *E.g.*, *Hall v. Xanadu Mktg., Inc.*, 2023 U.S. Dist. LEXIS 135514 (N.D. Ga. July 6, 2023) (Cohen, J.). "[S]tanding is not dispensed in gross"; a plaintiff must demonstrate standing for each form of relief sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008).

Standing for injunctive relief requires each plaintiff to allege a future injury that is "concrete, particularized, and actual or imminent" in the sense that it is "certainly impending." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013). "[A]llegations of *possible* future injury" are insufficient. *Id.* Thus, to seek prospective relief, each Plaintiff must allege facts showing a "substantial likelihood"

of "real," "immediate," and "definite" future injury. *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356-57 (11th Cir. 2021) (the court could "easily dispense with the possibility" that a plaintiff who "may someday be in another car accident" had standing to pursue prospective declaratory relief). The Eleventh Circuit has stressed that is "a 'high standard,' which demands 'a robust judicial role in assessing [the] risk' of harm." *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 94-95 (11th Cir. 2022).

This lawsuit presents grievances of the named Plaintiffs about the potential of having to compete against transgender women or share locker rooms with them in in future collegiate championships. But no Plaintiff alleges a substantial likelihood that she will compete against a transgender woman at any certainly impending time in the future. Indeed, several admit they will not because they have no more intercollegiate eligibility. Examining each group of plaintiffs shows that no plaintiff has standing to seek injunctive relief.

### A.   The "2022 Championships Plaintiffs" (Plaintiffs Gaines, Gyorgy, Alons, Wheeler, Swimmer A, and Swimmer B) Lack Standing

The 2022 Championships Plaintiffs seek damages for alleged past injuries from a single swimming championship competition held in Georgia in 2022. That group of Plaintiffs apparently do not seek prospective relief. Compl. ¶ 101. Nor could they. *See Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 44 (2d Cir. 2023) (affirming dismissal of prospective relief because student-athletes challenging

transgender policies had graduated). All but Swimmer A admit that they have no remaining eligibility for future collegiate competitions. Compl. ¶ 133, and Swimmer A fails to allege that she will compete in any future intercollegiate athletic events, much less that she has a certainly impending chance of competing against a transgender woman. *See* Compl. ¶ 115.

### B.     The "Roanoke Swim Team Plaintiffs" (Plaintiffs Mullens, Price, Satterfield, Pearson, Blankenship, and Morrow) Lack Standing

The Roanoke Swim Team Plaintiffs claim they were injured in the past because a single transgender woman athlete asked to join their swim team in Fall 2023 and then later withdrew that request before she participated on the team. Compl. ¶ 540. The Roanoke group seems to base any request for prospective relief on their conjectural, subjective fears that another transgender woman might ask to join their team at some unspecified future time. That mere possibility, "contingent on the choices of a third party," is insufficient to confer standing for prospective relief. *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018) (highlighting that the Supreme Court "has 'been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment'") (quoting *Clapper*, 568 U.S. at 413).

21

**C.    The Remaining Four Plaintiffs (Erzen, Eades, Volleyball Athlete A, and Track Athlete A) Lack Standing**

The remaining Plaintiffs do not allege any past injuries and limit their claims to prospective relief. Those Plaintiffs' allegations suggest, at most, only that they *might* someday compete against a transgender woman without specifying a particular event or a particular future date. Again, a mere possibility is insufficient for standing. *See Clapper*, 568 U.S. at 409. Plaintiffs Erzen and Eades, who both competed in Division I sports, state only that they are "aware" of transgender collegiate athletes without showing that they are likely to compete against any of them; indeed, the athletes they identify were in different NCAA divisions than Erzen and Eades. Compl. ¶¶ 551-52. Volleyball Athlete A alleges only that she is aware of some unspecified high school transgender women athletes seeking to be recruited to Division I, II, or III colleges without offering any allegations of a substantial likelihood that those transgender athletes will complete against her Division II team or a "certainly impending" injury of losing to a transgender athlete's team in a future competition. Compl. ¶¶ 547-49. Track Athlete A alleges that she competed against a transgender woman at a single past competition (Compl. ¶ 541) and then merely speculates that she may compete against that athlete again in the future without alleging when that is likely to occur or how doing so would affect her (Compl. ¶¶ 544-46).

* * *

"[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future* injury." *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (internal quotation marks and citation omitted). The Eleventh Circuit has instructed that "opening the door of the federal courthouse to litigants with such nebulous allegations of future harm would constitute an overreach of federal equitable power" and has stated plainly that it refuses to allow courts "to venture down that path." *Worthy v. Phenix City*, 930 F.3d 1206, 1216 (11th Cir. 2019). Because none of the Plaintiffs has alleged with specificity that she will compete against a transgender woman athlete in a specific competition at a specific future date, none of them is able to demonstrate the required definite future harm. The Court should dismiss Plaintiffs' prospective claims for injunctive and declaratory relief. *Mack*, 994 F.3d at 1356-57.

Respectfully submitted this 5th day of June 2024.

ALSTON & BIRD LLP

*/s/ Cari K. Dawson*
Cari K. Dawson
Georgia Bar No. 213490
cari.dawson@alston.com
Christopher C. Marquardt
Georgia Bar No. 471150
chris.marquardt@alston.com
John E. Stephenson
Georgia Bar No. 679825

23

john.stephenson@alston.com

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Defendant National Collegiate
Athletic Association*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

*/s/ Christopher C. Marquardt*
Christopher C. Marquardt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 5th day of June 2024.

*/s/ Cari K. Dawson*
Cark K. Dawson