# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RILEY GAINES, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-01109-MHC |
| | ) |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.* | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF SHARON BYRNE

I, Sharon Byrne, declare as follows:

1. I am a resident of the United States, an adult over the age of eighteen, and am competent to testify and have personal knowledge of the facts stated in this declaration.

2. My name is Sharon Byrne and I am the Executive Director of Women's Liberation Front ("WoLF"). I have served as a delegate to the United Nations Conference on the Status of Women since 2020. I have given talks on the importance of women in disaster recovery, and this year on commercial sexual exploitation of women and how it is an impediment to true equality.

3. WoLF is a non-profit radical feminist organization dedicated to the liberation of women by ending male violence, protecting reproductive sovereignty, preserving woman-only spaces, abolishing gender, and ending invidious sex

discrimination. Radical feminism is based on the recognition that women and girls are oppressed under a male-supremacist system called patriarchy which is organized around the extraction of resources from female bodies and minds, including reproductive, sexual, emotional, and labor resources, and that gender is a hierarchical caste system that organizes male supremacy. WoLF focuses on issues that affect women and girls in the United States which are largely ignored by other women's rights groups, and ensuring the feminist perspective is heard where it otherwise would not be. WoLF believes that no party or mainstream political philosophy fully aligns with radical feminist values or goals.

4. WoLF's reason for interest in *Gaines, et al. v. NCAA, et al.,* No. 1:24-cv-01109-MHC, and in the broader issue of protecting the women's category of sport, is directly related to our fight against attacks on the the legal rights of women and girls which have been rising from both the left and the right in recent years. Attacks on the women's sport category is one example of an attack from the left. In sports, the notion of allowing "gender-identity" to override sex denies the reality of differences which do exist between the sexes, almost universally to the disadvantage of women and girls.

5. Furthermore, these attacks force WoLF to use its limited resources that could otherwise be used to defend other single-sex spaces, such as domestic violence shelters, rape crisis centers, and prisons; to fight against the commercial

sexual and reproductive exploitation of women and girls; and to protect women's reproductive self-sovereignty.

6. Due to our own interest in this case, WoLF has become aware of the Motion to Intervene filed by the National Women's Law Center ("NWLC").

7. In NWLC's Memorandum of Law in Support of Its Motion to Intervene (the "NWLC Memorandum"), NWLC states it supports males competing in women's sports if they identify as female "as a matter of both civil rights law and of human rights." It goes on to state: "NWLC is not alone. The overwhelming majority of women's rights and gender justice organizations share the view that the inclusion of women and girls who are transgender in sports advances the goal of equal opportunity for women and girls to benefit from athletic participation." NWLC Memorandum, ECF No. 36-1, p. 10 of 32.

8. The system of patriarchy consists of the institutional structures, policies, and cultural norms that preserve male dominance. This Any advocacy which prioritizes the needs and desires of men and boys over the needs and desires of women and girls is support for men over women and boys over girls. Sadly, statements like this by groups like NWLC force us to expend our limited resources to correct this disinformation, which NWLC promotes to falsely create this visage of consensus.

9. But NWLC knows that there is no such consensus. In June of 2023, NWLC posted on social media: "Happy Pride. Don't be a TERF." TERF, which stands for "Trans-exclusionary radical feminist", is a derogatory term used to marginalize and insult the many feminists who oppose their men's-rights agenda. Lesbians and bisexual women are strongly represented in radical feminist circles, and are some of the most highly visible activists promoting women's interests. NWLC used its platform during a month which should be celebrating lesbian and bisexual women to instead bully and insult them.

10. WoLF strongly disagrees with many of the factual assertions made by NWLC. Some are simply circular, conclusory statements offered without supporting evidence, some are mere platitudes, and others are so demonstrably and verifiably untrue that it undermines NWLC's positioning of itself as an expert on this topic. It is necessary to correct NWLC's false statements as follows:

- Polling at national and state levels have consistently demonstrated that the overwhelming majority of women **reject** men competing in women's sports and male access to female safe spaces.[1] This is a nonpartisan fact: even respondents who identify as Democrats or liberals see the inherent safety and fairness issues of allowing males to participate in female-only athletics.

- In terms of civil rights law, allowing men to take women's places is regressive, harmful to women, and undermines decades of progress made by women and girls in sports. It is no more appropriate to separate teams by how the athletes feel

---

[1] All polling data can be found at https://womensliberationfront.org/poll-data.

        inside than it is to separate teams by religion, sexual orientation or race.

- In terms of human rights law, all major human rights instruments refer to sex in biological terms and do not include trans-identifying males in the category of women. This includes, for example, the Convention on the Elimination of all forms of Discrimination against Women (CEDAW), United Nations, 1979, the International Bill of Human Rights, and the International Convention of Civil and Political Rights.

