# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RILEY GAINES, *et al.*<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE<br>ATHLETIC ASSOCIATION, *et al.*<br><br>　　　　Defendants. | Case No. 1:24-cv-01109-MHC |

**DECLARATION OF CONCERNED WOMEN FOR AMERICA**

I, Doreen Denny, make the following declaration:

1.　　I am a Senior Advisor for Concerned Women for America (CWA), a resident of the United States over the age of eighteen, and I am competent to testify and have personal knowledge of the facts stated in this declaration.

2.　　CWA is a grassroots women's organization with more than half a million members in all fifty states, and thousands in the state of Georgia. Through its grassroots organization, CWA encourages policies that strengthen and protect women and families and advocates for the traditional virtues that are central to America's cultural health and welfare.

3.　　CWA has Young Women for America (YWA) chapters in colleges and universities around the country with 293 leaders committed to protecting women's dignity in all areas, including sports. In the state of Georgia, we have a

strong chapter at the Georgia Institute of Technology and eleven YWA ambassadors.

4. As a women's organization, CWA has an interest in working against nullification of women's sports and protecting female athletes from the injustice of competing against biological males.

5. In 2020, the Department of Education's Office of Civil Rights agreed with CWA's complaint against a university's transgender participation and inclusion policy, finding that the school violated Title IX equal opportunity protections for female athletes and requiring the school to rescind its policy.[1]

6. For these reasons, among many others, we have great interest in the matter currently before this honorable court in *Gaines, et al. v. NCAA, et al.,* No. 1:24-cv-01109-MHC.

7. Due to our strong interest in this case, CWA has become aware of the Motion to Intervene filed by the National Women's Law Center (NWLC) on May 6th, 2024, with its accompanying memorandum of law (NWLC Memorandum).

8. The NWLC Memorandum states NWLC supports trans-identifying males competing in women's sports "as a matter of both civil rights law and of human rights." It also states: "NWLC is not alone. The overwhelming majority of

---

[1] *See* Doreen Denny, "CWA's Victory in Transgender Sports Case a Win for Women's Rights," CWA, Oct. 20, 2020, available at https://bit.ly/3RXzllO.

women's rights and gender justice organizations share the view that the inclusion of women and girls who are transgender in sports advances the goal of equal opportunity for women and girls to benefit from athletic participation." NWLC Memorandum, ECF No. 36-1, p. 10 of 32.

9.  CWA strongly disagrees with many of the factual assertions in the foregoing statement by NWLC, for example:

- An overwhelming majority of women reject men competing in women's sports and male access to female safe spaces.

- A recent GALLUP report found that nearly 70% of women believe athletes should only compete on teams that match their birth gender.[2]

- Allowing men who self-identify as women to take women's spots in sports competitions is regressive and harmful to women.

- Due to the extensive, innate physiological differences between women and men, which begin at the earliest stages of human development, single-sex sports are necessary for women and girls to compete safely and fairly and to realize the myriad benefits of their athletic participation.

- Policies that allow self-identification for sex categories in sports in fact violate women's civil rights as they unquestionably have a disparate impact on women, given the clear biological differences between the sexes.[3]

---

[2] Jeffrey M. Jones, "More Say Birth Gender Should Dictate Sports Participation," GALLUP (June 12, 2023), available at https://news.gallup.com/poll/507023/say-birth-gender-dictate-sports-participation.aspx.

[3] Thibault, V., Guillaume, M., Berthelot, G., Helou, N. E., Schaal, K., Quinquis, L., Nassif, H., Tafflet, M., Escolano, S., Hermine, O., & Toussaint, J. F. (2010). Women and Men in Sport Performance: The Gender Gap has not Evolved since 1983. *Journal of sports science & medicine*, *9*(2), 214–223; Institute of Medicine (US) Committee on Understanding the Biology of

- Women lose under the types of discriminatory practices that force them to compete against males, and the U.S. Supreme Court has long recognized such disparate impact to establish a *prima facie* case of discrimination.[4]

- As Justice Ruth Bader Ginsburg recognized in *United States v. Virginia*, 518 U.S. 515, 533 (1996), "Physical differences between men and women, however, are enduring…" and the disparate discriminatory (or negative) impact on the benefits available to female athletes is palpable based on that genetic reality.[5]

- To allow such a discriminatory policy to continue is to say that an educational institution could have an all-biological male swimming or even wrestling or boxing team, both in the men's and women's categories of competition, while remaining in full compliance with federal law, potentially eliminating all opportunities for female athletes in a program. Any interpretation of federal law facilitating such a result is anathema to Title IX.

