# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| RILEY GAINES, *et al.*, | |
| *Plaintiffs*, | |
| | No. 1:24-cv-01109-MHC |
| v. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | |
| *Defendants*, | July 3, 2024 |
| and | |
| NATIONAL WOMEN'S LAW CENTER, | |
| [*Proposed*] *Intervenor-Defendant*, | |

**[PROPOSED] INTERVENOR-DEFENDANT NATIONAL WOMEN'S LAW CENTER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

ARGUMENT ............................................................................................4

I.    NWLC SATISFIES THE REQUIREMENTS FOR PERMISSIVE
      INTERVENTION. .................................................................................5

      A.    NWLC's Motion Is Timely. .......................................................5

      B.    NWLC's Defense Shares Common Questions of Law and Fact. ........5

II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT
      NWLC'S INTERVENTION. ...................................................................9

      A.    NWLC Will Defend the Policy and Represent Otherwise
            Unrepresented Interests, Thereby Advancing the Fair and
            Equitable Resolution of this Matter. ...........................................9

      B.    NWLC's Subject Matter Expertise Will Assist in the Fair and
            Equitable Resolution of the Case. .............................................11

      C.    Intervention Will Not Cause Plaintiffs Undue Prejudice or
            Delay. ...................................................................................12

      D.    Participation as Amicus is Not an Adequate Substitute....................14

CONCLUSION ........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)........................................................................4, 15

*335-7 LLC v. City of N.Y.*,
No. 20 Civ. 1053, 2020 WL 3100085 (S.D.N.Y. June 11, 2020) ........................8

*Alabama v. U.S. Dep't of Com.*,
No. 18 Civ. 772, 2018 WL 6570879 (N.D. Ala. Dec. 13, 2018)................*passim*

*Am. All. for Equal Rts. v. Ivey*,
No. 24 Civ. 104, 2024 WL 2034703 (M.D. Ala. May 7, 2024).................*passim*

*Athens Lumber Co. v. FEC*,
690 F.2d 1364 (11th Cir. 1982) ...............................................9

*Baldus v. Members of Wis. Gov't Accountability Bd.*,
No. 11 Civ. 562, 2011 WL 5834275 (E.D. Wis. Nov. 21, 2011)........................8

*Buck v. Gordon*,
959 F.3d 219 (6th Cir. 2020) .................................................8

*Danner Const. Co. v. Hillsborough Cnty.*,
No. 809 Civ. 650, 2009 WL 2525486 (M.D. Fla. Aug. 17, 2009) ......................9

*Dillard v. Chilton Cnty. Comm'n*,
495 F.3d 1324 (11th Cir. 2007) ...............................................7

*Franciscan All., Inc. v. Azar*,
414 F. Supp. 3d 928 (N.D. Tex. 2019) ...............................................7

*Greene v. Raffensperger*,
No. 22 Civ. 1294, 2022 WL 1045967 (N.D. Ga. Apr. 7, 2022)..........................5

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of
Am. AFL-CIO, Loc. 283 v. Scofield*,
382 U.S. 205 (1965)...............................................15

*Mont. Pub. Int. Rsch. Grp. v. Jacobsen*,
  No. 23 Civ. 70, 2024 WL 197364 (D. Mont. Jan. 18, 2024)..............................11

*Mun. Commc'ns III, LLC v. Columbus, Ga.*,
  No. 22 Civ. 36, 2022 WL 17159272 (M.D. Ga. Nov. 22, 2022).......................10

*Nielsen v. DeSantis*,
  No. 20 Civ. 236, 2020 WL 6589656 (N.D. Fla. May 28, 2020) .......................11

*Schaghticoke Tribal Nation v. Norton*,
  No. 06 Civ. 81, 2006 WL 1752384 (D. Conn. June 14, 2006)..........................12

*Soule v. Conn. Ass'n of Sch., Inc.*,
  90 F.4th 34 (2d Cir. 2023) ...........................................................................1, 14

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017)............................................................................................7

*Vote.org v. Byrd*,
  No. 23 Civ. 111, 2023 WL 7174246 (N.D. Fla. May 26, 2023) .........................5

## Other Authorities

7C Fed. Prac. & Proc. Civ. § 1911 (3d ed.)....................................................................7

