UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RILEY GAINES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:24-cv-01109-MHC |
| v. | ) |
| | ) |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S POSITION STATEMENT CONCERNING PROPOSED PROTECTIVE ORDER REGARDING PSEUDONYM PLAINTIFFS**

Pursuant to the Court's Order on Plaintiffs' Motion to Proceed Under Pseudonyms (Dkt. 71), the NCAA submits as **Exhibit A** its proposed protective order. The NCAA also includes as **Exhibit B** a version of the protective order that is redlined to show how it differs from the Plaintiffs' proposed version.[1]

### I.   INTRODUCTION

The NCAA has no objection to Plaintiffs Swimmer A and Track Athlete A proceeding anonymously in public filings and legal proceedings at this stage of the litigation. The NCAA does object, however, to the entry of a Pseudonym Protective

---

[1] The parties met and conferred regarding their competing proposed orders but could not agree on the issues discussed herein. The NCAA proposed presenting these issues to the Court in a joint submission, but Plaintiffs declined.

Order ("PPO") that imposes obligations and restrictions that go well-beyond that which is reasonable and appropriate in this putative class action lawsuit—a lawsuit where Plaintiffs seek both injunctive relief and money damages.

Plaintiffs' proposed PPO makes Plaintiffs' counsel the arbiter of who the NCAA is allowed to speak with, interview, or consult as it prepares its defenses; gives Plaintiffs' counsel access to NCAA's counsel's protected work product; and grants Plaintiffs' counsel the right to object and prevent the NCAA from speaking to potential witnesses or gathering background facts on the pseudonymous putative class representatives as part of its routine investigation of Plaintiffs' claims, even though the NCAA has committed to securing a signed Acknowledgment and Agreement to Be Bound by the Court's protective order from interviewees before revealing the identity of Swimmer A and Track Athlete A. To be relieved from these unnecessary and onerous burdens imposed by Plaintiffs' proposed PPO, the NCAA would be required to seek relief from this Court to interview potential witnesses, resulting in unnecessary legal fees, time, and expense for the NCAA, not to mention the drain on judicial resources. Tellingly, none of these restrictions, conditions, or requirements would apply to counsel for Plaintiffs.

With their version of the proposed PPO, Plaintiffs have sought to weaponize the Court's Order on Plaintiffs' Motion to Proceed Under Pseudonyms (Dkt. 71) in a way that hamstrings the NCAA in conducting its investigation of Plaintiffs' claims

2

and preparing its defense of this case. That Order was limited to allowing the two "Pseudonym Plaintiffs" to proceed anonymously in public filings (subject to Defendants' right to later challenge that status if they believe Plaintiffs should no longer be permitted to proceed solely under their initials). (*See* Dkt. 71 at 6 n.2, 10–11.) It was also premised on the finding that "because Plaintiffs' Motion indicates that they agree to disclose their names to Defendants for purposes of the litigation pursuant to a protective order . . . , the Court finds that allowing them to proceed anonymously at this time will not prejudice Defendants' ability to defend themselves in the litigation." (*See* Dkt. 71 at 6.) Contrary to the Court's reasoned ruling, Plaintiffs' proposed PPO is ***highly prejudicial*** to the NCAA's ability to defend itself in this litigation.

The NCAA, in contrast, has compromised and demonstrated its good faith by first, not objecting to Swimmer A and Track Athlete A proceeding anonymously in public filings at this stage of the litigation; second, by proposing a third-party subpoena process in Section C of NCAA's proposed PPO that is not required under Rule 45 or any applicable law; and third, by agreeing to Plaintiffs' proposed PPO except for those provisions that would waive its work product protection and compromise its fundamental right to defend itself. The NCAA's proposed PPO prejudices no one, because it still requires the NCAA to obtain signed Acknowledgments and Agreements to Be Bound <u>before</u> revealing the identities of

3

Pseudonym Plaintiffs. For that reason, we respectfully request that the NCAA's proposed Pseudonym Protective Order be entered.

## II.   ARGUMENT AND CITATION OF AUTHORITIES

The NCAA is entitled to defend itself without oversight or control by Plaintiffs or disclosure to Plaintiffs of the names of individuals interviewed by the NCAA as part of its factual investigation. Pseudonym Plaintiffs chose to be named plaintiffs in a class action lawsuit and with that choice comes certain obligations and consequences. Allowing Pseudonym Plaintiffs to remain anonymous at this stage does not allow them to upend the Rules of Civil Procedure and the usual and customary litigation process to the detriment of the defendant they are suing. The NCAA has a right to investigate the claims asserted against it, the credibility and veracity of Plaintiffs, the factual allegations asserted, including those asserted in their declarations filed in support of Plaintiffs' Motion for Leave to Proceed Under Pseudonyms,[2] and facts relevant to the propriety of class certification, which includes but is not limited to typicality, commonality, and adequacy of the named plaintiffs.

---

[2] This Court, in its Order on Plaintiffs' Motion to Proceed Under Pseudonyms, stated as follows: "In the event that Defendants, at some point in the litigation, believe that Plaintiffs should no longer be permitted to proceed solely under their initials, Defendants may file a motion requesting such relief at that time." (Dkt. 71.)

Plaintiffs' proposal to upend the usual discovery rules to the NCAA's prejudice is not supported by the law, the Court's Order, or any agreement by the NCAA. Because Plaintiffs' proposed PPO terms are logistically onerous, would infringe on work product protections, or would otherwise undermine the NCAA's ability to engage in its investigation of the claims and discovery in an efficient and cost-effective manner, it should be rejected.

