## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**RILEY GAINES, et al.,**

      **Plaintiffs,**

v.

**NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION, et al.,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:24-CV-1109-MHC**

## ORDER

On July 12, 2024, this Court entered an Order granting Plaintiffs' Motion for

Leave to Proceed Under Pseudonyms.  July 12, 2024, Order [Doc. 71].  The Court

found that Plaintiffs Swimmer A and Track Athlete A (the "Doe Plaintiffs") have a

protectable interest in remaining pseudonymous at this point in the litigation given

that the allegations in this case "concern matters of personal beliefs and positions

that could subject the Doe Plaintiffs to stigmatization, ostracization, retaliation, and

violence." Id. at 4.  The Court also found that, based on Plaintiffs' indication that

they would disclose their identities to Defendants for the purposes of this litigation,

allowing Doe Plaintiffs to proceed under pseudonyms will not prejudice

Defendants' ability to defend themselves in this litigation. Id. at 5-6.  The Court

ordered the parties to submit a joint motion for protective order that would govern

the parties' use of the Doe Plaintiffs' identities or, in the alternative, to submit

separate proposed orders in the event the parties could not agree. Id. at 11-12. The

parties could not agree.[1] Thus, now before the Court are Defendant National

Collegiate Athletic Association ("NCAA")'s Position Statement Concerning

Proposed Protective Order Regarding Pseudonym Plaintiffs ("Def.'s Br.")

[Doc. 77], and Plaintiffs' Motion for Pseudonym Protective Order ("Pls.' Mot.")

[Doc. 78].

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial

court to decide when a protective order is appropriate and what degree of

protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

However, "[a] district court must articulate its reasons for granting a protective

order sufficient for appellate review." In re Alexander Grant & Co. Litig., 820

---

[1] Defendants University System of Georgia, Georgia Institute of Technology, University of Georgia, University of North Georgia, Ángel Cabrerra, Doug Aldridge, Tom Bradbury, Richard "Tim" Evans, W. Allen Gudenrath, Erin Hames, Bárbara Rivera Holmes, Samuel D. Holmes, C. Thomas Hopkins, Jr., MD, James M. Hull, Cade Joiner, Patrick C. Jones, C. Everett Kennedy, III, Sarah-Elizabeth Langford, Rachel B. Little, Lowery Houston May, Jose R. Perez, Neil L. Pruitt, Jr., Harold Reynolds, Sachin Shailendra, T. Dallas Smith, Mat Swift, James K. Syfan III, Don L. Waters, and John Does 26–50 have indicated that they take a neutral stance of non-opposition to both parties' proposed protective orders.

F.2d 352, 355 (11th Cir. 1987).  Rule 26(c) provides: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1); see also Alexander Grant, 820 F.2d at 356 ("[T]he sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause.'").  The Eleventh Circuit has articulated four factors for determining the existence of good cause: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order."  Id. (quoting Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1205 (11th Cir. 1985)).  In addition to the good cause requirement, the Eleventh Circuit "has also required the district court to balance the interests of those requesting the order."  McCarthy v. Barnett Bank of Polk Cnty., 876 F.2d 89, 91 (11th Cir. 1989).  "The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"  Ekokotu v. Fed. Express Corp., 408 F. App'x 331, 336 (11th Cir. 2011) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)[2]).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

## II.   THE PROPOSED PROTECTIVE ORDERS

### A.   Plaintiffs' Proposed Order

Plaintiffs seek the entry of a protective order that would require Defendants to transmit a copy of the signed Acknowledgment and Agreement to be Bound ("Acknowledgment") to Counsel for Plaintiffs before Defendants disclose the Doe Plaintiffs' identities to the following individuals:

a.   The parties to this action, including any employees, agents, and representatives of the parties only as needed to litigate any claims or defenses and except as specifically prohibited in Section D;

b.   Insurance claim adjusters, employees, agents, and representatives of the parties that are or may be required to pay any settlement or judgment in this action on behalf of the parties to this litigation;

c.   Privately hired: court reporters, recorders, and videographers engaged for depositions who need to know pseudonym plaintiff names within the scope of their duties;

d.   Any identified fact witness and their counsel after giving notice and opportunity to object as provided in Paragraph C below, but only to the extent that Pseudonym Plaintiffs' Identities will assist the witness in recalling, relating, or explaining facts for purposes of interviews, depositions, and/or testimony;

e.   Any third-party custodian of records after giving notice and opportunity to object as provided in Paragraph C below, but only to the extent that Pseudonym Plaintiffs' Identities will assist the custodian in obtaining and producing records;

f.   After giving notice and opportunity to object as provided in Paragraph C below, persons to whom disclosure is necessary in

order for Defendants to obtain relevant discovery or otherwise
prepare a good faith defense;

g.     Independent providers of document reproduction, electronic
       discovery, or other litigation services retained or employed
       specifically in connection with this litigation; and

h.     Experts, consultants, or investigators retained specifically in
       connection with this litigation; provided, however, that
       Defendants need not provide Plaintiffs with a copy of Exhibit A
       signed by any such person unless and until such person is
       expected to testify at trial.

