IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RILEY GAINES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE<br>ATHLETIC ASSOCIATION, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:24-CV-1109-MHC |

ORDER

This matter comes before the Court on Proposed Intervenor-Defendant National Women's Law Center ("NWLC")'s Motion to Intervene as Defendant ("Mot. to Intervene") [Doc. 36] and Motion for Leave to File Supplement Motion to Intervene as Defendant ("Mot. to Supplement") [Doc. 73]. NWLC represents that neither the National Collegiate Athletic Association ("NCAA") nor the State Defendants[1] oppose the motion. However, Plaintiffs have filed a response in opposition to NWLC's Motion to Intervene, in which they contend, among other things, that "adding NWLC as a party would divert time, resources, and attention

---

[1] The State Defendants are enumerated in the Corrected Second Amended Complaint [Doc. 94] ¶¶ 81-117.

toward an ideological side show, distracting from the ultimate object of the case, ascertaining the legality of Defendants' policies and actions" under Title IX of the Education Amendments of 1974 ("Title IX"), 20 U.S.C. § 1681 et seq., and the Equal Protection Clause of the Fourteenth Amendment. Pls.' Resp. to NWLC's Mot. ("Pls.' Resp.") [Doc. 62] at 1.

## I. LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: intervention of right and permissive intervention. As relevant here,[2] the Rule provides: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question or law or fact." FED. R. CIV. P. 24(b)(1)(B). The Rule further provides that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c); see also Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242, 1250 (11th Cir. 2002) (citing Walker v. Jim Dandy Co., 747 F.2d 1360, 1365 (11th Cir. 1984)) ("Permissive intervention under [Federal Rule of Civil Procedure] 24(b) is appropriate where a party's claim or defense and the main

---

[2] The NWLC does not seek to intervene as a matter of right under Rule 24(a).

action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.").

A party seeking permissive intervention must show that: "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989). However, "[t]he district court has the discretion to deny intervention even if both of those requirements are met." Id. (citing Sellers v. United States, 709 F.2d 1469 (11th Cir. 1983)).

> "If there is no right to intervene as of right under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention."

Worlds v. Dep't of Health & Rehab. Servs., 929 F.2d 591, 595 (11th Cir. 1991) (quoting 7C C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1913, at 376-77 (2d ed. 1986)). "In exercising its discretion as to permissive intervention, 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" Nolley v. McLaughlin, 806 F. App'x 971, 972 (11th Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(3)).

### III. ANALYSIS

NWLC is a "nonpartisan, nonprofit organization dedicated to the advancement and protection of the legal rights of women and girls, and the right of all persons to be free from sex discrimination." NWLC's Mem. of Law in Supp. of Mot. to Intervene ("NWLC's Br.") [Doc. 36-1] at 3 (citing Decl. of Emily Martin [Doc. 36-2] ¶ 4). NWLC was established in 1972 and, since then, has been a vocal advocate for women's rights, both through litigation and by advocating for the creation of inclusive policies. Id. at 3-7. It seeks to intervene in this case to defend the validity of the NCAA's policies allowing transgender women to participate in competitive sports alongside cisgender women and argues that exclusionary policies and the policing of women's bodies harms all women, especially women of color. Id.

More specifically, NWLC contends that the NCAA "is not in a position to adequately defend" its own policies in this lawsuit because it "fac[es] increasing pressure from anti-transgender activists" and has "recently signaled it is reevaluating whether it will continue to permit transgender women and girls to participate *at all* in women's athletics." Id. at 2 (footnote omitted). Based on its contention that "none of the existing parties to this case can adequately defend the

claims at issue in this suit," NWLC urges this Court to grant it permissive intervention so that "NWLC can."[3]  Id. at 3.

## A.   Whether the Motion to Intervene is Timely

NWLC contends that its Motion to Intervene is timely because it was filed within two months after Plaintiffs initiated this action and before any Defendant filed an answer or otherwise responded to Plaintiffs' Complaint.  NWLC's Br. at 12-13.  Plaintiffs offer no response in opposition to NWLC's argument regarding timeliness.  See generally Pls.' Resp.  Accordingly, the Court deems this argument unopposed.  See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); LR 7.1B, NDGa ("Any party opposing a motion shall serve the party's response . . . not later than fourteen (14)

---

[3] It appears that NWLC is conflating one of the requirements for intervention of right with the standard for permissive intervention.  See FED. R. CIV. P. 24(a)(2) (stating that the court must permit intervention of right, in part, where the putative intervenor "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest*.") (emphasis added).  Because NWLC raises this argument (that the NCAA will not adequately defend the NCAA's policies permitting transgender women's participation in women's sports) in seeking permissive intervention, the Court discusses whether the NCAA is, in fact, adequately defending itself in determining whether permissive intervention should be granted.  The Court also acknowledges case law in this Circuit that discusses the adequacy of existing representation as a factor in determining whether permissive intervention should be granted.  See p. 10, *infra*.

