IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RILEY GAINES, *et al.*

     *Plaintiffs,*

v.

NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION, *et al.*,

     *Defendants.*

Civil Action No.
1:24-cv-1109-MHC

## STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CORRECTED SECOND AMENDED COMPLAINT

Josh Belinfante    047399
Vincent R. Russo    242628
Edward A. Bedard    926148
Javier Pico Prats    664717
Anna Edmondson    289667
ROBBINS ALLOY BELINFANTE LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

*Counsel for State Defendants*

# TABLE OF CONTENTS

Introduction ............................................................................................1

Background ..............................................................................................3

   I.   The Parties. ....................................................................................3

   II.  The NCAA's Transgender Eligibility Policies. ...........................6

Standard of Review ...............................................................................7

Argument .................................................................................................8

   I.   Plaintiffs lack standing to obtain relief against State Defendants...........8

       A.   Plaintiffs have not demonstrated any "certainly impending" injury-in-fact necessary to obtain prospective relief. ..................... 9

       B.   Plaintiffs cannot establish traceability or redressability against State Defendants for their speculative injuries. ............. 11

   II.  The SAC names the wrong parties. ........................................ 15

   III. Plaintiffs fail to state a Title IX claim against State Defendants. ....... 15

       A.   Qualified immunity bars Ineligible Plaintiffs' damages claims against the Individual State Defendants...................................... 19

       B.   Plaintiffs are not entitled to injunctive relief against the Individual State Defendants........................................................ 22

       C.   Plaintiffs' "right to bodily privacy" claim fails because there is no allegation of state coercion...................................................... 25

Conclusion .......................................................................................... 25

# INTRODUCTION

Plaintiffs are understandably upset about the NCAA's policies allowing the participation of transgender athletes in NCAA women's sporting events. Indeed, many of the State Defendants are generally sympathetic to Plaintiffs' views as a policy matter. Given this, it is odd that the Second Amended Complaint ("SAC"), like the two previous iterations, renders State Defendants collateral damage in Plaintiffs' dispute with the NCAA. With each subsequent iteration of their complaint, Plaintiffs have increased the page and paragraph count—the SAC now stands at 202 pages and 853 paragraphs. But the increasing volume of an already voluminous complaint has not solved the fundamental problem with Plaintiffs' claims against State Defendants: State Defendants control neither the NCAA nor its policies any more than Plaintiffs do.

Indeed, the SAC is rife with allegations demonstrating that it is the *NCAA* they really have a problem with, not State Defendants. For example, a heading in the SAC acknowledges the "NCAA's Role in Controlling College Sports for its Members," and specific allegations recognize that the NCAA "[c]onduct[s] all NCAA national championships" and "requires its members to submit to NCAA rules and regulations[.]" (SAC ¶¶ 133, 135(a).) In addition, the SAC acknowledges that the NCAA and its member colleges and universities make eligibility determinations, but it does not challenge any such

determination by a State Defendant or the participation of any athlete attending one of Georgia's public colleges and universities.

These allegations effectively admit Plaintiffs' alleged injuries are neither traceable to nor caused by any act of any State Defendant. They show, instead, that it is the NCAA, and not State Defendants, that (1) created the eligibility policies at issue in this lawsuit; (2) enforces those policies; (3) allowed Lia Thomas to compete at the 2022 NCAA Division I Women's Swimming and Diving Championships (the "2022 Championships"), and (4) controls whether transgender athletes will be able to compete in future NCAA women's events.

Indeed, the SAC identifies few acts of State Defendants—in contrast to the numerous, detailed allegations about the NCAA—beyond allowing the NCAA to host the 2022 Championships on Georgia Tech's campus, and a few vague and conclusory statements about State Defendants' "participat[ion]" in some NCAA actions. These few acts did not, however, cause Plaintiffs' alleged harms, nor do they allege any kind of future conduct by the State Defendants that would warrant injunctive relief. Further, the SAC challenges no eligibility determination by a State Defendant nor the participation of any athlete attending an institution affiliated with the State Defendants.

For these reasons and more, the SAC should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

<u>**BACKGROUND**</u>

**I.    The Parties.**

**Plaintiffs.** Plaintiffs are 18 current and former female[1] collegiate athletes who attend NCAA member schools outside of Georgia. They can be divided into four groups:

- **Ineligible Plaintiffs.** A first group of Plaintiffs—Kylee Alons, Riley Gaines, Reka Gyorgy, Katilynn Wheeler, and Grace Countie—are former collegiate swimmers who competed in the 2022 Championships but are no longer eligible to participate in NCAA competitions. (SAC ¶¶ 57–61, 77.)

