IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION

RILEY GAINES, *et al.*

     *Plaintiffs*,

v.

NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION, *et al.*,

     *Defendants*.

Civil Action No.
1:24-cv-1109-MHC

**GTAA'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

ARGUMENT .........................................................................................3

I.    Plaintiffs' Claims Against GTAA Are Time Barred....................................3

II.   The State Defendants' Previous Arguments Regarding Lack of Standing Are Well Founded And Apply To GTAA As Well .....................8

III.  Plaintiffs' Title IX Claims Against GTAA Suffer From A Host Of Defects Which Justify Dismissal.................................................11

IV.   Plaintiffs' Constitutional Claims Must Be Dismissed...............................23

V.    Conclusion ......................................................................................24

# INTRODUCTION

Defendant Georgia Tech Athletic Association, Inc. ("GTAA") moves to dismiss Plaintiffs' Corrected Second Amended Complaint ("Complaint") in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs assert Title IX and Equal Protection Clause claims against GTAA, alleging that it co-hosted the 2022 NCAA's Swimming and Diving Championships which were governed by the NCAA's Transgender Eligibility Policies. These claims, however, suffer from fundamental flaws requiring dismissal.

First, Plaintiffs' claims against GTAA are time-barred by the applicable statute of limitations. The event in question occurred in March 2022, but GTAA was not added as a defendant until October 2024, exceeding the two-year limitations period for Title IX and § 1983 claims. Plaintiffs cannot establish that their claims "relate back" to the original filing date under Rule 15(c) of the Federal Rules of Civil Procedure, as there was no "mistake" concerning GTAA's identity within the meaning of the rule.

Second, Plaintiffs lack standing under Article III of the U.S. Constitution. The Complaint is devoid of any concrete allegations that trace specific injuries to GTAA's independent actions. The decisions at issue were mandated solely by the

NCAA, an entity distinct from GTAA. Consequently, any purported injuries are not traceable to GTAA, nor would a judgment against GTAA redress Plaintiffs' claimed harms.

Third, the Complaint fails to state a claim under Title IX as GTAA is not a recipient of federal funds, a prerequisite for liability under the statute. Even if GTAA could be considered intertwined with Georgia Tech for this purpose, Plaintiffs have not alleged that GTAA received any funding, much less extensive funding, from Georgia Tech.

Finally, GTAA is not a state actor subject to the Equal Protection Clause under 42 U.S.C. § 1983.

In sum, GTAA emphasizes that its sole intent was to facilitate the hosting of a premier women's championship event and provide a platform for all eligible participants as established by NCAA guidelines to compete. GTAA played no role whatsoever in determining who was eligible to participate in the NCAA's event and adherence to NCAA policies was necessary to ensure that the event could take place, preserving valuable opportunities for female student-athletes across the country.

For these and other reasons detailed below, GTAA respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

# ARGUMENT

## I.    Plaintiffs' Claims Against GTAA Are Time Barred.

Plaintiffs bring Title IX and Section 1983 claims against GTAA in relation to the 2022 NCAA Division I Women's Swimming and Diving Championships which, in addition to being substantively deficient as discussed in detail below, are barred by the statute of limitations.[1]

The statute of limitations for Title IX and Section 1983 claims is two years. *See Lovett v. Ray,* 327 F.3d 1181, 1182 (11th Cir. 2003); *George v. Horne*, 684 F.Supp.3d 1345 (N.D. Ga. 2023); *M.H.D. v. Westminster Schools*, 172 F.3d 797, 802 - 803 (11th Cir. 1999)). The limitations period starts when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561-562 (11th Cir.1996)

In this case, the Swimming and Diving Championship began on March 16, 2022. While Plaintiff's initial Complaint was filed on March 14, 2024, GTAA was not added as a party Defendant and served until October 25, 2024, or more than

---

[1] See ECF No. 94, Plaintiff's Corrected Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at pages 174, 181, 184, and 188.

seven months after Plaintiffs filed their Complaint and well outside of the relevant two-year limitation period. The claims against GTAA can only be timely if Plaintiffs satisfy their burden to establish that they relate back to Plaintiffs' original filing. They have failed to meet that burden here.