- The United Nations Special Rapporteur on violence against women and girls stated that an interpretation of Title IX that requires trans-identifying males to have access to women's sports teams is contrary to the obligations of the U.S. Government under international human rights law and would lead to discrimination to and serious physical, emotional and other harms to women and girls.

11. WoLF's supporters include over 400 trained "sisters in action" who live and advocate for its mission across the U.S. Our supporters, which also include those who have submitted testimony, public comments, and signed petitions and open letters, have grown exponentially in recent years as women's sports and other legal protections for women and girls have continued to be under attack. The aforementioned polling shows that our supporters are representative of the views of people across the political spectrum.

12. NWLC claims that "[p]olicies excluding women and girls who are transgender from school sports harm not only those women and girls, but threatens all women and girls who excel in athletics, as well as all who depart from gender

stereotypes." NWLC Memorandum, ECF No. 36-1, p. 11 of 32; *see also* p. 12 ("Categorical bans").

13. The foregoing claim by NWLC is not supported by evidence. First, while NWLC seeks to characterize rules that protect women's places and spaces as "excluding … from school sports" or as "bans," this is false, as no significant organization of any sort proposes banning or excluding anyone from sport. Rather, the discussion is solely about what eligibility category (generally, male, female or mixed) in which individuals may participate. Thus, the use of terms like "bans" or "excluding from school sports" is misleading. Furthermore, when groups who promote "gender identity" policies say "women and girls who are transgender" they are referring to males who identify as women and girls, regardless of anatomy and physiology.

14. Second, NWLC provides no evidence of harm to women from the methods (such as reliance on birth records) that could be used to verify sex, nor could they. If verification is needed, it can be provided by sports physicals - which athletes are already required to get prior to participation, and which include different components depending on whether the athlete is male (e.g. testicular exam) or female (e.g. discussing menstruation).

15. Third, NWLC's position on this actually promotes the very misogynistic and sexist principles it claims to be fighting against. These include:

6

the promotion of sex stereotypes and the notion that humans can have an internal psychological sense of being male or female (and that a person's discomfort with their sex means they are not "really" male or female); promoting the notion that humans have an inherent set of psychological or social characteristics associated with their sex; the idea that a person can be born in the wrong body, and a disregard for or rejection of basic scientific knowledge about evolution and biology. The embrace of regressive principles such as these lead directly to the promotion of the belief that "gender identity" should take priority over sex in law and policy.

16. NWLC claims to be concerned for women and girls of color who they allege are "often viewed as 'nonconforming' with white-centric stereotypes of femininity." NWLC Memorandum, ECF No. 36-1, pp. 12 of 32. But in fact, female athletes from marginalized groups, including women and girls of color, are disproportionately harmed by policies which take away single-sex athletic opportunities. Low-income athletes are more likely to rely on athletic scholarships to attend college. Women and girls of certain religious groups may be precluded from sharing locker rooms and showers with male athletes for cultural or religious reasons, while women who have experienced sexual trauma may find it impossible to feel physically and psychologically safe undressing in front of males and seeing

7

males undress. NWLC has no intention to protect the interests of female athletes who disagree with or *cannot* agree with NWLC's position on this issue.

17. Just like NWLC, WoLF regularly contributes to public debate on Title IX, participates in litigation, advocates for women's rights, provides expert testimony before legislative bodies, and seeks to influence the NCAA, the U.S. Department of Education and other regulatory bodies.

18. NWLC has no more expertise or involvement on issues pertaining to women in sport than WoLF does and there is no reason to prefer NWLC as an advocacy organization or resource on women's issues over WoLF. WoLF has been extensively involved on Title IX and women's sports issues since the organization's inception. WoLF submitted a "Petition for Rulemaking to Protect the Title IX Rights of Women and Girls", Docket No. ED-2020-OGC-0163, February 8, 2021[2] in response to President Biden's Day 1 executive order 12866 in which he directed all federal departments and agencies to redefine sex to include "gender identity" in a way that overrides sex as a protected characteristic in the law.