- Ensuring equal opportunity for trans-identified athletes cannot come at the expense of women's rights, dignity and safety, through the blatant distortion of civil rights law.

- As for the human rights angle, all major human rights instruments acknowledge sex in biological terms and do not include trans-identifying males in the category of women.

---

Sex and Gender Differences; Wizemann TM, Pardue ML, editors. Exploring the Biological Contributions to Human Health: Does Sex Matter? Washington (DC): National Academies Press (US); 2001. 2, Every Cell Has a Sex. Available from: https://www.ncbi.nlm.nih.gov/books/NBK222291/.

[4] *See Dothard v. Rawlinson*, 433 U.S. 321, (1977).

[5] *See* Thibault, Valérie et al. *Women and Men in Sport Performance: The Gender Gap has not Evolved since 1983*, Journal of sports science & medicine, vol. 9,2 214-23. 1 Jun. 2010; Institute of Medicine (US) Committee on Understanding the Biology of Sex and Gender Differences, Wizemann TM, Pardue ML, editors, *Exploring the Biological Contributions to Human Health: Does Sex Matter?* Washington (DC): National Academies Press (US); 2001. 2, 2, *Every Cell Has a Sex* https://www.ncbi.nlm.nih.gov/books/NBK222291/.

- To allow for such an erasure of women in reporting is extremely trouble because it will skew important data in crucial areas like violent crimes and victims' safety.

- The United Nations Special Rapporteur on violence against women and girls has said that an interpretation of Title IX that requires trans-identifying males to have access to women's sports teams is contrary to the obligations the U.S. Government has under international human rights agreements and would lead to discrimination and serious harms to women and girls.

10. CWA Young Women for America leader and college scholarshipped volleyball athlete Macy Petty testified before the Tennessee House Education Administration Committee about the disparate impact of policies allowing males in her specific sport.

> Through my time playing club volleyball, I have had the chance to play my sport against boys. My volleyball club had a men's league, and some clubs let men play on their women's teams. In the rules of volleyball, the standard men's net is seven inches higher than a women's net because of their natural biological ability to jump higher. This obviously made it extremely difficult for us when trying to play on their net. When the boys would come to play with us, I would cover my head, scared of them giving me a concussion. It became very obvious to me why we played on separate height nets. Not only could they jump higher, but they were also stronger and, on average, much taller.[6]

11. NWLC argues "[p]olicies excluding women and girls who are transgender from school sports harm not only those women and girls, but threatens all women and girls who excel in athletics, as well as all who depart from gender

---

[6] Macy Petty, *Statement Before the Tennessee House Education Administration Committee Hearing on H.B. 2316* (March 16, 2022), https://concernedwomen.org/wp-content/uploads/2022/03/TN-Testimony-Macy-Petty.pdf.

5

stereotypes." NWLC Memorandum, ECF No. 36-1, p. 11 of 32; *see also* p. 12 ("Categorical bans").

12. The foregoing claim by NWLC is not supported by evidence. Biology is not bigotry. To say rules that protect women's places and spaces are "excluding … from school sports" or "bans," is misleading.

13. If Title IX does not protect a female athlete from being exposed to a naked male against her consent or having to deal with such distress as she is trying to compete at the highest levels of her sport, it is worthless.

14. U.S. Secretary of Education Miguel Cardona had to admit as much in a hearing before the U.S. House of Representative's Education and Workforce Committee on May 16, 2023. Rep. Erin Houchin (R-Indiana) asked Secretary Cardona about sexual harassment under Title IX:

> **Houchin:** Do you believe that requiring those women to undress in front of Lia Thomas and allowing Lia Thomas to undress in front of female athletes constitutes sexual harassment, yes or no?
>
> **Cardona:** I don't believe students should, be, feel unsafe in any locker room.
>
> **Houchin:** Do you believe that it constitutes sexual harassment to force women to undress in front of biological males?

**Cardona:** I do believe forcing, uh, forcing women to undress in front of biological males is a concern and sexual … yes.[7]

15.   Secretary Cardona struggled through the exchange, but he was forced to admit the obvious. This is the very essence of Title IX. The men's team does not have to deal with feeling unsafe in their own locker room. Why is this tolerated in the case of female athletes?