Fed. R. Civ. P.
  24(b).....................................................................................................................3
  24(b)(2) ................................................................................................................5
  24(b)(3) ..............................................................................................................12

Katie Akin, *At Kim Reynolds' event, Riley Gaines says transgender
  identities are 'spiritual warfare'*, DES MOINES REG. (Oct. 15, 2023,
  7:51 AM CT),
  https://www.desmoinesregister.com/story/news/politics/2023/10/1
  5/riley-gaines-says-transgender-identities-are-spiritual-
  warfare/71073481007 ........................................................................................13

Letter from Independent Council on Women's Sports et al. to NCAA
  et al. (Jan. 12, 2023), https://www.iconswomen.com/ncaa-demand-
  letter/#icons-letter ............................................................................................13

Press Release, ICONS, *Independent Council on Women's Sports
    Funds Landmark Lawsuit Against NCAA to Uphold Fairness in
    Women's Sports* (Mar. 14, 2024, 11:39 PM ET),
    https://www.globenewswire.com/news-
    release/2024/03/15/2846794/0/en/Independent-Council-On-
    Women-s-Sports-Funds-Landmark-Lawsuit-Against-NCAA-to-
    Uphold-Fairness-in-Women-s-Sports.html ..........................................................4

*Riley Gaines*, INDEP. WOMEN'S VOICE,
    https://www.iwv.org/people/riley-gaines/ ..........................................................13

Sean Murphy, *Transgender rights targeted in executive order signed
    by Oklahoma governor*, AP (Aug. 1, 2023, at 5:24 PM ET),
    https://apnews.com/article/transgender-rights-oklahoma-governor-
    67dc0c4a9d769066ccb1b9835c71449f ..........................................................13, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

As an organization with a deep and longstanding commitment to protecting the equal athletic opportunity of *all* girls and women—cisgender and transgender—the National Women's Law Center ("NWLC") seeks to intervene as a defendant to defend the lawfulness of the National Collegiate Athletic Association's (the "NCAA") policy allowing women who are transgender to participate on women's sports teams. Plaintiffs in this case have asked the Court to certify a nationwide class and impose a nationwide ban on women who are transgender from participating in NCAA women's sports or using women's locker room, restroom, or shower facilities at NCAA competitions. Plaintiffs seek this sweeping relief based on a profoundly wrong "interpretation of Title IX that no court has ever adopted." *Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 66 (2d Cir. 2023) (en banc) (Nathan, J., concurring).

Defendants' responses to the Complaint illustrate why NWLC's intervention is necessary.[1] Defendants' motions to dismiss do not even address the merits of Plaintiffs' unprecedented arguments. Instead, Defendants' motions are limited to explaining why the Complaint must be dismissed on the basis of threshold issues,

---

[1] Defendants filed motions to dismiss the original Complaint on June 5, 2024. ECF Nos. 54, 55. Plaintiffs filed an Amended Complaint on June 26, 2024, *see* ECF No. 64, which mooted the motions to dismiss, *see* ECF No. 65. Defendants' responses to the Amended Complaint are due on July 24, 2024. *See id.* NWLC's tendered Motion to Dismiss, ECF No. 36-3, responded to Plaintiffs' original complaint. If intervention is granted, NWLC will file an updated version of its Motion to Dismiss in response to the Plaintiffs' Amended Complaint at the same time as the original Defendants.

including that the NCAA is not subject to Title IX, that the NCAA is not a state actor, and that Plaintiffs lack standing. *See* NCAA Br., ECF No. 55-1; *see also* State Defs.' Br., ECF No. 54-1 (arguing that the State Defendants cannot be held liable for implementing the NCAA's policy, and that claims against the State Defendants are barred by sovereign immunity and qualified immunity). The State Defendants go so far as to declare that they "share many of the Plaintiffs' concerns about the NCAA's policies at issue." State Defs.' Br. at 2.