First, Plaintiffs' proposal would bar the NCAA from certain investigation and discovery activities altogether, absent a Court order or Plaintiffs' permission. (Ex. B at p. 6, § D.) It would prevent the NCAA and its counsel from disclosing Pseudonym Plaintiffs' identities to certain categories of individuals who may have information vital to this case: coaches, teammates, and athletic department personnel at Pseudonym Plaintiffs' institutions; scholarship committee members; and certain professors and administrators. These are categories of people who likely hold critical information, particularly because Pseudonym Plaintiffs are seeking to represent a class pursuing monetary damages. Counsel would likely need to speak with those individuals to investigate Plaintiffs' claims of harm, their credibility as testifying witnesses, and their adequacy as class representatives.

Plaintiffs' proposal is fundamentally unfair and prejudicial because Plaintiffs would face no such restriction in their own litigation preparation. That their proposed PPO would "permit" the NCAA to conduct interviews and investigate the

named Plaintiffs or otherwise engage in discovery should ***Plaintiffs grant their permission*** to the NCAA or be allowed to ***dictate how the NCAA does it*** or if the NCAA obtains a Court Order does not balance the playing field or make their proposal any less prejudicial or unnecessarily expensive. Plaintiffs' proposed PPO would likely result in serial contested motions over routine factual investigations and discovery activities, with the attendant additional time, effort, and expense allocated to unwarranted disputes.

The NCAA's proposal is sufficient to protect Pseudonym Plaintiffs. The NCAA's proposal compromises by agreeing to a restriction on its communications with persons it knows to have previously threatened any Pseudonym Plaintiff. And the NCAA would still be required to protect Plaintiffs by having other individuals sign the Acknowledgment and Agreement to Be Bound by the protective order. But the NCAA cannot agree to the broad and severe limitations on its investigation that Plaintiffs seek. And Pseudonym Plaintiffs' own declarations show why those further limitations are not needed. They concede that teammates and others on their campus *already know* their personal views on the issues that are the subject of this case. (Dkt. 58-1 at p. 18.) They have not shown how it would make a meaningful difference for those same people to know they are plaintiffs, let alone shown any basis for interfering so severely with the NCAA's litigation preparation, particularly because <u>no disclosure</u> of Pseudonym Plaintiffs' identities would be made before the

NCAA obtained a signed Acknowledgment and Agreement to Be Bound from the proposed interviewees.

Second, Plaintiffs' proposal would allow them to drastically interfere with the NCAA's other investigation activities, by allowing Plaintiffs to object and intervene in *all* communications with potential fact witnesses and persons with potentially relevant knowledge to whom Pseudonym Plaintiffs' names will be disclosed. (Ex. B at p. 4, deleted sections (b) and (c) and section (iii).) These categories include persons who are critical to the NCAA's ability to conduct its factual investigation, identify sources of discovery, and develop and litigate its defenses. But Plaintiffs' PPO would still impose a weeks-long dispute process and likely motion practice before the NCAA could perform these critical case activities. There is no authority or basis for allowing such an enormous impediment to one party's case preparation.

Third, Plaintiffs' proposed order would require the NCAA to share real-time updates of its work product in preparation for the litigation, by providing the names and signed Acknowledgments and Agreements to Be Bound of individuals with whom it needs to share Pseudonym Plaintiffs' names. (Ex. B at p. 3, deleted language in section 2.) Courts have found that the names of witnesses interviewed are protected work product. *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 2008 U.S. Dist. LEXIS 126501, at *18 (M.D. Fla. Apr. 17, 2008) (holding that State Farm "should not be required to produce a privilege log listing

the witnesses it interviewed during its investigation"); *Seebeck v. GMC*, 1996 U.S. Dist. LEXIS 22629, at *8 (N.D. Ga. May 17, 1996) (holding that names of individuals interviewed by General Motors' attorney, for the purpose of preparing for litigation, were protected in their entirety). While some district courts, for certain purposes, have compelled the ***post hoc*** disclosure of lists of interviewed witnesses, the NCAA is aware of no case that supports Plaintiffs' request here. Compelling the NCAA to provide a real-time roadmap of a significant part of its litigation preparation would be fundamentally unfair and prejudicial.

Pseudonym Plaintiffs are protected in full by the NCAA's proposed protective order. It still requires the NCAA to secure individuals' signed Acknowledgment and Agreement to Be Bound to the protective order before disclosing Pseudonym Plaintiffs' names. The NCAA's counsel will maintain those agreements. The difference between the parties' competing protective order proposals is whether Plaintiffs are given access to the NCAA's protected work product. Plaintiffs have no "substantial need" for this information "to prepare [their] case"; their desire to know who learns their identities is not a basis for overriding the work product privilege. *See* Fed. R. Civ. Proc. 26(b)(3)(A)(ii).

### III.   CONCLUSION

Accordingly, the NCAA asks that the Court enter its version of the Pseudonym Protective Order. (Ex. A.) The NCAA reserves all rights to revise,

modify, or otherwise amend its proposed order in response to any further changes Plaintiffs or other Defendants make to their own proposed order and to supplement this argument in light of any such changes.

Respectfully submitted this 2nd day of August, 2024.

                          ALSTON & BIRD LLP

                          */s/ Cari K. Dawson*
Cari K. Dawson
Georgia Bar No. 213490
cari.dawson@alston.com
Christopher C. Marquardt
Georgia Bar No. 471150
chris.marquardt@alston.com
John E. Stephenson
Georgia Bar No. 679825
john.stephenson@alston.com

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Defendant National Collegiate Athletic Association*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing filing has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

*/s/ Cari K. Dawson*
Cari K. Dawson

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 2nd day of August, 2024.

*/s/ Cari K. Dawson*
Cari K. Dawson