Plaintiffs' Proposed Order on Plaintiffs' Motion to Proceed Under Pseudonyms

("Pls.' Proposed Order") [Doc. 78-2] ¶ D.

Plaintiffs also ask this Court to require Defendants to provide notice to

Plaintiffs' Counsel before serving a subpoena "or otherwise communicat[ing]"

with those persons identified in subsections (d) through (f) above. Id. § C.

Plaintiffs would then have 7 days to object to the disclosure of the Doe Plaintiffs'

identities to those individuals and, upon objection, the parties would follow the

directions in this Court's Standing Order [Doc. 6] to resolve the dispute. Id.

Finally, Plaintiffs seek to completely preclude Defendants from disclosing

the Doe Plaintiffs' identities from a certain category of persons absent (1) a

specific order from the Court, (2) the relevant Doe Plaintiff's consent, or

(3) Plaintiffs' failure to object to the disclosure of the identity. Id. § D. The

individuals Plaintiffs seek to exclude from disclosure are:

1.    Any intervening Defendants;

2.    Any coach, teammate, or athletic department personnel at any institution attended by a Pseudonym Plaintiff;

3.    Any scholarship committee member;

4.    Any professor or administrator reasonably likely to influence the grading or academic attainment of any Pseudonym Plaintiff; and

5.    Any person that is known by the person disclosing to have previously threatened any Pseudonym Plaintiff.

Id.

Plaintiffs' Proposed Order would have its provisions "apply to any disclosure of Pseudonym Plaintiffs' Identities until and unless the Court orders otherwise," and provides that "[a]ny Party may petition the Court to terminate or modify the provisions of this protective order at later stages of this action." Id. § E.

**B.    The NCAA's Proposed Order**

The NCAA's version of the protective order differs from Plaintiffs in three key respects. First, the NCAA's version would not require Defendants to transmit a copy of the signed Acknowledgement before disclosing the Doe Plaintiffs' identities to the following individuals:

i.    The parties to this action, including any employees, agents, and representatives of the parties only as needed to litigate any claims or defenses;

ii.  Insurance claim adjusters, employees, agents, and representatives of the parties that are or may be required to pay any settlement or judgment in this action on behalf of the parties to this litigation; and

iii.  Persons to whom disclosure is necessary in order for Defendants to conduct their factual investigation of Plaintiffs' claims and develop defenses to those claims, identify sources of and obtain relevant discovery, or otherwise prepare a good faith defense to this litigation, including potential fact witnesses or persons with potentially relevant knowledge and their counsel with whom Defendants' counsel communicates outside of formal discovery procedures, as part of their protected attorney work product.

Def.'s Proposed Order on Pls.' Mot. to Proceed Under Pseudonyms ("Def.'s Proposed Order") [Doc. 77-1] § (B)(2).

Second, the NCAA's Proposed Order would require Defendants to transmit a copy of the signed Acknowledgement to Counsel for Plaintiffs before disclosing the Doe Plaintiffs' identities only to the following individuals:

i.  Privately hired: court reporters, recorders, and videographers engaged for depositions who need to know pseudonym plaintiff names within the scope of their duties;

ii.  Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation, excluding agents and representatives of counsel covered by paragraph 1(ii) above and agents and representatives of the Parties covered by paragraph 2(i) above; and

iii.  Experts, consultants, or investigators retained specifically in connection with this litigation; provided, however, that Defendants need not provide Plaintiffs with a copy of Exhibit A

signed by any such person unless and until such person is expected to testify at trial.

Id. § (B)(3).

Finally, the NCAA's Proposed Order only would prohibit disclosure of the Doe Plaintiffs' identities to any intervening Defendant and "[a]ny person that is known by the person disclosing to have previously threatened any Pseudonym Plaintiff" absent a court order or Plaintiffs' consent.  Id. § D.