5

days after service of the motion . . . . Failure to file a response shall indicate that there is no opposition to the motion.").

The Court finds that NWLC's motion was timely filed. See Vazzo v. City of Tampa, No. 8:17-CV-2896-T-36AAS, 2018 WL 1629216, at *4 (M.D. Fla. Mar. 15, 2018), R&R adopted, No. 8:17-CV-2896-T-36AAS, 2018 WL 1620901 (M.D. Fla. Apr. 4, 2018) (finding timely a motion to intervene filed less than two months after the case was initiated and before the pending motion for preliminary injunction and motions to dismiss were fully briefed).

### B.  Whether NWLC has a Claim or Defense that Shares with the Main Action a Common Question of Law or Fact

NWLC contends that its defense shares common questions of law with the main action, including application of Title IX and the Equal Protection Clause to transgender women. NWLC's Br. at 18. NWLC also contends that its defense shares common questions of fact with the main action, including the impact of allowing transgender athlete participation "on opportunities for cisgender women and girls." Id. In addition, NWLC asserts that its interests in advocating for the equality of women and girls and the proper interpretation of Title IX and the Fourteenth Amendment "would be impaired if Plaintiffs were to obtain the relief they seek." Id. at 17-18.

6

In response, Plaintiffs argue that, because "the only interest NWLC asserts is a generalized interest shared by many advocacy groups . . . in the issue of transgender eligibility in women's sport," NWLC "has not alleged it or its members are in any way subject to" Plaintiffs' claims and, thus, has failed to show that it shares a defense with the main case. Pls.' Resp. at 16-17.

The Court finds that NWLC's defenses in this case align with the defenses of the NCAA and the State Defendants. As the Supreme Court has stated, the requirement in Rule 24(b)—that a proposed intervenor's claim or defense have a question of law or fact in common with the main action—"plainly dispenses with any requirement that the intervenor shall have a direct pecuniary interest in the subject of the litigation." Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co., 310 US. 434, 459 (1940). And, as NWLC points out, "the claim or defense clause of Rule 24(b)(2) is generally given a liberal construction." Ga. Aquarium, Inc. v. Pritzker, 309 F.R.D. 680, 690 (N.D. Ga. 2014) (citing SEC v. U.S. Realty & Improvement Co., 310 U.S. 434, 459 (1939) (additional citations omitted)). Accordingly, the Court rejects Plaintiffs' argument that permissive intervention should be denied because NWLC "has not alleged it or its members are in any way subject to the claims of Plaintiffs." Pls.' Resp. at 16.

## C. Whether Additional Considerations Support the Denial of Permissive Intervention

As noted above, even where the two requirements for permissive intervention are satisfied, the Court has discretion to deny intervention. See Worlds, 929 F.2d at 595. The Court will now discuss whether the NCAA can adequately defend its policies that permit transgender women to participate in women's sports (which NWLC argues it cannot) and whether granting permissive intervention would unduly delay or prejudice the rights of existing parties.

### 1. The Ability of the NCAA to Defend its Own Policies

On a fundamental level, the interests asserted by NWLC are the same as those asserted by the NCAA: defending the NCAA's policies allowing participation by transgender women in competitive sports against constitutional and statutory challenges. However, NWLC argues that, based upon outside political pressure and a "signal" that the NCAA may decide in the future to alter its existing policies on transgender athletes, the NCAA may have a conflict of interest and, thus, will not be able to adequately defend its current inclusive policies. NWLC's Br. at 2, 19 (citing De Fernandez v. Seaboard Marine, Ltd., No. 20-CV-25176, 2023 WL 3074980, at *7 (S.D. Fla. Apr. 25, 2023))[4] (contending that none

---

[4] In De Fernandez, both parties sought an order from the district court vacating a prior summary judgment order so that the parties could enter into a settlement

8

of the original parties shares NWLC's "interest in defending the interests of transgender student athletes").