- **SEC Plaintiffs.** A second group of Plaintiffs—Ainsley Erzen, Ellie Eades, and Ellis Fox—attend schools in Division I's Southeastern Conference (the "SEC"). They remain eligible to compete in NCAA events. (*Id.* ¶¶ 62–64, 77.)

- **Division II & III Plaintiffs.** The third group of Plaintiffs remain eligible to compete in NCAA events, and they attend Division II or III colleges or universities. Lily Mullens, Carter Satterfield, Katie Blankinship, Susanna Price, Kate Pearson, Julianna Morrow, and Halle Schart are all current students at Roanoke College in Virginia and compete on the Roanoke's women's swimming team in Division III (the "Roanoke Swimmers"). (*Id.* ¶¶ 67–73.) Nanea Merryman competes in volleyball at Cedarville University, a Division II school. (*Id.* ¶ 66.) Track Athlete A competes at an undisclosed Division III school in the All-Atlantic Region Track & Field Conference, which does not include any academic institutions in Georgia. (*Id.* ¶¶ 74, 633)

- **Brooke Slusser.** Slusser is a new Plaintiff added in the SAC. She attends school in San Jose State University, a Division I school which is part of the Mountain West Conference. She remains eligible to compete in NCAA events. (*Id.* ¶¶ 65, 77, 699.)

---

[1] As in the SAC, in this motion, the terms "male" and "female" refer to a person's biological sex (or, as others have passively put it, their "sex assigned at birth"). *See* (Doc. 94 at 1-2, n.2-3.)

- **Swimmer A.** Swimmer A retains eligibility at an unidentified NCAA-affiliated academic institution, and she competed in the 2022 Swimming Championships. (*Id.* ¶ 56, 77.)

**The NCAA.** The NCAA is a voluntary association comprising over 1,100 member colleges and universities. (*Id.* ¶ 128); *see also NCAA v. Tarkanian*, 488 U.S. 179, 183 (1988). NCAA members pay dues to the organization. (*Id.* ¶ 145.) Among other things, the NCAA: (1) "sponsor[s], regulate[s] and/or organize[s] competitions and NCAA national championships in which NCAA policies and rules are applied" (*Id.* ¶ 122); and (2) "requires its members to submit to NCAA rules and regulations regarding" various issues, including "the rules under which athletic contests between Association members will be played," "the venues at which national championships among Associations members will be played," the rules for such championships, and the rules for determining the athletes' eligibility to compete, like the NCAA's transgender eligibility policies (the "Transgender Policies") at issue in this lawsuit. (*Id.* ¶ 133.)

As set forth in the SAC, the NCAA conducts all NCAA championships, including "[e]stablish[ing] the rules for sports competitions and participation[.]" NCAA Constitution, Article II(A)(2)(a), (d); (SAC ¶ 135.)[2] In a

---

[2] The SAC cites at length to both the NCAA's Constitution and its Bylaws and they are central to Plaintiffs' claims. (*E.g.*, SAC ¶¶ 135, 138–43.) Both documents are thus incorporated into the SAC, undisputed, and the Court may rely upon them at the motion to dismiss stage. *E.g.*, *Johnson v. City of Atlanta*, No. 22-11359 at 15 (11th Cir. July 12, 2024); *Beecher Carlson Holdings, Inc. v.*

policy it describes as "institutional control," the NCAA Constitution and its Bylaws mandate that its members achieve and monitor compliance with NCAA rules. Ex. 1, NCAA Const. Art. I(E), Art. IV(A); Div. I Manual §§ 12.10.1, 12.11.1 (establishing that it is a member institution's responsibility to certify its own athletes' eligibility and withhold those athletes who are ineligible from competition); Div. II Manual § 14.01.1 (same); Div. III Manual § 14.01.1 (same). In short: once the NCAA establishes the eligibility rules for each sport, each institution is required to enforce those policies. A member's failure to comply with NCAA rules has consequences. The NCAA may impose penalties ranging from public reprimand for lower-level penalties to fines, competition limitations on the institution, suspension, and termination of membership.[3] *See* SAC ¶¶ 135, 143; Div. I Manual § 19.12.

**State Defendants.**[4] The SAC also asserts claims against the (1) the

---

*Stern Risk Partners LLC*, No. 1:15-CV-1031-MHC, 2015 WL 13333633, at *2 (N.D. Ga. Nov. 3, 2015). For the Court's convenience, State Defendants have attached both the NCAA's Constitution and its Bylaws applicable to each of Divisions I–III as Exhibits 1–3.