Fed. R. Civ. P. 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). It is Plaintiffs' burden to show satisfaction of Rule 15(c). *Tolston v. City of Atlanta, Georgia*, 2024 WL 1533609 (N.D. Ga March 14, 2024). Under Rule 15(c)(1), as relevant here, an amendment to a pleading relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; **and**
>
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
>
> Fed. R. Civ. P. 15(c)(1) (emphasis added).

Fed. R. Civ. P. 4(m) sets a 90-day time limit for serving a defendant with a summons and complaint. Here, Plaintiffs cannot satisfy Rule 15(c)(1)(C)(i) because they have not asserted any set of facts suggesting that GTAA received notice of this lawsuit within the Rule 4(m) service period which ended on June 12, 2024.

Even assuming GTAA had sufficient notice of this lawsuit within the Rule 4(m) period, Plaintiffs' Second Amended Complaint still does not relate back because there has been no "mistake" concerning GTAA's identity. In *Tolston*, *supra*, Judge Geraghty aptly explained the case law regarding what the term "mistake" means in the context of Rule 15(c)(1)(C):

> The Supreme Court [in *Krupski v. Costa Crociere S. p. A.*] defined the word "mistake" according to its dictionary definition: "[a]n error, misconception, or misunderstanding; an erroneous belief." *Id*. at 548, 130 S.Ct. 2485 (quoting Black's Law Dictionary 1092 (9th ed.2009)).
>
> In determining whether a movant has made a "mistake" under Rule 15(c), courts in the Eleventh Circuit often look to a pre-*Krupski* case, *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir.1999). In *Wayne*, the Eleventh Circuit stated that a "mistake," for Rule 15(c) purposes, was an "error, a misnomer, or a misidentification[.]" 197 F.3d at 1103, *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).With that definition in mind, the Eleventh Circuit considered whether a plaintiff could amend his complaint by adding as defendants deputy sheriff officers who were previously designated as "John Doe" defendants but whose names were discovered by the plaintiff after the statute of limitations had run. *Id*. at 1101. The Eleventh Circuit held that the amendment could not relate back because the plaintiff's "lack of knowledge regarding the identities of the deputy sheriffs was not a mistake concerning the identity of the proper party." *Id*. at 1103 (internal quotation marks omitted). The Eleventh Circuit "d[id] not read

the word 'mistake' to mean 'lack of knowledge.' " *Id*. *Wayne's* "bright-line rule," *Rodriguez v. Quinones*, 508 F. Supp. 3d 1198, 1205 (S.D. Fla. 2020), thus provides that a plaintiff's failure to identify the name of a defendant he does not know at the time of filing his complaint is the result of his "lack of knowledge," not a "mistake" under Rule 15(c). 197 F.3d at 1103; *see also Powers v. Graff*, 148 F.3d 1223, 1226–27 (11th Cir. 1998) (Rule 15(c) "permits an amendment to relate back *only* where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where there is a lack of knowledge of the proper party.") (emphasis in original) (citation omitted).[2]

In Plaintiffs' Brief in Support of Motion for Leave to File Second Amended Complaint, Plaintiffs justified adding GTAA as a party because they:

only recently discovered GTAA's role as a party that contracted with the NCAA to "host" the 2022 NCAA Championship as a result of five Plaintiffs agreeing to testify at a hearing held on August 27, 2024, by the Georgia Senate Special Committee on the Protection of Women's Sports (Committee).[3]

This acknowledgment confirms that Plaintiffs' delay in naming GTAA was due to a lack of knowledge, not an error in identifying the correct party. As mentioned above, Eleventh Circuit precedent clearly distinguishes between a true mistake and a lack of knowledge. *See Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999) ("mistake" under Rule 15(c)(1)(C) refers to an error or misidentification,

---

[2] *Tolston*, *supra*, 2024 WL 1533609 at *10.