19. WoLF has participated in private sessions for advocacy groups hosted by the Office of Civil Rights, submitted testimony to Dept. of Ed's town hall meeting, and met with federal agencies involved in the Title IX rulemaking process

---

[2] https://static1.squarespace.com/static/5f232ea74d8342386a7ebc52/t/6022e55eae05fe1efe9187d6/1612899681917/Petition+for+Rulemaking+to+Protect+the+Title+IX+Rights+of+Women+and+Girls+(with+Exhibits)+2-8-21.pdf

in 2021, 2022, and 2024. WoLF submitted a public comment for the 2022 Notice of Proposed Rulemaking ("NPRM") for Title IX, 87 Fed. Reg 41390 (July 12, 2022), Docket No. ED-2021-OCR-0166.[3] WoLF later submitted a public comment for the 2023 NPRM for Title IX relating to "Sex-Related Eligibility Criteria for Male and Female Athletic Teams", 88 F. Reg. 22860 (4/13/23, 2023), Docket No. ED-2022-OCR-0143.[4] The comments included lengthy analysis and argument of provisions related to "gender identity", sports, locker rooms, and bathrooms.

20. WoLF co-wrote the Women's Bill of Rights ("WBOR") which codifies the longstanding definition of sex as being based on a person's biology (as opposed to being defined by their subjective, self-reported inner essence). In the states which have passed into law legislation based on WBOR, it conflicts with federal and NCAA policy that require recipients to redefine sex in a way that dismantles female-only student athletics. WoLF has also submitted testimony at the state level on sports bills written to protect women's and girls' sports, and has endorsed both state and federal legislation on this subject.

21. WoLF filed a lawsuit in 2016 challenging President Obama's guidance on Title IX. *Women's Liberation Front v. United States Department of Justice, et al.,* United States District Court for the District of New Mexico, case number

---

[3] https://static1.squarespace.com/static/5f232ea74d8342386a7ebc52/t/631f996891b46473e23b5958/1663015272604/Title+IX+Public+Comments+from+WoLF+FILED+2022+SEPTEMBER+11.pdf

[4] https://static1.squarespace.com/static/5f232ea74d8342386a7ebc52/t/6463a480bebe2341b5b40a01/1684251776538/Women%27s+Liberation+Front+Title+IX+Public+Comment+Final++%281%29.pdf

1:16-cv-00915.[5] The lawsuit was later made moot when the subsequent administration withdrew the guidance.

22. WoLF has submitted *amicus* briefs on the issue of women's sports for: *Lindsay Hecox, et al. v. Bradley Little*, et al., Ninth Circuit (2020), Case No 20-35813; *A.M., by her mother and next friend, E.M., v. Indianapolis Public Schools*, et al., Seventh Circuit (2022), Case No. 22-2332; and *State of West Virginia, et al. v. B.P.J., by next friend and mother, Heather Jackson*, U.S. Supreme Court (2023), Case No. 22AA800.

23. NWLC claims to have a "defense" that shares common questions of law or fact with the NCAA, but this is not accurate in our view. WoLF as an advocacy organization would be interested in becoming a party to this case to platform our views, seek discovery from parties with whose views we may disagree, and seek to influence the development of the law in this area, just as NWLC is seeking to do here. However, we have not previously understood that a party could intervene in a case without actually having a claim or defense potentially affected by the case. In the event that NWLC were to be granted leave to intervene in this case, WoLF would also be interested in intervening in this case as a party.

---

[5] https://static1.squarespace.com/static/5f232ea74d8342386a7ebc52/t/5f2b15de430dd7118cf275b4/1596659166686/WoLF-v.-United-States-Department-of-Justice-complaint-as-filed.pdf

24. NWLC states it "has a substantial and longstanding interest in advocating for the equality of women and girls – including in athletics and access to sex-separated facilities …[and] a strong interest in the proper interpretation of Title IX and the Equal Protection Clause on these topics." NWLC Memorandum, ECF No. 36-1, p. 23 of 32. We, too, have these same interests. Not only does NWLC not adequately represent our interests, nor the interests of the many women and girls we represent, but NWLC is actually outright antagonistic toward the interests of the women and girls we represent, especially marginalized women such as lesbians who are targeted by homophobia from both the left and the right. Nor does the NCAA or any other party represent our interests in these important issues.

25. We raise the points made in this declaration for the benefit of the Court in considering NWLC's Motion and because, for the reasons explained above:

    a. NWLC's claims in its submission are in numerous respects inaccurate;

    b. It would not be fair or just to allow one "women's rights" organization to intervene as a party in this case when there is a broad spectrum of women's rights organizations and NWLC represents only one very narrow part of the spectrum; and

    c. It would be particularly unfair to only allow intervention by a "women's rights" organization that (1) overtly prioritizes male interests over the rights of women and girls, and (2) seeks to silence the millions of women and girls who would express their disagreement with its position.

26. Thank you for considering this testimony from WoLF.

I declare under the penalties of perjury under the laws of the United States of America that the foregoing representations are true and correct.

Executed on June 14, 2024.

/s/ L. Sharon Byrne
L. Sharon Byrne