16.   NWLC cannot reasonably defend the NCAA policy because it argues that a rule that requires one year of gender-affirming hormone therapy would be reinforcing pernicious sex stereotypes. All such rules are acknowledgements of biological reality and are ultimately arbitrary and capricious, when the scientific differences between males and females are ultimately repudiated.

17.   They object to "inappropriate policing of students' bodies," NWLC Memorandum, ECF No. 36-1, pp. 11 of 32, though there is no evidence of harm to women for a simple and discrete DNA check swab or reliance upon birth records, for example. Sex verification can be easily accomplished in private and has been done for years without the sort of harms or difficulty that NWLC claims.

18.   In a bizarre twist, NWLC claims that "[b]lack and brown women and girls who play school sports are at a particularly high risk of harm under these

---

[7] Committee on Education & the Workforce Hearing, *Examining the Policies and Priorities of the Department of Education*, May 16, 2023, at https://edworkforce.house.gov/calendar/eventsingle.aspx?EventID=409132.

policies, because Black and brown women are often viewed as 'nonconforming' with white-centric stereotypes of femininity." NWLC Memorandum, ECF No. 36-1, pp. 11-12 of 32.

19. The foregoing claim by NWLC is unsupported by any reliable evidence. There is no evidence to support it, and it is irresponsible and offensive to the many minority women CWA represents.

20. Just like NWLC, CWA regularly advocates on behalf of women's rights in the legal and cultural debate on Title IX, testifies before Congress, and seeks to influence the NCAA, the U.S. Department of Education and other regulatory bodies.[8]

21. The NWLC has no more expertise, commitment to women, or involvement on issues pertaining to women in sports than CWA does, and there is no reason to prefer NWLC as an advocacy organization or resource on women's issues over CWA.

---

[8] Some examples include, "CWA Files Civil Rights Complaint Against UPenn" at https://concernedwomen.org/cwa-files-civil-rights-complaint-filed-against-upenn/; "Women's Organizations Demand Letter to Charlie Baker and the NCAA," at https://concernedwomen.org/wp-content/uploads/2024/01/women-organizations-NCAA_Demand-Letter.pdf; "CWA Stands Up for Women in Title IX Meeting with Biden Administration Officials," at https://concernedwomen.org/cwa-stands-up-for-women-in-title-ix-meeting-with-biden-administration-officials/; House Subcommittee Hearing on Protecting Female Athletes and Title IX," at https://concernedwomen.org/house-subcommittee-hearing-on-protecting-female-athletes-and-title-ix/; "New Evidence in Civil Rights Complaint Against UPenn," at https://concernedwomen.org/new-evidence-in-civil-rights-complaint-against-upenn/.

22. While the NWLC claims to have a "defense" that shares common questions of law or fact with the NCAA, this is not accurate. The NWLC can no more be a defendant in this Title IX case to the claims being made by the Plaintiffs than our organization can be. We do not receive federal funding and so like the NWLC are not covered by Title IX.

23. In the event that the NWLC were to be granted leave to intervene in this case, it is likely that our organization would also be interested in intervening in this case as a party. We have not done so, understanding that without actually having a claim or defense potentially affected by the case, we could not properly do so, and *amicus* filings would more properly allow each advocate organization to make their views heard before this honorable court.

24. The NWLC states it "has a substantial and longstanding interest in advocating for the equality of women and girls – including in athletics and access to sex-separated facilities …[and] a strong interest in the proper interpretation of Title IX and the Equal Protection Clause on these topics." NWLC Memorandum, ECF No. 36-1, p. 23 of 32. We, too, have these same interests.

25. The NWLC does not adequately represent our interests or the interests of the hundreds of thousands of women and girls we represent. We raise the points made in this declaration for the benefit of the Court in considering the NWLC's Motion and because, for the reasons explained above:

9

  a. The NWLC's claims in its submission are in numerous respects inaccurate and highly contested; and

  b. It would not be fair or just to allow one "women's rights" organization to intervene as a party in this case when there is a broad spectrum of women's rights organizations which are equally interested in this important case.

26. Thank you for considering this testimony from Doreen Denny.

I declare under the penalties of perjury under the laws of the United States of America that the foregoing representations are true and correct.

Executed on June 14, 2024.

            /s/ Doreen Denny
            Doreen Denny