NWLC is thus the only litigant before this Court that is in a position to respond to the merits of Plaintiffs' claims—including as a basis for dismissing the Complaint—and to explain why neither Title IX nor the Fourteenth Amendment prohibits schools and athletic associations from allowing women who are transgender to participate on women's teams and use women's facilities. *See* NWLC's Proposed Motion to Dismiss, ECF No. 36-3 at 15–24 (responding to Plaintiffs' claims on the merits). Especially in "a consequential dispute like this, on a topic of great magnitude," NWLC's intervention is necessary to ensure that this Court is not forced to render a decision with briefing on only one side of the legal argument. *Am. All. for Equal Rts. v. Ivey*, No. 24 Civ. 104, 2024 WL 2034703, at *3 (M.D. Ala. May 7, 2024); *see also Alabama v. U.S. Dep't of Com.*, No. 18 Civ. 772, 2018 WL 6570879, at *3 n.2 (N.D. Ala. Dec. 13, 2018) (granting permissive intervention in light of "Defendants' rather halfhearted motion to dismiss" because

it "will increase the prospect that the court will be more fully informed of the best arguments that support Defendants' position").

Plaintiffs' arguments against intervention are without merit. When discussing the controlling standard for permissive intervention, Plaintiffs fail to acknowledge—much less distinguish—the many cases in which courts have granted permissive intervention in analogous circumstances. *See* NWLC Mot. at 17, ECF No. 36-1. It is settled law that a litigant seeking to permissively intervene under Federal Rule of Civil Procedure 24(b) as a defendant need not independently establish a protectible legal interest in the dispute, and courts in similar situations have routinely granted advocacy organizations permissive intervention to defend challenged policies.

Plaintiffs also argue that intervention should be denied by wrongly conflating NWLC's public advocacy with NWLC's legal defense of NCAA's policy. Plaintiffs frame NWLC's defense as a fight against those who are "anti-trans" or "extremists." *See* Pls.' Opp. at 1, 3, 6, 20. However, NWLC's defense is represented in its Motion to Intervene, not its out-of-court engagement in political debates, including debates with the organization financially sponsoring this case, the Independent Council on Women's Sport ("ICONS"), *see* ECF No. 32 ¶ 2 (identifying ICONS as an interested party).[2] Instead, NWLC's public advocacy further demonstrates NWLC's motivation

---

[2] *See also* Press Release, ICONS, *Independent Council on Women's Sports Funds Landmark Lawsuit Against NCAA to Uphold Fairness in Women's Sports* (Mar. 14,

to defend the lawfulness of NCAA's policy. Indeed, as explained in NWLC's Motion to Intervene, none of the other parties in this case appear to have the same incentive to provide a vigorous defense. Inside the courtroom, this is a legal dispute, not a political one. NWLC simply seeks to intervene to ensure that NCAA's policy is properly defended on the merits. In doing so, NWLC and counsel for NWLC are deeply committed to conducting themselves in this litigation—and any litigation— with civility and respect.

Finally, the possibility of NWLC participating as an *amicus* is no substitute for intervention because an *amicus* cannot participate in developing the factual record or negotiating factual stipulations, which can often be outcome-determinative. *Cf. 303 Creative LLC v. Elenis*, 600 U.S. 570, 593 (2023) (explaining how defendants' legal defenses were foreclosed by factual stipulations they had entered into).

For all these reasons, and for the reasons set forth in NWLC's opening brief, NWLC respectfully requests that permissive intervention be granted.

**ARGUMENT**

---

2024, 11:39 PM ET), https://www.globenewswire.com/news-release/2024/03/15/2846794/0/en/Independent-Council-On-Women-s-Sports-Funds-Landmark-Lawsuit-Against-NCAA-to-Uphold-Fairness-in-Women-s-Sports.html.

I.      **NWLC Satisfies the Requirements for Permissive Intervention.**

A.      **NWLC's Motion Is Timely.**

Plaintiffs do not dispute that NWLC's motion is timely. NWLC filed its motion to intervene less than two months after the original Complaint was filed, ECF No. 1, and within the time Defendants were granted to respond to the Complaint, ECF No. 35. *See* NWLC Mot. at 13 (collecting cases finding similar motions timely).