## II.    DISCUSSION

At its core, the dispute over the protective order arises out of Plaintiffs' "desire to know who knows [the Doe Plaintiffs'] identities."  Pls.' Br. in Supp. of Mot. for Protective Order ("Pls.' Br.") [Doc. 78-1] at 1.  Plaintiffs contend that the identities of the witnesses whom the NCAA seeks to interview are not protected work product under Federal Rule of Civil Procedure 26(b)(3) but that, even if they were, the Doe Plaintiffs have shown a substantial need for such disclosure based on their "need to know who knows that they are Plaintiffs to manage their safety and reputation in day-to-day life while they continue to attend school, attend practices, work, and compete."  Pls.' Br. at 3-5.

The NCAA does not dispute the need for a protective order in this case, nor does it object to the Doe Plaintiffs proceeding anonymously in public filings at this stage in the litigation.  Def.'s Br. at 1.  The NCAA also agrees to Plaintiffs'

proposed process of issuing subpoenas to third parties and obtaining signed

Acknowledgments from any individual to whom the Doe Plaintiffs' identities will

be disclosed.  Id. at 3; see also Def.'s Proposed Order § C; Pls.' Proposed Order

§ C.  However, the NCAA objects to the limitations and obligations Plaintiffs'

Proposed Order would impose on the NCAA in defending the case against it and

contends that Plaintiffs' Proposed Order would be "**highly prejudicial** to the

NCAA's ability to defend itself in this litigation."  Def.'s Br. at 2-3.  The NCAA

also argues that the identity of witnesses whom the NCAA "wishes to interview as

part of its litigation preparation is protected work product."  Def.'s Reply to Pls.'

Mot. ("Def.'s Reply") [Doc. 81] at 4-5.

    Although the parties raise several arguments with respect to whether the

identities of these witnesses constitute work product, neither party directs the Court

to any on-point, binding authority in support of their positions.[3]  Nevertheless, the

Court finds that compelling Defendants to disclose to Plaintiffs the "timing,

frequency, and extent of Defendants' contact with the [witnesses] would likely

---

[3] The Court notes that the name and contact information of any individual "likely
to have discoverable information . . . that the disclosing party may use to support
its claims or defenses" is a required initial disclosure under Federal Rule of Civil
Procedure 26(a)(1)(A).  The identities of these potential witnesses and interviewees
will presumably already be known to Plaintiffs.  Thus, the dispute is not over the
fact that Plaintiffs seek to know the identities of these witnesses, but that Plaintiffs
want to know when and if Defendants will be speaking with these witnesses.

reveal defense counsels' strategies." S. Y. v. Jay Varahimata Invs., LLC., No.

2:20-CV-606-JES-MRM, 2021 WL 3117117, at *12 (M.D. Fla. June 11, 2021)

(citing J.C. v. Choice Hotels Int'l, Inc., No. 20-cv-00155-WHO, 2021 WL

1146406, at *5 (N.D. Cal. Mar. 4, 2021) (holding that defendants need not provide

a plaintiff with notice whenever they contact the plaintiff's alleged traffickers in

light of the defendants' work product confidentiality concerns)); see also Hickman

v. Taylor, 329 U.S. 495, 511 (1947) (finding that protected work product is

reflected in "interviews, statements, memorandum, correspondence, briefs, mental

impressions, personal beliefs, and countless other tangible and intangible ways").

    The cases cited by Plaintiffs are inapposite.  In United States Securities &

Exchange Commission v. Herrera, 324 F.R.D. 258 (S.D. Fla. 2017), the court held

that a PowerPoint presentation that contained "the names of witnesses whom [a

law firm] had already interviewed" did not constitute work product because "the

substance of what the witnesses said was not provided." Herrera, 324 F.R.D. at

265.  In State Farm Mutual Automobile Insurance Co. v. Physicians Injury Care

Center, Inc., No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337641 (M.D. Fla. Oct.

17, 2008), the court noted the lack of uniformity among district courts on the issue

of "whether the identity of witnesses interviewed is considered work-product."

Physicians Injury Care, 2008 WL 11337641, at *5.  The court found that the

identity of witnesses whom the plaintiffs had interviewed and the underlying facts

garnered from the interviews did not constitute work product because the

underlying facts were used by the plaintiffs to support the allegations in their

amended complaint. Id., at *6. And in Matos v. Wal-Mart Stores East, LP, No.

CV405-213, 2006 WL 8434080 (S.D. Ga. June 7, 2006), the court held that the

plaintiffs "are entitled to discover unprivileged information relevant to their

claim," and thus ordered the defendant to produce information regarding

interviews the defendant conducted pertaining to snake bites that occurred on the

defendant's premises. Matos, 2006 WL 8434080, at *3-4.[4] However, in all the

cases cited, the court required the party seeking work-product protection to

disclose the names of the witnesses who already had been interviewed. Plaintiffs

have cited no case where a party has been required to disclose the names of

interviewees in the course of defending itself in litigation before the interviews

have even occurred.