A review of the docket to date reveals that the NCAA has vigorously defended itself and its policies in this case. After Plaintiffs initiated this lawsuit, the NCAA filed a motion to dismiss, seeking to dismiss all claims against it with prejudice [Doc. 55]. And after Plaintiffs filed their First Amended Complaint, the NCAA filed another motion to dismiss [Doc. 75]. The NCAA has engaged in extensive briefing with respect to its motions to dismiss. In addition, the NCAA vigorously contested Plaintiffs' Motion for Protective Order [Doc. 78], in part, because Plaintiffs' version of the protective order would have been "***highly prejudicial*** to the NCAA's ability to defend itself in this litigation." See NCAA's

---

agreement. De Fernandez, 2023 WL 3074980, at *1. The proposed intervenors requested intervention "for the limited purpose of opposing the Motion to Vacate," asserting a protectable interest in the summary judgment order's preclusive effects. Id. at *2. The court found that permissive intervention was appropriate in that case because the intervenors presented an interest in preserving the summary judgment order, an interest that neither of the existing parties shared. Id. at *7. Thus, the court held that the intervenors' "perspective will assist the Court in 'resolving the issue' of whether the Motion to Vacate should be granted." Id. (quoting Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1312 (11th Cir. 2005)). De Fernandez is inapposite to the case at bar. The Court recognizes NWLC's desire to advocate on behalf of transgender student athletes, but the difference in perspectives presented in De Fernandez does not exist in this case. This Court has no evidence before it to find that the NCAA is not or cannot adequately defend its existing policies; indeed, as discussed below, the facts indicate just the opposite.

Position Statement Concerning Proposed Protective Order Regarding Pseudonym Plaintiffs [Doc. 77] at 3. Thus, the Court finds that the NCAA has mounted an adequate defense to the transgender athlete policies challenged in this case. See Abreu v. Pfizer, Inc., No. 21-62122-CIV, 2022 WL 2341427, at *9 (S.D. Fla. Feb. 3, 2022), R&R adopted (Mar. 22, 2022) (finding permissive intervention unwarranted "[b]ecause Plaintiff is adequately representing [the proposed intervenor's] interest"); see also Gumm v. Jacobs, No. 5:15-cv-41 (MTT), 2019 WL 2080157, at *4 (M.D. Ga. May 10, 2019) ("[The proposed intervenor's] interests are adequately protected by the existing parties to the lawsuit, and his intervention would not further the development of factual or legal issues in the case."); Benjamin v. Dep't of Pub. Welfare of Commonwealth, 267 F.R.D. 456, 465 (M.D. Pa. 2010), aff'd, 432 F. App'x 94 (3d Cir. 2011) ("Assuming, arguendo, the . . . Intervenors share a claim or defense with the parties in the litigation, permissive intervention is nonetheless inappropriate because the Applicants' interests are already represented in the litigation, and their appearance as intervenors would not sufficiently add anything to the litigation.").

### 2. The Perspective of the Putative Intervenor

Although NWLC cites to several out-of-circuit cases in which advocacy groups have been permitted to intervene based on the courts' finding that the

10

groups' perspectives would assist the court in the lawsuit, see NWLC's Br. at 20-21, the Court finds several cases from this Circuit to be more relevant.

In Vazzo v. City of Tampa, the plaintiffs, who were licensed marriage and family therapists, brought suit against the City of Tampa challenging an ordinance that prohibited "licensed professional counselors from practicing conversion therapy on minors." Vazzo, 2018 WL 1629216, at *1. Equality Florida, a civil rights organization, sought permissive intervention as a party defendant in the case to argue for the validity of the ordinance. Id. at *1-2. Although the court found that the Rule 24(b)(1) factors weighed in favor of allowing intervention, the court nonetheless denied permissive intervention pursuant to Rule 24(b)(3), reasoning that it would "unduly delay and prejudice the adjudication of the original parties' rights." Id. at *6.

> When a court grants intervention, the intervenor becomes a party to the cause of action. Thus, if the court grants Equality Florida's motion to intervene, as a party, Equality Florida would have the ability to: depose witnesses; make discovery requests; submit discovery motions; and introduce new issues in litigation. In fact, Equality Florida already indicated that, as a party, it would "significantly contribute to the development of the record." This unnecessary delay in the proceedings resulting from Equality Florida's party status would prejudice the rights of the original parties by complicating the discovery process and consuming additional resources of the original parties (and the court).
>
> "Intervenors do not come alone—they bring along more issues to decide" and "more discovery requests." South Carolina v. North

> Carolina, 558 U.S. 256, 288 (2010) (Roberts, J., concurring and dissenting).

Id. at *5-6. Accordingly, the court in Vazzo found the more appropriate approach would be to allow Equality Florida to appear in the lawsuit as an amicus curiae. Id. at *6; see also Bayou Lawn & Landscape Servs. v. Solis, No. 3:12cv183/MCR/CJK, 2012 WL 13118567, at *6 (N.D. Fla. June 11, 2012) ("[T]he applicants seek to intervene in this matter [pursuant to Rule 24(b)(2)] to defend the validity of the 2012 Final Rules. Considering that the applicants did not promulgate the 2012 Final Rules, the court finds they are not the proper party to defend them."); Athens Lumber Co. v. Fed. Election Comm'n, 690 F.2d 1364, 1367 (11th Cir. 1982) (finding no abuse of discretion where the district court denied the workers union's motion for permissive intervention "[b]ecause the introduction of additional parties inevitably delays proceedings[.]").