[3] NCAA bylaws also provide that aggravating factors may warrant a higher range of penalties. Div. I Manual § 19.12.3. Aggravating factors include, among other things, "intentional, willful, or blatant disregard for NCAA bylaws by a person with institutionally derived authority," premeditated violations, and negligent disregard of the violation by persons of authority. *Id.* § 19.12.3.1.

[4] The SAC also names unknown agents of the Individual Defendants as fictional defendants John Does 27–50. SAC ¶ 119. These claims must be dismissed because, "[a]s a general matter, fictitious-party pleading is not

Board of Regents of the University System of Georgia ("Board of Regents"), which governs and manages Georgia's public colleges and universities, including academic institutions named in this suit; (2) Ángel Cabrera, individually and in his capacity as President of the Georgia Institute of Technology ("Georgia Tech"), and (3) 23 current and former members of the Board of Regents (together with Cabrera, the "Individual Defendants"), both individually and in their official capacities. (*Id.* ¶¶ 81, 93–117.)[5]

**The Georgia Tech Athletic Association, Inc. ("GTAA").** The SAC adds the GTAA as a new defendant. The GTAA is a separate and distinct entity from Georgia Tech which the SAC alleges controls Georgia Tech's athletics program. The GTAA is represented separately from the State Defendants and is not a party to this Motion. (*Id.* ¶¶ 84-88.)

## II.    The NCAA's Transgender Eligibility Policies.

In the fall of 2021, Lia Thomas—a senior swimmer from the University of Pennsylvania ("Penn")—began competing in women's Division I swimming events. (SAC ¶ 239.) Thomas had previously competed on Penn's men's swimming team without much success, but once she began competing in the

---

permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1268 (N.D. Ga. 2022) (disregarding fictitious defendants).

[5] The SAC removed Georgia Tech, the University of Georgia, and the University of North Georgia as defendants.

women's division, Thomas thrived and became the number one ranked swimmer in several women's freestyle swimming events. (*Id.*) Penn deemed Thomas eligible to make this shift pursuant to the NCAA's then-applicable policies regarding transgender athletes. (*Id.* ¶ 241.) Thus, on March 2, 2022, the "NCAA announced" that Thomas and 280 other swimmers qualified for the 2022 Championships. (*Id.* ¶ 443.) At the competition, Thomas won or placed in many of the women's events.

According to the SAC, the GTAA, on behalf of Georgia Tech, agreed to host the NCAA's 2022 Championships pursuant to a written agreement, but the NCAA "operate[d] and control[ed]" the facilities during the event. (*Id.* ¶ 419–21.) The level of control was significant. The NCAA mandated the application of the NCAA Transgender Policies at the 2022 Championships, including the NCAA "policies requiring Thomas to have full access to the women's locker room." (*Id.* ¶¶ 436, 442.) Consequently, during the 2022 Championships, as alleged in the SAC, Georgia Tech's male and female locker rooms were "designated [albeit not visibly] as 'unisex' in order to permit Thomas" access. (*Id.* ¶¶ 465–66.) Thomas ultimately used one of the same unisex locker rooms as some of the Plaintiffs, but no State Defendant is alleged to have encouraged or required Thomas to do so. (*Id.* ¶¶ 468–69.)

## STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) can be "based upon either a facial

or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack is based on the complaint alone, and the Rule 12(b)(6) standard of review applies. *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1281 (N.D. Ga. 2023) (Cohen, J.). Factual attacks leave courts "free to weigh … extrinsic evidence." *Id.* (citations omitted). Under Rule 12(b)(6) complaints must state a facially "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept all well-pleaded allegations as true, this deference does not apply to conclusory and formulaic allegations that merely recite elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

## ARGUMENT

### I. Plaintiffs lack standing to obtain relief against State Defendants.

Because Article III standing is "perhaps the most important of the jurisdictional requirements," it must be considered first. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). Each Plaintiff must demonstrate standing "for each claim." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotations omitted). Plaintiffs have failed to do so under Rule 12(b)(1), and this matters even at "the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,570 n.5 (1992). Here, the SAC fails to allege sufficient facts showing the

requisite (1) "concrete, particularized, and actual or imminent" injury in fact; (2) traceable to the State Defendants; (3) which may be redressed by an order of this Court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Supreme Court has made clear that "standing is not dispensed in gross." *Id.* at 431. Therefore, "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.* As the Supreme Court recently stated, "[h]eeding these conditions is critically important in a sprawling suit like this one." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (June 26, 2024).