[3] See ECF No. 94, Motion for Leave to File Motion for Leave to File Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at 2.

not the plaintiff's ignorance of a potential defendant's identity). Plaintiffs' admission aligns precisely with this distinction, indicating that their amendment was made not to correct a mistake but to address a prior lack of awareness. As such, the amendment fails to meet the relation-back standard.

Plaintiffs also contend GTAA was misidentified in the original lawsuit as "John Doe 26."[4]  Setting aside the fact that this is implausible since John Does 26-50 are identified in Plaintiffs' original lawsuit as "individuals" being "sued in their individual and/or official capacities,"[5] Eleventh Circuit precedent is clear that the Plaintiffs' reliance on "John Doe" designations is again precisely the type of knowledge gap that courts in this circuit do not recognize as a "mistake" for purposes of Rule 15(c)(1)(C).  *See Bloodworth v. United States*, 623 F. App'x 976, 979 (11th Cir. 2015) ("A plaintiff's amendment to identify parties previously designated as 'John Doe' defendants in the complaint does not relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15 because the amendment is made to correct the plaintiff's lack of knowledge about whom to sue, not a mistake by the defendant in identifying the proper party."); *see also*, *Jones v. Ga. Dep't of Corr.*, 763 F. App'x 906, 907 (11th Cir. 2019) (*citing Wayne*, 197 F.3d at 1103–04)

---

[4] See ECF No. 94, Motion for Leave to File Motion for Leave to File Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at 1, fn. 1.
[5] See ECF No. 1, Complaint at page 46 – 47.

("An amendment to substitute named officials for a fictitious defendant would not relate back, under Federal Rule of Civil Procedure 15(c), because the plaintiff lacked knowledge of the proper defendant when he filed his complaint.")

In conclusion, Plaintiffs' Title IX and Section 1983 claims against GTAA are barred by the two-year statute of limitations. The claims do not relate back to the original filing under Rule 15(c) because Plaintiffs have failed to meet their burden of showing that GTAA had notice of the action within the Rule 4(m) service period, which ended on June 12, 2024. Even if such notice were established, Plaintiffs' amendment does not involve a "mistake" in identity as required by Rule 15(c)(1)(C). Instead, Plaintiffs' delay in naming GTAA stemmed from a lack of knowledge, which the Eleventh Circuit has consistently held does not satisfy the "mistake" standard. Plaintiffs' justification for adding GTAA, based on newly discovered information from the August 2024 Georgia Senate hearing, underscores that the amendment was due to their previous unawareness rather than an error in identifying the correct party. Additionally, their reliance on the "John Doe" designation for GTAA cannot salvage the claims, as Eleventh Circuit precedent makes clear that such placeholder designations do not qualify as a "mistake" under Rule 15(c). For these reasons, the claims against GTAA should be dismissed as untimely.

## II.    The State Defendants' Previous Arguments Regarding Lack of Standing Are Well Founded And Apply To GTAA As Well

GTAA incorporates by reference the legal and factual arguments made by the State Defendants regarding standing. Put simply, none of the four categories of Plaintiffs[6] have standing to pursue claims against GTAA as they fail to establish any specific, concrete injury traceable to **GTAA's** actions.