B.      **NWLC's Defense Shares Common Questions of Law and Fact.**

NWLC also has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). *See* NWLC Mot. at 15–18. When a permissive intervenor seeks to join a case as an intervenor-defendant, Rule 24(b)'s requirements are met when the intervenor seeks to defend the same law or policy being challenged by the plaintiff. That is precisely what NWLC intends to do here. *See Am. All. for Equal Rts.*, 2024 WL 2034703, at *3 (explaining that intervenor's "defense shares a common question of law with the parties' dispute; that is, whether the challenged statutory provisions are constitutional"); *Vote.org v. Byrd*, No. 23 Civ. 111, 2023 WL 7174246, at *1 (N.D. Fla. May 26, 2023) ("[T]he movants intend to defend the same signature requirement that Plaintiffs contend is unlawful and that the current Defendants enforce. Movants' defenses will thus share questions of law and fact common with the main action.") (citations omitted); *Greene v. Raffensperger*, No. 22 Civ. 1294, 2022 WL 1045967, at *4 (N.D. Ga. Apr. 7, 2022) (holding requirement met where intervenor seeks to provide defenses that

"turn on the same legal issue—the constitutional validity of the Challenge Statute"); *Alabama*, 2018 WL 6570879, at *1 (holding requirement met where proposed intervenors, including "an organization that 'works to increase Latino political empowerment'" argued challenged rule was "lawful under both the Constitution and the [Administrative Procedure Act]").

As Plaintiffs note, NWLC believes not only that Plaintiffs' challenge to the NCAA's current policy is meritless, but also that the NCAA's current policy is overly restrictive and should be even more inclusive in allowing women who are transgender to participate on women's teams. Pls.' Opp. at 9–12. But, contrary to Plaintiffs' assertions, NWLC is not interjecting those additional legal issues into this dispute. Rather, as outlined in NWLC's proposed motion to dismiss, the sole legal issues in this case—and the sole legal issues raised by NWLC—are whether, as Plaintiffs contend, Title IX and the Equal Protection Clause of the Fourteenth Amendment *require* the NCAA and participating schools to categorically exclude women who are transgender from women's teams and facilities. Whether NWLC believes that the NCAA's policy should be *even more* inclusive is not at issue here.

Relying on a handful of mostly outdated decisions, Plaintiffs assert that NWLC does not have a sufficiently specific legal interest to qualify as a "claim or defense" under Rule 24(b). Pls.' Opp. at 17–18. But, as reflected in the more current cases cited above and in NWLC's opening brief, courts both within this Circuit and

elsewhere do not construe Rule 24(b) so narrowly. Unlike Rule 24(a), which governs intervention as of right, Rule 24(b) "makes no mention of interest" at all. 7C Fed. Prac. & Proc. Civ. § 1911 (3d ed.). Thus, while Plaintiffs identify some decisions that have (wrongly) construed Rule 24(b) in an overly restrictive manner, the greater weight of authority recognizes that courts have discretion to authorize permissive intervention even when an organization "has not shown a substantively legal right, separate from a generalized grievance any member of the public may raise." *Am. All. for Equal Rts.*, 2024 WL 2034703, at *2 (denying intervention as of right for lack of a legal interest, but then granting permissive intervention). And, as explained in NWLC's opening brief, courts have routinely allowed advocacy and membership organizations to permissively intervene to support challenged laws and policies— including laws and policies protecting (or discriminating against) LGBTQI+ students and athletes. *See* NWLC Mot. at 16–17, 20–21.[3]

Plaintiffs also argue that NWLC's intervention is impermissible because it

---

[3] Plaintiffs concede that there is no requirement that intervenor-defendants have Article III standing. *Contra* Pls.' Opp. at 21. Article III standing in the district court is required only when an intervenor "wishes to pursue relief not requested by a plaintiff." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017); *see generally Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019). As an intervenor-defendant that is not seeking any additional judicial relief, NWLC can "'piggyback' on the parties' standing because it seeks to intervene . . . while there 'exists a justiciable case or controversy between the parties already in the lawsuit.'" *Am. All. for Equal Rts.*, 2024 WL 2034703, at *2 (quoting *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1336, 1338 (11th Cir. 2007)).

would "open the floodgates to intervention by other similarly situated advocacy organizations." Pls.' Opp. at 24. But no other organization has yet sought intervention in this case, and if other hypothetical organizations were to seek intervention, those motions would not be as timely as NWLC's. *See, e.g.*, *335-7 LLC v. City of N.Y.*, No. 20 Civ. 1053, 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020) (explaining that timeliness requirement would prevent additional intervenors).