> How a party, its counsel and agents choose to prepare their case, the
> efforts they undertake, and the people they interview is not factual
> information to which an adversary is entitled. Disclosure of this

---

[4] Plaintiffs also cite to protective orders entered in a multi-district product liability
case in this district that required parties, "for good cause, to disclose the list of
persons who have signed acknowledgments." Pls.' Br. at 4 (citing In re Ethicon
Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig., No. 1:17-md-
02782-RWS, Docket No. 277 (N.D. Ga. Nov. 9, 2017), and Docket No. 293 (N.D.
Ga. Jan. 11, 2018)).

information would inevitably teach defendants which individuals the [plaintiffs] considered more or less valuable witnesses and how it was preparing for trial.

State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., No. 6:06-cv-1757-Orl-GJK, 2008 U.S. Dist. LEXIS 126501, *17 (M.D. Fla. Apr. 17, 2008) (quoting Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 231 (E.D.N.Y. 2007)).

Consequently, the Court finds that requiring Defendants to essentially seek Plaintiffs' permission to speak with fact witnesses to investigate the Doe Plaintiffs' claims and prepare their defense would be tantamount to providing Plaintiffs with a roadmap of Defendants' litigation strategy. Although the Court is mindful that the Doe Plaintiffs have an interest in keeping their identities and participation in this lawsuit private, particularly from those individuals within their communities who have the potential to stigmatize, ostracize, or otherwise adversely affect their academic and professional lives, Plaintiffs' Proposed Order is not precisely drawn to protect that interest. This is especially so because any individual to whom Defendants reveal the identity of any Doe Plaintiff already would be required to sign the Acknowledgment agreeing not to disclose any information that is subject to the protective order in any manner or face sanctions or other punishment. Furthermore, the Proposed Order presented by the NCAA still would require Defendants to meet and confer with Plaintiffs before disclosing the Doe Plaintiffs'

identities to any Intervening Defendant and "[a]ny person that is known by the person disclosing to have previously threatened any Pseudonym Plaintiff." Def.'s Proposed Order § D.

Nevertheless, the Court finds that the NCAA's Proposed Order goes too far in the other direction. Whereas Plaintiffs would limit disclosure of the Doe Plaintiffs' identities to "[a]ny identified fact witness and their counsel . . . , but only to the extent that Pseudonym Plaintiffs' Identities will assist the witness in recalling, relating, or explaining facts for purposes of interviews, depositions, and/or testimony," Pls.' Proposed Order § B(d), the NCAA's Proposed Order contains no such limitation and would allow Defendants to freely disclose the Doe Plaintiffs' identities "to conduct their factual investigation of Plaintiffs' claims and develop defenses to those claims, identify sources of and obtain relevant discovery, or otherwise prepare a good faith defense to this litigation." Def.'s Proposed Order § B(2)(iii).

The Court finds that Plaintiffs' version of this subsection is the "more workable and practical approach that conserves judicial resources[,] serves judicial economy," and "strikes an appropriate balance between the parties' interests without prejudicing any Defendant's ability to investigate and to defend against the claim in this litigation." S.Y., 2021 WL 3117117, at *11 (recommending similar

language be used in a protective order for the disclosure of the Doe plaintiff's identity to the plaintiff's traffickers only to the extent that the information "may be reasonably necessary for the alleged traffickers to recall, relate, or explain facts relevant to this litigation or to testify as to those facts"). Accordingly, the Court adopts the portion of Plaintiffs' Proposed Order requiring Defendants to only disclose the Doe Plaintiffs' identities to the extent that it would assist the fact witness in "recalling, relating, or explaining facts for purposes of interviews, depositions, and/or testimony."

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Pseudonym Protective Order [Doc. 78] is **GRANTED IN PART AND DENIED IN PART**.[5] The Protective Order signed by the Court this date shall

---

[5] The Court notes that the parties have omitted the language regarding the practice of filing and sealing documents as set forth in this Court's Standing Order and Appendix H of this Court's Local Rules. See Standing Order § H; LR NDGa., App. H, Ex. A, § II(J). This language has been added to the Protective Order as entered by this Court.

govern the parties' disclosure of the Doe Plaintiffs' identities throughout this

litigation until further Order of this Court.

      **IT IS SO ORDERED** this 5th day of September, 2024.

_____
MARK H. COHEN
United States District Judge