> Factors that support this conclusion include the meager if not nonexistent benefit that would flow from allowing FFA to intervene as opposed to just allowing FFA to participate as an amicus, the unnecessary procedural complexity that intervention would entail, and the likelihood that allowing FFA to intervene would bring forth other proposed intervenors who would assert only generalized political interests and whose participation probably would generate more heat than light. FFA's views as amicus will be welcome, but FFA's intervention would bring little additional value.

Brenner v. Scott, 298 F.R.D. 689, 691–92 (N.D. Fla. 2014)

### 3. Whether Granting Intervention Would Unduly Delay Proceedings

The Court also finds that allowing NWLC to intervene in this case would unduly delay the proceedings. As NWLC contends, permitting intervention would allow it to "participate in discovery, negotiate factual stipulations, and present evidence in the district court." NWLC's Reply Br. at 14. Furthermore, the Court agrees with Plaintiffs that, "[b]ecause the NWLC and NCAA are not aligned on key issues [relating to the NCAA's policies], adding NWLC will multiply issues in the case" and "may complicate discovery." Pls.' Resp. at 8; see also Vazzo, 2018 WL 1629216, at *5 ("If a proposed intervenor would add additional witnesses, delay the discovery process, require additional discovery, or otherwise prolong litigation, permissive intervention should be denied.") (collecting cases).

Pretermitting any discussion as to the merits of Plaintiffs' claims, the addition of NWLC would necessarily expand discovery and force the parties to litigate new issues. In its opening brief in support of its Motion to Intervene, NWLC argues that policies excluding transgender women from participating in women's sports violate the rights of transgender women and harm cisgender women. NWLC's Br. at 5-6. The NWLC also argues that the policies the NCAA currently have in place are themselves overly restrictive and that the NCAA has

13

suggested that it may adopt even more restrictive policies. Id. at 2-3, 8, 9.[5] Furthermore, despite NWLC's assurances that it "is not interjecting those additional legal issues into this dispute," Plaintiffs' response and NWLC's reply indicate that the parties' conflicting political ideologies would permeate this lawsuit if NWLC were to become a party defendant. Pls.' Resp. at 2-3, 5-7, 9-13, 20-21 (accusing the NWLC of using this lawsuit as a means to advocate for its own policy views); NWLC's Reply at 3-4 & n.2, 12-13 & n.6 (accusing Plaintiffs of being linked to organizations opposing abortion and noting statements made by Plaintiff Riley Gaines regarding transgender individuals). But the issue presented before the Court in this case is limited to whether the policies of the NCAA, as implemented by the State Defendants, violate these Plaintiffs' constitutional and statutory rights to be free from discrimination.

Accordingly, the Court finds that the litigation would be unduly delayed if NWLC were permitted to intervene, based on "the unnecessary procedural complexity that intervention would entail," and because the intervention "probably would generate more heat than light." Brenner, 298 F.R.D. at 692; see also Burke v. Ocwen Fin. Corp., 833 F. App'x 288 (11th Cir. 2020) (finding no abuse of

---

[5] NWLC also contends that Plaintiffs provide an "inaccurate and incomplete description of the historical and legal landscape of Title IX, which would otherwise go unrebutted." NWLC's Reply at 11.

discretion in the district court's denial of permissive intervention "[g]iven the inevitability of expanded discovery, and the possibility that the existing parties would be forced to litigate new issues"); Sellers v. United States, 709 F.2d 1469, 1471–72 (11th Cir. 1983) (finding no abuse of discretion in district court's denial of a motion to intervene where "[t]he intervention proposed would have expanded this litigation to include disputes" about ownership of property and income tax liability, but the original claims were related to unlawful search and seizure in violation of the Fourth Amendment).

In denying NWLC's motion to intervene, the Court "intimate[s] no opinion as to the validity of the issues raised by [NWLC]." Athens Lumber, 690 F.2d at 1367. Furthermore, "the Court does not wish to deny [NWLC] a voice, nor does it seek to extinguish any potential value that its independent investigation into the matter may bring." A.R. v. Dudek, No. 13-61576-CIV, 2014 WL 12519764, at *4 (S.D. Fla. Apr. 7, 2014). Accordingly, although the Court denies its motion to intervene, NWLC is in no way precluded from seeking leave to participate in this case as amicus curiae.

## IV. CONCLUSION

For the foregoing reasons, National Women's Law Center's Motion to Intervene as Defendant [Doc. 36] is **DENIED**, and its Motion for Leave to File

Supplement to Motion to Intervene as Defendant [Doc. 73] is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 1st day of November, 2024.

_____
MARK H. COHEN
United States District Judge