### A. Plaintiffs have not demonstrated any "certainly impending" injury-in-fact necessary to obtain prospective relief.

Plaintiffs' claims for prospective relief must be based on "threatened injuries [that] are 'certainly impending.'" *Jacobson v. Fla. Sec. of State*, 974 F.3d 1236, 1245 (2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). Thus, the threatened injury must be imminent, and the threat of it occurring "material" and "substantial." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020). Here, despite having three opportunities to do so, virtually all of the Plaintiffs cannot meet this burden and have failed to establish a certainly impending injury-in-fact.

The Ineligible Plaintiffs lack standing to pursue any injunctive or declaratory relief because their lack of remaining eligibility means they cannot

suffer any of their alleged injuries—having to compete against or share a locker room with a transgender student—again in the future. (SAC ¶ 77.)

Those Plaintiffs with remaining eligibility, meanwhile, allege that the NCAA's Transgender Policies threaten to injure them by *potentially* forcing them to compete against and *potentially* share locker room facilities with transgender athletes in the future:[6]

- The Roanoke Swimmers' alleged injury, for example, is based on a *past* experience with a transgender athlete who intended to join the women's team but "decided to withdraw from participating" (*Id.* ¶¶ 611–29.) The SAC contains no allegations that this student—or any other—is due to join the team again any time soon nor that they will compete against any transgender athlete in the near future.

- Merryman's alleged future injury is even more attenuated. *Everhart*, 2022 WL 3699967, at *4. For her injury to be realized, some unknown high-school male athlete must be recruited and elect to compete on a Division II women's volleyball team, that team must then have a substantial likelihood of playing Merryman's team, and that competition must occur at one of Georgia's colleges and universities. (SAC ¶¶ 700–703.)

- The SEC Plaintiffs likewise cannot identify any specific athlete they will be forced to compete against, relying instead on a small handful

---

[6] The two exceptions to this are Track Athlete A and Slusser. Track Athlete A alleges she has previously competed and will in the future be forced to compete against a transgender athlete in her same conference. (SAC ¶¶ 633–36.) Similarly, Slusser alleges she currently competes with a transgender athlete on her team and will be forced to compete with the transgender athlete in the future. (*Id.* ¶¶ 639–699.) But even then, there is no connection to State Defendants for either plaintiff, as acknowledged by Plaintiffs. (Doc. 88-1 at 9) (Slusser's "newly alleged facts are relevant only to the claims against the NCAA."). Both Track Athlete A and Slusser's conferences are located in the Northeast United States, and West United States, respectively, and neither contain schools located in Georgia. (*Id.* ¶ 627, 644.)

of transgender athletes who competed in the past. (*Id.* ¶¶ 704–10.)

- All that is known about Swimmer A is that she *previously* competed in the 2022 Championships and that she has remaining eligibility. (*Id.* ¶¶ 56, 77.). There is no allegation identifying where she competed or whether she is still competing. Indeed, the lack of such an allegation suggests that she is not.

These allegations constitute nothing more than "conclusory allegations of hypothetical and speculative future harm based on an alleged increased risk," and are far from the "certainly impending" harms that are required to demonstrate a concrete injury-in-fact sufficient to confer Article III standing. *Everhart v. Colonial Pipeline Co.*, 1:21-CV-3559-MHC, 2022 WL 3699967, at *4 (N.D. Ga. July 22, 2022). Accordingly, Plaintiffs' Count VI and any requests for prospective relief—declaratory or injunctive—must be dismissed.

## B. Plaintiffs cannot establish traceability or redressability against State Defendants for their speculative injuries.

Even if Plaintiffs alleged cognizable injuries, they are not traceable to nor redressable by the State Defendants. To satisfy Article III, Plaintiffs must demonstrate that their injuries "result from the defendant's action" and are not "the result of an independent action of some third party." *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024). Similarly, redressability requires that it "must be the *effect of the court's judgment on the defendant—* not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir.

2019) (emphasis in original). Plaintiffs fail on both counts.

*First*, State Defendants did not create the *NCAA's* Transgender Policies, the NCAA did. (*E.g.*, SAC ¶¶ 5, 135, 177, 179–80). Nor is there any allegation State Defendants publicly endorsed or pushed for the NCAA's Transgender Policies in the way it alleges other NCAA members did. (*Id.* ¶ 241.)

*Second*, State Defendants' conduct did not and could not cause Plaintiffs to compete with or against transgender athletes; the NCAA and other member institutions made those decisions. Through institutional control, each NCAA member institution is responsible for determining the eligibility of its own student athletes to compete. *See supra* at 3–5. An institution's failure to comply with the NCAA's policies in making those decisions can lead to an NCAA investigation and "independent, final and binding adjudication process." (SAC ¶ 135; *supra* at 3–5.) Thus, it was the NCAA and Penn—not State Defendants—who "permitted Thomas to compete." (SAC ¶ 257; *see also id.* ¶ 764) (the *NCAA's* "authorization of Thomas to compete") (emphasis added).)