According to Plaintiffs' lawsuit, GTAA co-hosted the NCAA's 2022 Swimming and Diving Championships at Georgia Tech.[7] To host the NCAA's event, GTAA was "required to conform to the directions of the NCAA to comply with the NCAA Transgender Eligibility Policies and the terms of the Board of Governors' event hosting policies . . . ."[8] NCAA policy dictated specific measures related to locker room usage, athlete participation eligibility, and privacy accommodations, thereby eliminating any discretionary authority for GTAA in these matters.[9] Indeed, according to Plaintiffs' lawsuit, the NCAA had "operational control" of the 2022 Championships.[10]

---

[6] There are four categories of Plaintiffs: (1) those who competed at the 2022 NCAA Swimming and Diving Championships (Swimmer A, Alons, Countie, Gaines, Gyorgy, and Wheeler); (2) "Plaintiffs Currently Competing at NCAA Division I Institutions"; (3) "Plaintiff Currently Competing at NCAA Division II Institution"; and (4) "Plaintiffs Currently Competing at NCAA Division III Institutions." ECF No. 94, Corrected Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at pages 16 -21.

[7] *Id*. at ¶ 124.

[8] *Id*. at ¶ 425.

[9] *Id*. at ¶ ¶ 454 - 456.

[10] *Id*. at ¶ ¶ 420 - 421.

Plaintiffs' lawsuit is devoid of any allegation that GTAA had any say whatsoever in who qualified for the NCAA's event. Rather, those decisions were made exclusively by the NCAA.[11] Plaintiffs' lawsuit is similarly devoid of any allegation that GTAA played any role whatsoever in setting the NCAA's Transgender Eligibility Policies or the terms of the Board of Governors' event hosting policies. Again, those decisions were made exclusively by the NCAA.[12]

Finally, Plaintiffs note, "Had Georgia Tech and GTAA officials not agreed to go along with implementation of the NCAA Transgender Eligibility Policies at the 2022 NCAA Championships, the NCAA would likely have withdrawn the event as multiple public announcements from the NCAA Board of Governors state."[13] Put in more direct terms, without GTAA's compliance with the operational rules and policies established by the NCAA, women student athletes across the country would have been entirely deprived of the athletic opportunity to participate in the NCAA's championship event.

Given all of this, Plaintiffs have clearly failed to establish that any injuries they purportedly suffered are traceable to or redressable by GTAA. Article III's traceability standard requires the "injury [to] result from the defendant's action and

---

[11] *Id.* at ¶ ¶ 252 – 253.
[12] *Id.* at ¶ ¶ 242, 245, and 253.
[13] *Id.* at ¶ 427.

is not the result of an independent action of some third party." *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024). Similarly, redressability requires any potential "judgment on the defendant—not an absent third party—[to] redresses the plaintiff's injury, whether directly or indirectly." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019). Plaintiffs' claims against GTAA clearly fail in this regard.

Plaintiffs' grievances are directed toward the NCAA's Transgender Eligibility Policies, which are outside GTAA's control. The Second Amended Complaint contains generalized allegations about policies that affect all NCAA member institutions and fails to demonstrate that GTAA independently engaged in conduct that directly caused Plaintiffs harm. Without an injury-in-fact traceable to GTAA, Plaintiffs cannot satisfy Article III's standing requirement and dismissal under Rule 12(b)(1) is warranted.

## III.   Plaintiffs' Title IX Claims Against GTAA Suffer From A Host Of Defects Which Justify Dismissal

Plaintiffs contend that by co-hosting the 2022 NCAA Women's Swimming and Diving Championships and adhering to the NCAA's Transgender Eligibility Policies, GTAA contributed to discrimination against biological women in violation of Title IX.

Title IX was passed as part of the Education Amendments of 1972 and mandates that, subject to certain exceptions: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). Its purpose is clear: to prohibit sex discrimination in education. *See United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir. 2021).

## A.    GTAA Is Not A Recipient of Federal Funds and Does Not Receive Extensive Funding from Georgia Tech

Title IX coverage extends only to entities that receive federal funds. 20 U.S.C. § 1681(a); *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999)). The Eleventh Circuit has stated that for a Title IX claim against a private entity such as GTAA[14] to survive a motion to dismiss, a plaintiff must plead that a federal funding recipient (in this case, Georgia Tech) has "provided extensive funding" and "has ceded control over one of its programs" to the private entity. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007). Here, Plaintiffs' Second Amended Complaint is devoid of any allegation that GTAA receives **any** funding, much less extensive funding, from Georgia Tech. Plaintiffs' Second

---

[14] ECF No. 94, Corrected Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at ¶ 84.