Plaintiffs attach declarations from advocacy organizations saying they would seek intervention if NWLC's motion is granted. Pls.' Opp. at 2. But those organizations, whose interests are aligned with Plaintiffs, would not contribute anything additional to this dispute if allowed to intervene. Similarly, if NWLC is allowed to intervene, then any other hypothetical organization seeking to defend NCAA's policy would likely not have grounds to intervene because NWLC's participation will ensure that the interests of women supporting inclusive policies are represented. *See Baldus v. Members of Wis. Gov't Accountability Bd.*, No. 11 Civ. 562, 2011 WL 5834275, at *2 (E.D. Wis. Nov. 21, 2011) (explaining that future intervenors would not be able to show that their interests were left unrepresented).

In all events, any concern about "floodgates" is not a basis for interpreting Rule 24(b) to remove discretion from the district court to grant intervention when it is otherwise appropriate, as it is here. *See Buck v. Gordon*, 959 F.3d 219, 226 (6th Cir. 2020) (finding "floodgates" concerns unpersuasive).

**II.    The Court Should Exercise Its Discretion to Grant NWLC's Intervention.**

Because NWLC has satisfied Rule 24(b)'s prerequisites for permissive intervention, whether to grant such intervention is "within the discretion of the district court." *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1367 (11th Cir. 1982). All relevant considerations weigh strongly in favor of allowing NWLC to intervene.[4]

**A.    NWLC Will Defend the Policy and Represent Otherwise Unrepresented Interests, Thereby Advancing the Fair and Equitable Resolution of this Matter.**

If permitted to intervene, NWLC will be the only party in a position to vigorously defend against the merits of Plaintiffs' claims; it will also be the only party to represent the interest of all women—cisgender and transgender alike—who support inclusive polices. For their part, the State Defendants have stated expressly that they "share many of the Plaintiffs' concerns about the NCAA's policies at issue." State Defs.' Br. at 2. And the NCAA is subject to conflicting political pressures and has in recent years continued to impose greater restrictions on women who are transgender participating in women's sports. NWLC Mot. at 2–3, 19.

---

[4] Plaintiffs argue, incorrectly, that NWLC has not "clearly spelled out" its defenses as required under Rule 24(c). Pls.' Opp. at 15. Where a motion gives notice of the "position, claim, and relief sought," thus "clearly spell[ing] out the intervenor's position in th[e] case," the motion satisfies Rule 24(c) and does not prejudice plaintiffs. *See Danner Const. Co. v. Hillsborough Cnty.*, No. 809 Civ. 650, 2009 WL 2525486, at *2 (M.D. Fla. Aug. 17, 2009) (brackets and citations omitted). NWLC's motion to dismiss does just that. *See* NWLC Mot. at 23; ECF No. 36-3.

To be sure, the NCAA has not completely rescinded its policy or admitted liability, *see* Pls.' Opp. at 3, but its motion to dismiss focuses exclusively on the threshold issue of whether the NCAA is covered by Title IX and the Equal Protection Clause without providing any merits defense of the NCAA's challenged policy. *See* NCAA Br. at 5–19. Thus, even if the NCAA shares NWLC's ultimate objective in dismissing this case, "[s]haring a final objective does not mean [they] are equally motivated. Nor does it mean that they will choose the same path toward that objective." *Mun. Commc'ns III, LLC v. Columbus, Ga.*, No. 22 Civ. 36, 2022 WL 17159272, at *3 (M.D. Ga. Nov. 22, 2022).

In opposing intervention, Plaintiffs argue that the divergence of interests between the NCAA and NWLC is not sufficient to establish that the NCAA's "representation is inadequate." Pls.' Opp. at 22. NWLC disagrees. But, in any event, the question is not whether NWLC has established inadequacy of representation under Rule 24(a) for intervention *as of right*. The question is whether the NCAA's limited defense makes it advisable for this Court to grant *permissive* intervention under Rule 24(b) to better ensure the fair and equitable resolution of the case.

NWLC easily meets that standard. Given the NCAA's failure to raise "key argument[s]" in defense of its policy, "[a]llowing intervention will increase the prospect that the court will be more fully informed of the best arguments that support Defendants' position." *Alabama*, 2018 WL 6570879, at *3 n.2 (challenge to

10

proposed rule permitting the inclusion of certain non-citizens in the 2020 census). This concern is especially salient here, given that this case involves "a consequential dispute" about "a topic of great magnitude": whether women who are transgender may participate in NCAA events nationwide. *Am. All. for Equal Rts.*, 2024 WL 2034703, at \*3 (examining Equal Protection challenge to race-based provisions in statutes concerning the Alabama Real Estate Appraisers Board); *see also Mont. Pub. Int. Rsch. Grp. v. Jacobsen*, No. 23 Civ. 70, 2024 WL 197364, at \*5 (D. Mont. Jan. 18, 2024) ("[G]iven the importance of the issues at stake, it is preferable to err on the side of more information, not less.").