The same is true of some of Plaintiffs' concerns about hypothetical, future transgender athletes, as those athletes' eligibility would be the responsibility of the NCAA and their respective institutions like Roanoke College. Or, in the case of Track Athlete A, she will face Sadie Schreiner again if Rochester Institute of Technology and the NCAA decide Schreiner is eligible for the competition. Similarly, Slusser will compete with Blaire Fleming if San

Jose State University and the NCAA decide that Fleming is eligible to compete. But the fact remains the same—State Defendants will have nothing to do with it in either situation. State Defendants' discretion is limited to their own student athletes, and here, there is no allegation of any future competitor attending a Georgia institution. Indeed, Plaintiffs acknowledged that the Plaintiffs with remaining eligibility have no claims against State Defendants in their motion for leave to file the SAC. *See* (Doc. 88-1 at 9) (Slusser's new claims "are relevant only to the claims against the NCAA").

*Third*, when it comes to the locker room at the 2022 Championships, the SAC is replete with allegations demonstrating that the NCAA—not State Defendants—had "operational control" of the facilities and made the decisions regarding the locker rooms. (SAC ¶¶ 420–21, 764.) The SAC further strengthens this argument as Plaintiffs now assert GTAA, a separate and distinct legal entity from Georgia Tech, had control of the lockers, and they even define them as "GTAA Lockers." (*Id.* ¶¶ 85, 88.) Given this, the SAC, at most, alleges that State Defendants "could have prevented" the NCAA's authorization and somehow "allow[ed]" it to happen. (*Id.* ¶¶ 438, 807).[7] This

---

[7] Plaintiffs' conclusory allegations that State Defendants "intentionally authorized" Thomas to compete are belied by and inconsistent with the other facts alleged in the SAC, which emphasize the NCAA's active control of policies and Penn's control of eligibility determinations for its swimmers. (SAC ¶¶ 133, 135(a), 257, 419-21, 764.)

only confirms that the NCAA's "independent action" severs the causal chain necessary to establish traceability. *Baughcum*, 92 F.4th at 1032.

*Fourth*, for these reasons, the lack of redressability is apparent. An order against only the State Defendants would neither change the NCAA's Transgender Policies nor prevent other NCAA member institutions from deeming transgender athletes eligible to compete in women's divisions sports, nor prevent Plaintiffs from competing against such transgender athletes at NCAA events hosted outside of the State of Georgia. This is especially true for any prospective relief sought, as Plaintiffs cannot establish any certainly impending future harm past the 2022 Championships. *See* (*Supra* at 10-12.) Such speculative reasoning is insufficient. *Everhart*, 1:21-CV-3559-MHC at *4.

In short, Plaintiffs' alleged past and future injuries do not arise from any act of State Defendants but rather from the NCAA's (or other institutions') independent decisions to create, mandate, and/or enforce the Transgender Policies that allow transgender athletes to compete and share locker room facilities with female athletes in NCAA competitions.[8] Binding precedent holds that, in such circumstances, alleged injuries are neither "fairly traceable to …

---

[8] In fact, if this Court only ordered the State Defendants to disregard the NCAA's policies, it is at least conceivable that such conduct—including by non-party Georgia universities—would be subjected to the NCAA's infractions program and Georgia's own student-athletes would be deprived of the opportunity to compete at all in the events Plaintiffs understandably describe as "significant." (SAC ¶¶ 513, 518, 522.)

nor redressable by a judgment against" parties who do "not enforce the challenged law." *Jacobson*, 974 F.3d at 1241.

## II. The SAC names the wrong parties.

Plaintiffs' claims for injunctive relief against former Board of Regents members should be dismissed.[9] An injunction against the Board's former members provides Plaintiffs with no relief, as they can no longer "affect the matter in the issue in the case," (if they ever could). *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). In addition, Federal Rule of Civil Procedure 25(d) "automatically" substitutes public officers' successors. As such, all claims for injunctive relief against the Board's former members should be dismissed, as Plaintiffs have previously conceded but did not reflect in the SAC. (Doc. 87 at 50.)

## III. Plaintiffs fail to state a Title IX claim against State Defendants.

Counts I and VI improperly seek injunctive and monetary relief for alleged violations of Title IX. The allegations fail to state a claim against the State Defendants because Title IX does not impose liability where the defendant neither caused nor exercises control over the party that caused a plaintiffs' alleged harm.