Amended Complaint is similarly devoid of any allegation that GTAA received **any**

federal funds.[15] These facts standing alone are reason to dismiss Plaintiffs' Title IX

claims against GTAA. *See Williams*, 477 F.3d at 1294, citing *Alston v. Virginia High*

---

[15] Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:

(1) A grant or loan of Federal financial assistance, including funds made available for:

(i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and

(ii) Scholarships, loans, grants, wages, or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.

(2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.

(3) Provision of the services of Federal personnel.

(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.

(5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2(g).

*School League, Inc.*, 144 F. Supp. 2d 526, 531 (W.D. Va. 1999) (high school athletic

league was deemed "not subject to liability under Title IX solely by virtue of the fact

that it receives membership dues from the high schools that do receive federal funds"

because the plaintiff failed to allege that member schools "pay their dues with federal

funds earmarked for that purpose.")

### B.   Any Title IX Obligations GTAA Could Possibly Have Would Only Extend to Georgia Tech Students

To the extent GTAA has any Title IX compliance obligations, those

obligations are to Georgia Tech students and Georgia Tech student athletes, none of

whom are Plaintiffs in this litigation. To that end, Plaintiffs spend numerous pages

discussing athletics-specific Title IX regulations; however, those regulations apply

to "interscholastic, intercollegiate, club or intramural athletics **offered by a**

**recipient**." 34 C.F.R. § 106.41 (a) (emphasis added). Compliance is measured by

how the recipient accommodates and ensures equal opportunities for its own student-

athletes, not those from other institutions. For illustration, Plaintiffs correctly note

that: "One aspect of assessing 'equal athletic opportunity for members of both sexes

is ascertaining, '[w]hether the selection of sports and levels of competition

effectively accommodate the interests and abilities of both sexes.'" But in Georgia

Tech's case, compliance with this equitable-participation provision is assessed by

looking at Georgia Tech's undergraduate population and then assessing whether the

sports offered by Georgia Tech to its students effectively accommodate the interests and abilities of Georgia Tech students. *See e.g.*, *Chalenor v. Univ. of North Dakota*, 291 F.3d 1042, 1045 (8th Cir. 2002). Again, in this case, not a single Georgia Tech student is contending that Georgia Tech has failed to effectively accommodate their interests and abilities or otherwise failed to provide athletic-participation opportunities in a way that violated Title IX. Indeed, GTAA had no say whatsoever in which athletes would be afforded the opportunity to participate in the NCAA's championship event.

Similarly, Plaintiffs contend:

> As another aspect of equal athletic opportunity, implementing regulations and guidance state that male and female athletes "should receive equivalent treatment, benefits and opportunities." Policy Interpretation, 44 Fed. Reg. 71,414  Factors two through ten of 34 C.F.R. § 106.41(c) are used to evaluate "equal" teams. The "equal treatment" to which girls and women are entitled includes equal "opportunities to engage in . . . post-season competition," id. at 71,416, equal opportunities for public recognition, 34 C.F.R. § 106.41(c), and the right to be free of any policies which are "discriminatory in . . . effect" or that have the effect of denying "equality of athletic opportunity." Id. at 71,417.

But again, compliance with this provision is assessed by comparing the treatment, benefits, and opportunities received by Georgia Tech students participating in the men and women's sports offered by Georgia Tech. *See e.g., Portz v. St. Cloud State Univ.*, 16 F.4[th] 577, 581—582 (8th Cir. 2021).

15

Put simply, Plaintiffs' Title IX legal theory that GTAA had Title IX obligations moored in the athletics-related regulations to anyone other than Georgia Tech students is not supported by precedent and is inconsistent with Title IX's athletics-related regulations, guidance documents, and court cases interpreting the same. Georgia Tech's Title IX compliance obligations in athletics are directed toward its own students and ensuring that they have equal opportunities and benefits in sports, as mandated by 34 C.F.R. § 106.41.