## B.    NWLC's Subject Matter Expertise Will Assist in the Fair and Equitable Resolution of the Case.

NWLC is also uniquely well-suited to assist in the fair and equitable resolution of this case because of NWLC's deep subject-matter expertise with respect to Title IX in general and the athletics regulations under Title IX in particular. *See Nielsen v. DeSantis*, No. 20 Civ. 236, 2020 WL 6589656, at \*1 (N.D. Fla. May 28, 2020). NWLC's expertise will allow it to provide a response to Plaintiffs' inaccurate and incomplete description of the historical and legal landscape of Title IX, which would otherwise go unrebutted. NWLC Mot. at 18, 21. Allowing NWLC to intervene as a defendant will thus provide "the Court with a full picture of the issues to be decided and will permit the issues to be fully and thoroughly evaluated in an efficient, just, and speedy manner." *Schaghticoke Tribal Nation v. Norton*, No. 06 Civ. 81, 2006

WL 1752384, at *9 (D. Conn. June 14, 2006).

### C.    Intervention Will Not Cause Plaintiffs Undue Prejudice or Delay.

NWLC's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Alabama*, 2018 WL 6570879, at *2. The scheduling order recently issued by this Court, *see* ECF No. 65, provides ample time for NWLC's motion to dismiss to be considered together with any motions filed by Defendants. As Defendants noted in their requesting an extension of deadlines, because "briefing on [NWLC's] motion to intervene will be complete" by July 3, 2024, this briefing schedule "may create efficiencies associated with all motions to dismiss being filed at nearly the same time and with more information about who is a party to the case." *See* ECF No. 63.[5]

Nor does Plaintiffs' disagreement with NWLC's out-of-court public advocacy and communications on an issue of national importance mean that they would be prejudiced if NWLC were permitted to intervene as a party in this case. In portraying NWLC as having "attacked" Plaintiffs "for merely filing a lawsuit," Pls.' Opp. at 1–2, Plaintiffs misconstrue NWLC's public statements and present an incomplete picture of the broader political and policy debates that have been unfolding over the

---

[5] Even if NWLC's intervention were to cause some minor delay—and there is no indication it will—it would not be "undue or overly prejudicial" considering the breadth of Plaintiffs' claims and the importance of the issues at stake. *Am. All. for Equal Rts.*, 2024 WL 2034703, at *3.

course of several years—not merely from the inception of this lawsuit. Ms. Gaines, ICONS, and other advocacy organizations have all actively participated in those broader political and policy debates outside the courtroom.[6] Moreover, Plaintiffs' own Complaint argues that including transgender women in college sports is "a radical anti-woman agenda," backed by "the most radical elements of the so-called diversity, equity, and inclusion agenda," Compl. ¶¶ 25, 27, and repeatedly misgenders transgender women as "males."[7] Far from providing a basis to deny

---

[6] For example, Ms. Gaines has spoken at political rallies characterizing the recognition of transgender identity as a matter of "spiritual warfare," declaring that "[i]t's no longer about right versus wrong or good versus bad. This really is about moral versus evil." Katie Akin, *At Kim Reynolds' event, Riley Gaines says transgender identities are 'spiritual warfare'*, DES MOINES REG. (Oct. 15, 2023, 7:51 AM CT), https://www.desmoinesregister.com/story/news/politics/2023/10/15/riley-gaines-says-transgender-identities-are-spiritual-warfare/71073481007/.

Plaintiffs also object to being linked to organizations that oppose abortion rights or seek to define women by virtue of their reproductive capacity, Pls.' Opp. at 6, but they have, at the same time, actively linked themselves to those groups, submitting demand letters to the NCAA together with Concerned Women for America and the Alliance Defending Freedom, which have both advocated against abortion rights, *see* Letter from Independent Council on Women's Sports et al. to NCAA et al. (Jan. 12, 2023), https://www.iconswomen.com/ncaa-demand-letter/#icons-letter. Ms. Gaines "is [also] an ambassador at Independent Women's Voice," *Riley Gaines*, INDEP. WOMEN'S VOICE, https://www.iwv.org/people/riley-gaines/, which developed a "Women's Bill of Rights," model legislation that defines a "female" as a "person whose biological reproductive system is designed to produce ova." Sean Murphy, *Transgender rights targeted in executive order signed by Oklahoma governor*, AP (Aug. 1, 2023, at 5:24 PM ET), https://apnews.com/article/transgender-rights-oklahoma-governor-67dc0c4a9d769066ccb1b9835c71449f.