---

[9] The SAC names seven individuals who no longer serve on the Georgia Board of Regents: Aldridge, Hopkins, Langford, Little, Perez, Shailendra, and Waters. (SAC ¶¶ 95, 102, 107, 108, 110, 113, 117.)

Under binding precedent, recipients of federal funds can be liable for damages under Title IX only if the "recipient *itself*" excluded, denied, or subjected plaintiffs to discrimination. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 641 (1999).

Here, the SAC is clear: only the NCAA purportedly excluded or denied Plaintiffs from the opportunity to compete against only women athletes, and as such, only the NCAA is alleged to have discriminated against the Plaintiffs. Each of Plaintiffs' alleged injuries arose from an NCAA policy or the NCAA's enforcement thereof. (*See, e.g.,* SAC ¶¶ 537, 556, 763–64, 767, 848–49.) And it was "[t]he NCAA's actions, practices, and/or policies … deprived Plaintiffs," and "undermined" Plaintiffs' experiences. (SAC ¶¶ 763, 767, 848–49.) At most, the SAC accuses State Defendants of "supporting, recognizing, facilitating, joining in, and implementing" the NCAA and its policies at the 2022 Championships. (SAC ¶ 772.) But even these conclusory allegations of passive and secondary acts acknowledge that it was "the *decisions and actions of the NCAA*" that they are accused of "supporting recognizing, facilitating, joining in, and implementing[.]" (*Id.* (emphasis added).) This is dispositive.

The dispositive weight of NCAA's alleged control is further demonstrated by considering the possible consequences of State Defendants acting as Plaintiffs argue Title IX requires. If State Defendants refused to host the 2022 Championships because of the NCAA's Transgender Policies, Penn's

determination that Thomas was eligible to compete in the women's division, or the NCAA's control over locker rooms used during the 2022 Championships, the NCAA may have cancelled the 2022 Championships altogether. Alternatively, the NCAA may have transferred the event to the campus of a member institution, like Penn, that wholly endorsed the NCAA's mandates. (SAC ¶ 241.) In either scenario, the Ineligible Plaintiffs and Swimmer A would be in, at best, the same position as they are today. Thus, because the conduct of the State Defendants is ultimately irrelevant to the conduct at issue, they cannot be liable under Title IX.

To the extent that the Plaintiffs allege an "idleness" theory of Title IX liability—one that imposes liability when a recipient of federal funds is deliberately indifferent to a third party's actionable conduct—the result is the same. (SAC ¶ 438); *Davis*, 526 U.S. at 641. As a threshold matter, it does not appear that either the Supreme Court or the Eleventh Circuit has approved of an idleness claim beyond claims involving sexual harassment.[10]

Even if an idleness theory applied in this context, precedent demonstrates that the SAC still fails to allege sufficient facts to survive a motion to dismiss. *First*, the SAC does not allege conduct on the part of the

---

[10] Moreover, this "idleness" theory wholly fails to account for the lack of any concrete, non-speculative threat of future competition against transgender athletes at university facilities in Georgia. *Supra* at § I.A.

State Defendants that demonstrates deliberate indifference to alleged discrimination by the NCAA. *Davis*, at 642–43 (citation omitted); *see also Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279 (11th Cir. 2005) (addressing harassment claim). Deliberate indifference typically considers a defendant's response to an alleged incident. *Sauls*, 399 F.3d at 1287. Plaintiffs, however, seek to impose liability against the State Defendants for not preventing incidents of discrimination at the 2022 Championships. Even if the State Defendants could, and the SAC makes clear they could not, deliberate indifference requires consideration of a defendant's reaction. This conclusion is supported by binding precedent that authorizes damages in idleness claims only where the defendant had actual or constructive notice that the third party's conduct violates Title IX.[11] *Davis*, 526 U.S. at 646-47 (addressing harassment claim); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). At best, the SAC's claims of notice are conclusory and insufficient.[12]

---

[11] The Eleventh Circuit has not decided if *Gebser's* actual-notice requirement applies to Title IX claims that seek only injunctive relief, but there is no reason it should not apply in this context. *Kocsis v. Florida State Univ. Bd. of Trustees*, 788 Fed. Appx. 680, 684 n.2 (11th Cir. 2019).

[12] The SAC does not allege that State Defendants received actual notice that Plaintiffs deemed the NCAA's conduct actionable. Nor could State Defendants have had constructive notice that the NCAA's conduct violated Title IX— whatever their personal policy views—in the light of the national disagreement on the issue, as the SAC acknowledges (and as further demonstrated by the attempted intervention of the National Women's Law Center). (SAC ¶¶ 47–48; Doc. 36-1.)