### C. Ambiguous Guidance and Lack of Clear Congressional Mandate Preclude Title IX Liability for GTAA

Even assuming solely for the sake of argument that GTAA received federal funds (which it did not), Title IX liability requires a showing that that the funding recipient disregarded a "clear statement" from Congress that their actions violate Title IX. In this case, there has obviously been no "clear statement" from Congress, the Department of Education, or 11th Circuit courts that banning transgender student athletes' participation in athletics events was a condition of receiving federal funds. To the contrary, in the lead up to the 2022 NCAA Championships, the Department of Education and courts in this circuit, at best, provided conflicting statements on Title IX's institutional obligations regarding this issue.

Congress passed Title IX pursuant to its authority under the Spending Clause. U.S. Const. art. I, § 8, cl. 1; *Davis v. Monroe County Board of Education*, 526 U.S.

629, 640 (1999) ("[W]e have repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause."). "[L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the [recipient] agree to comply with federally imposed conditions." *Pennhurst State School and Hospital v. Halderman*, 451 U. S. 1, 17 (1981). Thus, the "legitimacy of Congress' power to legislate under the [S]pending [Clause] ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the 'contract.'" *Id*. (*quoting Steward Mach. Co. v. Davis*, 301 U.S. 548, 585–98 (1937)). Indeed, a "safeguard of our federalist system is the demand that Congress provide the States with a clear statement when imposing a condition on federal funding because 'legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Adams by and through Kasper v. School Board of St. Johns County*, 57 F.4th 791, 815 (11th Cir. 2022).

In this case, Plaintiffs' Title IX claim against GTAA boils down to GTAA signed a Hosting Agreement so that Georgia Tech could host a women's championship event in which one transgender female swimmer, Lia Thomas, participated. Again, GTAA had no say whatsoever in who was eligible to participate in the NCAA's event, and it was the NCAA who determined that Thomas was eligible to participate. Plaintiffs contend that the NCAA's Transgender Eligibility

Policies "are impermissible per se under Title IX."  GTAA certainly understands Plaintiffs' assertion; however, GTAA had no role in crafting the NCAA's Transgender Eligibility Policies or deciding who qualified for the NCAA's event. And as acknowledged by Plaintiffs, "Had Georgia Tech and GTAA officials not agreed to go along with implementation of the NCAA Transgender Eligibility Policies at the 2022 NCAA Championships, the NCAA would likely have withdrawn the event as multiple public announcements from the NCAA Board of Governors state."  Put more directly, on the one hand, Plaintiffs decry the fact that a single transgender student athlete was allowed to participate in the NCAA's event while contending that Title IX compelled GTAA to refuse to adhere to the NCAA's eligibility policies which would have deprived hundreds of female student athletes meaningful participation opportunities.

More importantly for purposes of this Motion, while Plaintiffs' arguments about what Title IX purportedly required are clear, as discussed below, the actual legal and regulatory environment on transgender participation in athletics was anything but in the lead up to the 2022 championship event. Put simply, under the Spending Clause's required "clear-statement rule," Thomas' use of locker room facilities and participation in the NCAA's championship event could only violate Title IX if the statute unambiguously required recipients to bar transgender women from participating in female athletics events. *Adams*, 57 F.4th 791 at 815.

18

How Title IX's prohibition on sex discrimination applies to transgender students and/or transgender student athletes is not clear from the text of the statute and was certainly not discussed in the legislative leadup to passage of Title IX. In this case, the 2022 NCAA Division I Women's Swimming and Diving Championships started on March 16, 2022. On June 22, 2021, following the Supreme Court's decision that Title VII's prohibition on "sex discrimination" extended to discrimination based on "sexual orientation" and "gender identity,"[16] the United States Department of Justice issued a Memorandum to federal agency partners that Title IX's prohibition on sex discrimination extended to sexual orientation and gender identity contending that "*Bostock's* reasoning applies with equal force" to Title IX.[17] That day, the Department of Education also published a Notice of Interpretation in the Federal Register "to clarify [its] enforcement authority over discrimination based on sexual orientation and discrimination based on gender identity under Title IX" in light of *Bostock*.[18] In that Notice, the Department

---

[16] *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681–83 (2020).