[7] *See, e.g.*, *id.* at 235 (referring to "a male student athlete who affirms they are transgender"), 250 (describing "males" who use hormone blockers), 235

intervention, the existence of deep disagreements between NWLC and Plaintiffs highlights the importance of permitting NWLC to intervene in this litigation where Plaintiffs purport to represent the interests of all future, current, or past NCAA women's athletes, particularly where NWLC is the *only* litigant with an incentive to vigorously defend NCAA's policy, the interests of women who support it, and the rights of transgender women athletes.

To be clear, none of this means that the courtroom is a forum for political advocacy. While NWLC's strong disagreement with Plaintiffs provides a motivation for NWLC to defend NCAA's policy, arguments made in a political arena are not the same as arguments made in a court of law. NWLC's only role as an intervenor would be to litigate that legal question, not to engage in political debates, and it is committed to doing just that.

### D.   Participation as Amicus is Not an Adequate Substitute.

Finally, the possibility of NWLC participating as an *amicus* is not an adequate substitute for NWLC's intervention. *Contra* Pls.' Opp. at 24–25. Unlike an *amicus*, an intervenor is also allowed to participate in discovery, negotiate factual stipulations, and present evidence in the district court. This ability to participate in shaping the evidentiary record is critical because a "halfhearted" effort to defend a

---

(mentioning "male athletes who identify as transgender")—a practice that courts have criticized as needlessly disrespectful. *See, e.g.*, *Soule*, 90 F.4th at 75 & n.6 (Pérez, J.) (concurring in part and dissenting in part).

policy during discovery can be just as damaging as a "halfhearted" defense in briefing the legal issues presented. *Alabama*, 2018 WL 6570879, at *3 n.2; *cf. 303 Creative LLC*, 600 U.S. at 593. Additionally, unlike an *amicus*, an intervenor is automatically included as a party on appeal, which gives the intervenor an ability "to participate in designating the record, to participate in prehearing conferences preparatory to simplification of the issues, to file a brief, to engage in oral argument, [and] to petition for rehearing in the appellate court." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 215 (1965).

As discussed above, NWLC is uniquely well-positioned to ensure that the Court is fully apprised of the relevant facts and law, and to correct Plaintiffs' assertions that might otherwise go unchallenged. *See* NWLC Mot. at 5–8, 19, 21 (discussing evidence that inclusive policies benefit all women and that exclusionary policies harm all women). NWLC's full "[p]articipation in defining the issues before the court [will] guarantee[] that all relevant material is brought to its attention, and makes the briefs on the merits more meaningful." *Int'l Union*, 382 U.S. at 215.

## CONCLUSION

For all these reasons, NWLC respectfully requests that this Court allow NWLC to permissively intervene in this matter as a defendant.

Dated: July 3, 2024

Joshua A. Block*
Jennesa Calvo-Friedman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org
jcalvo-friedman@aclu.org

Patrick J. Hayden*
Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
phayden@cooley.com
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
Phone: (202) 776-2353
ereinhardt@cooley.com

*/s/ Nneka Ewulonu*

Nneka Ewulonu
Georgia Bar No. 373718
Cory Isaacson
Georgia Bar No. 983797
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
GEORGIA, INC.
P.O. Box 570738
Atlanta, GA 30357
Phone: (770) 303-8111
newulonu@acluga.org
cisaacson@acluga.org

Kathleen Hartnett*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
zhelstrom@cooley.com

Celene Chen*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
celene.chen@cooley.com

*Counsel for Intervenor-Defendant*
**Admitted* pro hac vice*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

This 3rd day of July, 2024.

*/s/ Nneka Ewulonu*
Nneka Ewulonu

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 3rd day of July, 2024.

*/s/ Nneka Ewulonu*
Nneka Ewulonu