Even if the SAC did sufficiently allege deliberate indifference, the claims still fail because it does not allege how such deliberate indifference "effectively 'cause[d]' the discrimination." *Davis*, 526 U.S. at 642-43 (bracket in original) (citation omitted). As shown above, even if the State Defendants had proactively refused to comply with the NCAA's requirements, Plaintiffs' injuries would be the same or worse.

Beyond these shortcomings, Title IX claims fail against the State Defendants because they do not and cannot "exercise[ ] substantial control over both the [discriminator] and the context in which the known [discrimination] occurs." *Id.* at 645. As the SAC recognizes, no State Defendant possesses such authority over the NCAA. (*E.g.*, SAC ¶¶ 128–29, 133–46.) Plaintiffs' constitutional claims fail.

### A. Qualified immunity bars Ineligible Plaintiffs' damages claims against the Individual State Defendants.

In Counts III and IV, the Ineligible Plaintiffs seek monetary damages against some Individual Defendants pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment. Specifically, the Ineligible Plaintiffs allege that (1) allowing Thomas to compete in women's events at the 2022 Championships violated the 14th Amendment right to equal protection and (2) allowing Thomas to use the same locker room violated some substantive due process right to "bodily privacy." (SAC ¶¶ 800–809, 817–26.)

These claims are barred by qualified immunity, even at this stage.

Qualified immunity shields "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Rights are clearly established only if they are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194 (2001). In the Eleventh Circuit, a right is sufficiently apparent only when "preexisting caselaw which is sufficiently similar in facts" mandates a conclusion that "every objectively reasonable officer" would have 'fair notice' that the alleged conduct violated a recognized right. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). Qualified immunity can be raised on a motion to dismiss, and once raised, the burden of persuasion on that issue is on the plaintiff." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

The SAC itself demonstrates that no Individual Defendant could have "fair notice" that providing a venue for the NCAA to hold the 2022 Championships violated the Equal Protection Clause. *Willingham*, 321 F.3d at 1301. Putting aside the State Defendants' views on the appropriateness of the NCAA's challenged policies, the SAC recognizes that the United States Department of Education's Office for Civil Rights, which is charged with

enforcing Title IX, has issued proposed regulations that are consistent with the NCAA's Transgender Eligibility Policies (SAC ¶ 47). Further, caselaw on the issue remains, at best, unsettled.[13]

The SAC's citation to a 2022 decision of the Eleventh Circuit, *Adams by & through Kasper v. School Board of St. Johns County*, 57 F.4th 791, 807 (11th Cir. 2022), does not require a contrary conclusion. The court issued that opinion months *after* the 2022 Championships. *Id.* Moreover, *Adams* does not adopt Plaintiffs' position, but held only that the Constitution does not mandate an open bathroom policy. *Id.* at 803-04.

The same is true of the "bodily privacy" claim, which Plaintiffs allege also stems from the Fourteenth Amendment. (SAC ¶¶ 811–27.) If such a right exists, it has never been recognized in a case involving "sufficiently similar" facts. *Willingham*, 321 F.3d at 1301. It appears limited to circumstances where the state maintains physical custody of the individual (*e.g.*, prisons, arrestees, foster care). *See, e.g., Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).

---

[13] *See, e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1081 (9th Cir. 2024) (affirming injunction of law barring transgender athletes from participating in women's sports) as amended (June 14, 2024); *B.P.J. by Jackson v. W. Virginia State Bd. of Educ.*, 98 F.4th 542, 563 (4th Cir. 2024) (disapproving of enjoined state law barring transgender athletes from competing on women's sports teams); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 773 (7th Cir. 2023) (finding a likelihood of success on merits of claim that restricting bathroom access violates the Equal Protection clause), *cert. denied sub nom. Metro. Sch. Dist. of Martinsville v. A. C.*, 144 S. Ct. 683 (2024).

These circumstances are quite distinct.

In sum, qualified immunity bars the claims for money damages against the properly named Individual Defendants because the state of the law at the time of the 2022 Championships did not provide "fair notice" that the NCAA's mandates violate any constitutional right.

## B. Plaintiffs are not entitled to injunctive relief against the Individual State Defendants.

Plaintiffs are also not entitled to any injunctive relief against the Individual State Defendants for their constitutional claims. The reason is simple: injunctions are available under § 1983 only if there is "an affirmative causal relationship between the action taken by a particular person 'under color of state law' and the constitutional deprivation.'" *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1199 (N.D. Ga. 2022) (citing *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (additional citations omitted)).