[17] U.S. Department of Justice, Civil Rights Division, Memorandum re: Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021), available at https://www.justice.gov/crt/page/file/1383026/dl.

[18] U.S. Dep't of Educ., Office for Civil Rights, Notice of Interpretation: Enforcement of Title IX with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County* (June 22, 2021), available at https://www.federalregister.gov/documents/2021/06/22/2021-13058/enforcement-of-title-ix-of-the-education-amendments-of-1972-with-respect-to-discrimination-based-on.

explained that, "[c]onsistent with the Supreme Court's ruling and analysis in *Bostock*, [it] interprets Title IX's prohibition on discrimination 'on the basis of sex' to encompass discrimination on the basis of sexual orientation and gender identity." That Notice also conveyed that this interpretation would guide the processing of complaints and conducting of investigations.

The next day, the Department of Education issued a "Dear Educator Letter" which noted that consistent with the Notice, "[the Department] will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive [f]ederal financial assistance from the Department."[19] That letter also included a fact sheet, jointly issued by the DOJ and by the Department of Education, which provided examples of the types of incidents the federal government "can investigate" under Title IX including:

> On her way to the girls' restroom, a transgender high school girl is stopped by the principal who bars her entry. The principal tells the student to use the boys' restroom or nurse's office because her school records identify her as "male."
>
> ***
>
> A transgender high school girl student joins her friends to try out for the girls' cheerleading team and the coach turns her away from tryouts

---

[19] U.S. Dep't of Educ., Office for Civil Rights, Dear Educator Letter: Title IX's 49th Anniversary (June 23, 2021), available at https://www.ed.gov/laws-and-policy/civil-rights-laws/resources-for-lgbtqi-students.

solely because she is transgender. When the student complains, the principal tells her "those are the district's policies.

The crux of Plaintiff's Title IX claim is that "Title IX protects women based on biological sex and the plain language of the statute does not authorize the reimagining of sex to mean something other than biological sex." In reality, though, the departments with the statutory authority to interpret Title IX[20] said otherwise and in the immediate lead up to the NCAA Championships.

And while Plaintiffs cite the 11th Circuit case in *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) in support of their interpretation of Title IX, that decision was only issued nine months **after** the championships and vacated an earlier 11th Circuit decision[21] which concluded, among other things, that "Title IX protects students from discrimination based on their transgender status."[22] *See also*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618–19 (4th Cir. 2020) (holding that the school board's policy prohibiting a transgender male student from using the boys' restroom violated both the Equal Protection Clause of the Fourteenth Amendment and Title IX).

---

[20] *See e.g.*, 20 U.S. Code § 1682.

[21] *Adams by and through Kasper v. School Board of St. Johns County*, 968 F.3d 1286 (11th Cir. 2020)

[22] *Id.* at 1304.

Nevertheless, the *en banc* opinion in Adams also supports Defendant's position. Namely, the 11th Circuit notes:

> Even if the term "sex," as used in Title IX, were unclear, we would still have to find for the School Board. This is because Congress passed Title IX pursuant to its authority under the Spending Clause. U.S. Const. art. I, § 8, cl. 1; *Davis*, 526 U.S. at 640, 119 S.Ct. 1661 ("[W]e have repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause."). And "if Congress intends to impose a condition on the grant of federal moneys [under its Spending Clause authority], it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Further, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Davis*, 526 U.S. at 640, 119 S.Ct. 1661.