The "state action" requirements of § 1983 and the Fourteenth Amendment are identical. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). They ensure that the "state is responsible for the specific conduct of which [the plaintiff] complains." *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1357 (11th Cir. 1986). This "requires careful attention to the gravamen of the plaintiff's complaint" to identify the "specific conduct" of which Plaintiffs complain. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Precedent identifies two types of state action in cases involving private actors. *First*, a state actor may be liable if he endorses private action by exercising "coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004; *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982). Under this theory, mere "approval of or acquiescence in the initiatives of a private party" are insufficient. *Blum*, 457 U.S. at 1004.

*Second*, a private entity can be deemed a state actor if it has exercised powers that are "traditionally the exclusive prerogative of the state." *Id.* at 1005. But importantly:

> It is not enough that an institution is highly regulated and subsidized by a state. If the state in its regulatory or subsidizing function does not order or cause the action complained of, and the function is not one traditionally reserved to the state, there is no state action.

*Arlosoroff v. NCAA*, 746 F.2d 1019, 1021–22 (4th Cir.1984).

Applying this precedent reveals that the "specific conduct" at issue for the constitutional claims are Plaintiffs (1) having to compete against Thomas at the 2022 Championships, (2) having to share locker room facilities with Thomas at the 2022 Championships, and (3) potentially having to compete against transgender athletes in the future. *Blum*, 457 U.S. at 1004; (SAC ¶¶ 772–73, 804, 807, 820, 825, 848.) The SAC does not effectively link any of these harms to any act of any Individual Defendant. The acts of Penn and the

NCAA allowed Thomas to swim in the 2022 Championships. (*Supra* at 3–5.) The NCAA required the use of unisex bathrooms. (*Id.* ¶¶ 36–37, 226, 436, 454–56). This is equally true of any NCAA competitions in the future. (*E.g.*, *id.* ¶¶ 36–37, 226.) No non-conclusory allegation contends or explains how any Individual State Defendants exercised any "coercive power" or "significant[ly] encourage[d]" the NCAA's policies either. *Blum*, 457 U.S. at 1004. Instead, the SAC alleges the kind of "acquiescence" theory that the *Blum* court rejected. *Id.*; (SAC ¶¶ 421, 438.) Or Plaintiffs' claims rely on a purported "failure to intervene," which the Eleventh Circuit has recently rejected in a similar context. *Ellison v. Georgia Dep't of Cmty. Health*, No. 20-14344, 2022 WL 402922, at *3 (11th Cir. Feb. 10, 2022) ("His allegation that the state commissioners failed to intervene in his case isn't enough because mere acquiescence can't show state coercion.").

The second approach is also unavailable to the Plaintiffs as a matter of constitutional law because, as recognized by other courts, the "regulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function." *McHale v. Cornell University*, 620 F. Supp. 67, 70 (N.D.N.Y. 1985); *see also NCAA v. Alston*, 594 U.S. 69, 74–79 (2021) (discussing the history of intercollegiate sports).

To the extent any of the Individual Defendants were actually involved in the decision to allow the NCAA to host the 2022 Championships in Georgia

Tech's facilities—something alleged nowhere in the SAC—that decision did not *itself* harm Plaintiffs. Because the NCAA's actions—which actually caused Plaintiffs' alleged harm—cannot be imputed to the Individual Defendants, the SAC fails to properly allege state action and proximate causation.

### C. Plaintiffs' "right to bodily privacy" claim fails because there is no allegation of state coercion.

The lack of state action also bars Plaintiffs' claim about "bodily privacy" against the Individual Defendants. As sympathetic as the State Defendants generally may be, the SAC does not identify state action, because no Individual Defendant is alleged to (or did) compel or encourage Thomas's use of the unisex locker room.

As shown, if there is a "constitutional right to bodily privacy," state action exists only in situations where the actionable conduct occurs to those under state custody and control. *See, e.g.*, *Fortner*, 983 F.2d at 1030. This is not one of those cases, and the SAC has not alleged the kind of control or coercion relevant to bodily privacy claims.

## <u>CONCLUSION</u>

For the reasons stated above, State Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' claims against them.[14]

---

[14] For the sake of clarity, Plaintiffs only assert claims against State Defendants in Counts I, III–IV, and VI. Counts II and V do not contain claims against State Defendants.

Respectfully submitted, this 15th day of November, 2024.

*/s/ Josh Belinfante*

| | |
|---|---|
| Josh Belinfante | 047399 |
| Vincent R. Russo | 242628 |
| Edward A. Bedard | 926148 |
| Javier Pico Prats | 664717 |
| Anna Edmondson | 289667 |

ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

*Counsel for State Defendants*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I certify that this State Defendants' Brief in Support of Their Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 13-pt Century Schoolbook font and type.

*/s/ Josh Belinfante*
Josh Belinfante