Put simply, under the Spending Clause's clear-statement rule, recipients of federal funding must have clear and explicit notice of any obligations attached to that funding. Without such unambiguous notice, schools cannot be deemed in violation for interpreting the statute's prohibition on "sex discrimination" to include discrimination based on gender identity, especially when that interpretation is based on guidance from the departments statutorily tasked to interpret the statute and circuit court precedent.

In this case, Plaintiffs' Title IX claim against GTAA fails to meet the necessary threshold for liability under the Spending Clause's clear-statement rule. As noted in the preceding section, there is no clear statement that Title IX's athletics-related regulations extend to athletes at other institutions. Additionally, the

legislative and regulatory landscape surrounding Title IX's broader application to transgender student athletes was ambiguous at best in the lead-up to the 2022 NCAA Championships. The absence of definitive guidance and conflicting interpretations of Title IX underscores that federal funding recipients certainly lacked adequate notice that **hosting** an NCAA event where the NCAA determined the eligibility criteria could expose them to liability. Thus, without a clear and unequivocal statutory mandate, Title IX liability cannot attach to GTAA's actions in this case.

## IV.    Plaintiffs' Constitutional Claims Must Be Dismissed

In Counts III and IV, Plaintiffs allege that GTAA has violated the Equal Protection Clause of the Fourteenth Amendment by (1) creating an unfair competitive landscape that disadvantaged women, undermining their constitutional rights to equal treatment under the law and (2) undermined the female athletes' constitutional rights to bodily privacy and brings claims pursuant to 42 U.S.C. § 1983.

However, GTAA is a private entity[23] and not a state actor. For that reason alone, these claims against GTAA must be dismissed. *Harvey v. Harvey*, 949 F.2d

---

[23] See ECF No. 94, Plaintiff's Corrected Second Amended Complaint for Damages, Declaratory, Equitable, and Class Relief and Demand for Jury Trial at § 84.

1127, 1130 (11th Cir.1992) ("Only in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes.").

Assuming for the sake of argument that GTAA could be considered a state actor as Plaintiffs allege, GTAA adopts by reference the Eleventh Amendment immunity arguments made by the State Defendants in their Motion to Dismiss. The Eleventh Amendment protects state entities from suits seeking monetary damages, and this immunity extends to entities that act as an arm of the state. In *Braswell v. Board of Regents of University System of Ga.*, 369 F. Supp. 2d 1371 (N.D. Ga. 2005), the court concluded that the athletic association in question, while structured similarly to GTAA, was entitled to Eleventh Amendment immunity because it existed solely to further the policies and goals of the state university and Board of Regents.

## V.    Conclusion

For the foregoing reasons, GTAA respectfully requests that this Court dismiss Plaintiffs' Corrected Second Amended Complaint in its entirety, with prejudice. The procedural and substantive deficiencies in Plaintiffs' claims—including the expiration of the applicable statute of limitations, failure to demonstrate Article III standing, and inability to establish Title IX or constitutional violations—underscore

that further amendment would be futile. Given these insurmountable defects, dismissal with prejudice is warranted to prevent further unwarranted litigation.

Dated: November 15, 2024          Respectfully submitted,

**SCHNEIDER EDUCATION AND EMPLOYMENT LAW PLLC**

*/s/ Scott D. Schneider*
Scott D. Schneider*
4301 W. William Cannon Drive,
Suite B-150, PMB 105,
Austin, Texas 78749

**ROBBINS ALLOY BELINFANTE LITTLEFIELD, LLC**

Josh Belinfante          047399
Vincent R. Russo        242628
Edward A. Bedard       926148
Javier Pico Prats         664717
Anna Edmondson       289667
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com
    aedmondson@robbinsfirm.com

**ATTORNEYS FOR DEFENDANT GTAA**

25

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that Defendant's Motion to Dismiss has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 14-pt Times New Roman font and type.

*/s/ Scott D. Schneider*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing GTAA'S Brief in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Scott D. Schneider*