EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RILEY GAINES, *et al.*,

                    *Plaintiffs*,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, *et al.*,

                   *Defendants*.

No. 1:24-cv-01109-MHC

## [PROPOSED] AMICUS CURIAE BRIEF OF THE NATIONAL WOMEN'S LAW CENTER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

<b>Page</b>

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT .........................................................................................4

I.     PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF................4

     A.     PLAINTIFFS (OTHER THAN TRACK ATHLETE A) LACK
           STANDING FOR INJUNCTIVE RELIEF FOR FUTURE
           COMPETITIONS BECAUSE THEY FAIL TO PLAUSIBLY
           ALLEGE A SUFFICIENTLY IMMINENT INJURY IN FACT. .......4

     B.     PLAINTIFF SLUSSER LACKS STANDING BECAUSE SHE
           FAILS TO PLAUSIBLY ALLEGE THAT HER INJURIES
           ARE TRACEABLE TO NCAA OR WILL BE REDRESSED
           BY AN INJUNCTION AGAINST ONLY NCAA.............................6

     C.     PLAINTIFFS LACK STANDING TO ALTER ATHLETIC
           RECORDS FOR ATHLETES OTHER THAN THOSE OF
           GAINES, GYORGY, AND TRACK ATHLETE A...........................8

II.    TRACK ATHLETE A AND MS. SLUSSER'S CLAIMS MUST BE
     DISMISSED BECAUSE THIS COURT LACKS JURISDICTION
     OVER INDISPENSABLE PARTIES. ...........................................9

     A.     MS. FLEMING AND MS. SCHREINER ARE REQUIRED
           PARTIES FOR MS. SLUSSER AND TRACK ATHLETE A'S
           CLAIMS. ............................................................................9

     B.     MS. FLEMING AND MS. SCHREINER CANNOT BE
           JOINED IN THIS ACTION...............................................10

     C.     MS. SLUSSER AND TRACK ATHLETE A'S CLAIMS
           CANNOT CONTINUE IN MS. FLEMING AND MS.
           SCHREINER'S ABSENCE.................................................11

III.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A
     CLAIM................................................................................12

     A.     PLAINTIFFS FAIL TO ALLEGE COGNIZABLE TITLE IX
           CLAIMS FOR DENIAL OF EQUAL ATHLETIC
           OPPORTUNITY. ...............................................................13

i

# TABLE OF CONTENTS
(continued)

**Page**

1. PLAINTIFFS FAIL TO ALLEGE COGNIZABLE TITLE IX CLAIMS FOR DENIAL OF EQUAL ATHLETIC OPPORTUNITY. ...................................................14

2. PLAINTIFFS HAVE NOT ALLEGED COGNIZABLE CLAIMS OF UNEQUAL ATHLETIC OPPORTUNITY UNDER THE DEPARTMENT OF EDUCATION'S 1979 PI. ...................................................16

B. THE EQUAL PROTECTION CLAUSE DOES NOT PROHIBIT TRANSGENDER WOMEN FROM PARTICIPATING ON WOMEN'S TEAMS. ...................................23

C. PLAINTIFFS DO NOT HAVE A FUNDAMENTAL RIGHT TO EXCLUDE TRANSGENDER WOMEN FROM WOMEN'S FACILITIES. ...................................24

CONCLUSION ...................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
75 F.4th 760 (7th Cir. 2023) ...................................................................13

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.,*
57 F.4th 791 (11th Cir. 2022) .........................................................13, 25

*B.P.J. by Jackson v. W. Va. State Bd. of Educ.,*
98 F.4th 542 (4th Cir. 2024) ...........................................................13, 16

*Banks v. Sec'y, Dep't of Health & Hum. Servs.,*
38 F.4th 86 (11th Cir. 2022) ....................................................................5

*Bednar v. Neb. Sch. Activities Ass'n,*
531 F.2d 922 (8th Cir. 1976) .................................................................24

*Berndsen v. N.D. Univ. Sys.,*
7 F.4th 782 (8th Cir. 2021) ....................................................................17

*Biediger v. Quinnipiac Univ.,*
691 F.3d 85 (2d Cir. 2012) .............................................................17, 19

*Brooks v. State Coll. Area Sch. Dist.,*
643 F. Supp. 3d 499 (M.D. Pa. 2022)....................................................17

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)..................................................................................6

*Cooley v. First Data Merch. Servs.,*
No. 19 Civ. 1185, 2020 WL 13526633 (N.D. Ga. Feb. 7, 2020) ........10

*D.M. by Xiong v. Minn. State High Sch. League,*
917 F.3d 994 (8th Cir. 2019) .................................................................24

*Daniels v. Sch. Bd. of Brevard Cnty. Fla.,*
985 F. Supp. 1458 (M.D. Fla. 1997)......................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Delta Med. Sys., Inc. v. Dre Health Corp.*,
  No. 21 Civ. 1687, 2021 WL 6752169 (N.D. Ga. Nov. 8, 2021) .......................10

*Doe by & through Doe v. Boyertown Area Sch. Dist.*,
  897 F.3d 518 (3d Cir. 2018) ............................................................13, 23, 24, 25

*Force by Force v. Pierce City R-VI Sch. Dist.*,
  570 F. Supp. 1020 (W.D. Mo. 1983) .................................................................15

*Fortner v. Thomas*,
  983 F.2d 1024 (11th Cir. 1993) .........................................................................25

*Gordon v. Jordan Sch. Dist.*,
  No. 21-4044, 2023 WL 34105 (10th Cir. Jan. 4, 2023) ....................................23

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) .............................................................................13

*Haffer v. Temple Univ. of the Com. Sys. of Higher Educ.*,
  678 F. Supp. 517 (E.D. Pa. 1987)......................................................................24

*Hecox v. Little*,
  104 F.4th 1061 (9th Cir. 2023) ..........................................................................13

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020) ................................................................20

*Hoover v. Meiklejohn*,
  430 F. Supp. 164 (D. Colo. 1977)......................................................................23

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ...........................................................................8

*Kisor v. Wilkie*,
  588 U.S. 558 (2019)...........................................................................................17

*Lewis v. Governor of Ala.*,
  944 F.3d 1287 (11th Cir. 2019) ...........................................................................8

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) ........................................................................14

*McCormick Ex. Rel. v. Sch. Dist. Of Mamaroneck*,
  370 F. 3d 275 (2d. Cir. 2004) ..............................................................20

*Mitchell v. Stewart*,
  608 F. App'x 730 (11th Cir. 2015) .......................................................25

*Nolen v. Fairshare Vacation Owners Ass'n*,
  No. 22-11128, 2023 WL 5622595 (11th Cir. Aug. 31, 2023) ..............9

*Ollier v. Sweetwater Union High Sch. Dist.*,
  858 F. Supp. 2d 1093 (S.D. Cal. 2012) ...............................................22

*Padgett v. Donald*,
  401 F.3d 1273 (11th Cir. 2005) ...........................................................25

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ..............................................13, 23, 24

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) .............................................................4

*Quinn v. Powell*,
  No. 21 Civ. 3163, 2024 WL 1395153 (N.D. Ga. Mar. 31, 2024) .......11

*Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*,
  No. 20 Civ. 201, 2021 WL 1617206 (D. Conn. Apr. 25, 2021)......6, 19

*Soule v. Conn. Ass'n of Sch., Inc.*,
  90 F.4th 34 (2d Cir. 2023) ..................................................................10

*Soule v. Conn. Ass'n of Schs.*,
  No. 3:20-CV-00201(RNC), 2024 WL 4680533 (D. Conn. Nov. 5,
  2024) ......................................................................................................2

*Steusloff v. Finelli*,
  No. 23 Civ. 207, 2024 WL 470251 (N.D. Ga. Jan. 2, 2024)...............12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).............................................................................5

*Tennessee v. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2024) ....................................................13, 16

*Tick v. Cohen*,
   787 F.2d 1490 (11th Cir. 1986) ............................................10, 11, 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................4

*Wymbs v. Republican State Exec. Comm. of Fla.*,
   719 F.2d 1072 (11th Cir. 1983) ..........................................................9

*Yellow Springs Exempted Vill. Sch. Dist. Bd. of Educ. v. Ohio High
   Sch. Athletic Ass'n*,
   647 F.2d 651 (6th Cir. 1981) ............................................................15

## Statutes

20 U.S.C. §§ 1681–1688.................................................................................2

28 U.S.C. § 1391..........................................................................................11

Cal. Ed. Code § 66270 ...................................................................................7

Ga. Code Ann. § 9-11-4(f)(2) ...................................................................7, 11

Pub. L. 93-380, Title VIII, Sec. 844, 88 Stat. 612 (1974) ........................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

34 C.F.R.
    § 106.33....................................................................................................23
    § 106.41(a) ............................................................................................14
    § 106.41(b) ......................................................................................14, 15
    § 106.41(c) ................................................................................15, 16, 17
    § 106.41(c)(1) ....................................................................................17, 19
    § 106.41(c)(2)–(10)...........................................................................17, 18
    § 106.41(c)(7) ........................................................................................22

44 Fed. Reg. 71, 413 ...........................................................................*passim*

Fed. R. Civ. P.
    4(k)(1)(B)..........................................................................................7, 11
    12(b)(6) .....................................................................................................1
    19..........................................................................................................1, 9
    19(a)(1) ...................................................................................................10
    19(a)(1)(B)(i) ...........................................................................................9
    19(b)........................................................................................................11

U.S. Const. amend. XIV .......................................................................*passim*

7 Wright, Miller & Kane,
    *Federal Prac. & Proc.* § 1609 (3d ed. 2016) ........................................9

**Articles**

Christina Hall, *Trans male fencer Bobbie Hirsch is 'making history' at Wayne State University*, Detroit Free Press (Mar. 28, 2023)....................................21

Mike Freeman, *The pool was safety to transgender swimmer Schuyler Bailar. He wants it that way for others*, USA Today (Mar. 29, 2024), https://www.usatoday.com/story/sports/2024/03/29/schuyler-bailar-trans-swimmer-athlete-harvard/72295645007/............................................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*NCAA Sports Sponsorship and Participation Rates Database*, NCAA,
(https://www.ncaa.org/sports/2018/10/10/ncaa-sports-sponsorship-and-
participation-rates-database.aspx [https://perma.cc/MP32-497G] (last visited
July 24, 2024)...........................................................................................................5

# INTRODUCTION

Plaintiffs are cisgender women who believe that women who are transgender (whom Plaintiffs call "males") should be prohibited from participating in women's sports. Plaintiffs' Corrected Second Amended Complaint ("SAC") [Doc. 94] seeks nationwide relief banning transgender women from competing in all future National Collegiate Athletic Association ("NCAA") events, excluding them from women's locker room, shower, and restroom facilities, invalidating all their NCAA records, and requiring sex verification testing by the NCAA. SAC at 199-201.

Defendants' motions to dismiss the SAC should be granted. First, the SAC should be dismissed in part for lack of jurisdiction because Plaintiffs (a) fail to allege that any Plaintiff (except Track Athlete A) has standing to seek injunctive relief for future competitions; (b) the newly added plaintiff, Brooke Slusser, fails to allege an injury with respect to competing alongside a transgender teammate that is traceable to NCAA or that would be redressable by an injunction against NCAA; and (c) only three Plaintiffs have standing to seek alteration of records.

Second, Ms. Slusser's and Track Athlete A's claims should be dismissed or transferred under Rule 19 because the transgender women they seek to exclude from NCAA sports are indispensable parties who cannot be joined in this jurisdiction.

Third, and most fundamentally, the SAC should be dismissed under Rule 12(b)(6) for failing to state a claim. Plaintiffs' legal theories reflect a profound

misunderstanding of both Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX") and the Fourteenth Amendment. Some circuits have disagreed about whether Title IX and the Fourteenth Amendment *require* that transgender women be allowed to participate on women's teams and use women's locker room facilities, but no circuit has ever held—as Plaintiffs claim—that Title IX and the Fourteenth Amendment *prohibit* transgender women from doing so. Plaintiffs' unprecedented arguments are meritless and should be dismissed.[1]

## BACKGROUND

Transgender women have been competing on sports teams alongside cisgender women for decades, in accordance with the regulations of sporting organizations and many state antidiscrimination laws. In 2010, the NCAA adopted a policy allowing transgender women to participate in women's sports after one year of gender-affirming hormone therapy. SAC App. C at 2. Since then, a handful of transgender women have participated in NCAA sports. SAC ¶¶ 239, 633, 705–09 (identifying only six presumed transgender women NCAA athletes in SAC).

At the March 2022 NCAA swimming and diving championships held at Georgia Tech, Lia Thomas won first place in the women's 500-yard freestyle

---

[1] For the first time ever, a district court recently denied a motion to dismiss similar claims in *Soule v. Conn. Ass'n of Schs.*, No. 3:20-CV-00201(RNC), 2024 WL 4680533, at *4 (D. Conn. Nov. 5, 2024). That decision contains critical errors and will be appealed.

swimming, becoming the only transgender woman to win an NCAA Division I title. *Id.* ¶ 563. At the same competition, she placed eighth out of eight in the women's 100-yard freestyle and tied for fifth place in the women's 200-yard freestyle. *Id.* ¶¶ 577, 596. Ms. Thomas's success sparked a backlash from certain quarters, prompting some athletic organizations, including the NCAA, to adopt policies making it more difficult for transgender women to participate in women's sports. *See* SAC App. B at 2. Beginning August 1, 2023, transgender women were permitted to participate in NCAA sports only if they documented lowering their level of circulating testosterone beneath a certain threshold set by the governing body for a particular sport (e.g., below 5 nmol/L for USA Swimming). *See id.* at 20; *see also* SAC ¶ 336.

Plaintiffs allege that the NCAA's policies regarding the participation of transgender women violate Title IX and the Fourteenth Amendment. SAC ¶¶ 748–853. They seek to represent a nationwide class of "future, current, or past NCAA women's athletes who have competed or may compete against [transgender women] or who have shared or may share a locker room, shower, or restroom with a [transgender woman] by virtue of the NCAA's Transgender Eligibility Policies." *Id.* ¶ 728. Plaintiffs' requested relief includes: (i) an injunction preventing the NCAA and State Defendants from allowing women who are transgender to participate in women's sports; (ii) an injunction requiring the NCAA to invalidate the records of women who are transgender and "reassign" their titles to cisgender women; (iii) an

injunction prohibiting the NCAA from allowing transgender women to use women's locker room, shower, or restroom facilities; (iv) an injunction requiring "sex verification testing" by the NCAA; and (v) damages. *Id.* at 199–201.

## ARGUMENT

### I.    Plaintiffs Lack Standing for Injunctive Relief.

Virtually all of Plaintiffs' claims for injunctive relief should be dismissed for lack of standing. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). That remains true even when a plaintiff seeks to bring a class action. "It is not enough that a named plaintiff can establish a case or controversy between h[er]self and the defendant by virtue of having standing as to one of many claims [she] wishes to assert." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). "Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* (cleaned up).

### A.    Plaintiffs (Other Than Track Athlete A) Lack Standing for Injunctive Relief for Future Competitions Because They Fail to Plausibly Allege a Sufficiently Imminent Injury in Fact.

The SAC fails to allege that any Plaintiff (other than Track Athlete A) has standing to pursue injunctive relief regarding the participation of transgender women

in future NCAA sports, or, by extension, to seek injunctive relief on behalf of a class. To support standing for injunctive relief, an alleged injury must be "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). And an alleged future injury must either be "certainly impending," or there must be a "substantial risk that the harm will occur." *Id.* That is "a high standard"—"a 'perhaps' or 'maybe' chance that [plaintiff's] claimed harm will transpire" is not enough. *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 94–95 (11th Cir. 2022) (cleaned up).

Plaintiffs fail to meet that high standard. With the sole exception of Track Athlete A, no Plaintiff plausibly alleges a substantial chance of competing against a transgender woman at an NCAA event. Plaintiffs concede that only "a relatively small number" of women who are transgender have competed in NCAA events. SAC ¶ 5. The SAC identifies only six transgender women who have ever done so since 2010. *Id.* ¶¶ 239, 633, 705–09. If all six of those athletes had competed during the same year, they would still account for less than 0.003% of women athletes.[2]

The SAC alleges that some Plaintiffs are currently NCAA athletes who fear they may someday compete with a transgender woman. *See id.* ¶¶ 62–73. But none,

---

[2] *See NCAA Sports Sponsorship and Participation Rates Database*, NCAA (https://www.ncaa.org/sports/2018/10/10/ncaa-sports-sponsorship-and-participation-rates-database.aspx [https://perma.cc/MP32-497G] (last visited July 24, 2024).

other than Track Athlete A, can identify a non-hypothetical transgender woman in NCAA athletics against whom they would compete. *See id.* ¶ 629 (Roanoke Swimmers speculating about what would happen if a woman who is transgender seeks to compete on their team but failing to identify anyone likely to do so); *id.* ¶¶ 700–03 (Ms. Merryman speculating that transgender girls in high school may be recruited to play college volleyball); *id.* ¶ 704 (Mses. Erzen, Eades, and Fox speculating they will compete against hypothetical women who are transgender).

To find standing under these circumstances, the Court would have to accept a "speculative chain of possibilities": that a hypothetical, unknown transgender woman would (i) qualify to participate in an NCAA women's sport; (ii) participate in the same sport as Plaintiffs; (iii) participate in the same NCAA division as Plaintiffs; and (iv) outperform Plaintiffs. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Article III requires more. *See Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, No. 20 Civ. 201, 2021 WL 1617206, at *5 (D. Conn. Apr. 25, 2021), *vacated and remanded on other grounds* 90 F.4th 34 (2d Cir. 2023) (en banc) (rejecting similar chain of possibilities as supporting standing to enjoin enforcement of policy). Thus, except for Track Athlete A, Plaintiffs' claim for injunctive relief should be dismissed for lack of standing.

**B.    Plaintiff Slusser Lacks Standing Because She Fails to Plausibly Allege That Her Injuries Are Traceable to NCAA or Will Be Redressed By an Injunction Against Only NCAA.**

6

Plaintiff Slusser lacks standing to seek injunctive relief against the NCAA because she fails to plausibly allege traceability or redressability. Unlike other Plaintiffs, Ms. Slusser does not allege any injury with respect to interscholastic competition *against* transgender women. Ms. Slusser's alleged injuries all concern her participation on the same team *with* a transgender woman at San Jose State University ("SJSU"). *See* SAC ¶¶ 657-59 (allegations regarding sharing hotel room); *id.* 676-79 (allegations regarding practice injuries). But Ms. Slusser fails to identify any NCAA policy governing such *intra*-scholastic matters. As a result, Ms. Slusser has failed to plausibly allege that her injuries are traceable to NCAA. Moreover, even if Ms. Slusser had alleged traceability, she would still lack standing because her alleged injuries are not redressable by an injunction against NCAA—Ms. Slusser has failed to join SJSU as a party and SJSU's treatment of transgender students is independently governed by California law. *See* Cal. Ed. Code § 66270. This Court lacks personal jurisdiction over SJSU. The "bulge service" rule for joining third parties allows service only within "100 miles from where the summons was issued," Fed. R. Civ. P. 4(k)(1)(B), and Georgia's long-arm statute is limited to actions "affecting specific real property or status, or in any other proceeding in rem." Ga. Code Ann. § 9-11-4(f)(2).

Because this Court lacks the ability to provide injunctive relief redressing Ms.

Slusser's alleged injuries, her claims should be dismissed for lack of redressability.[3] *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (no redressability where third parties "are obliged under state law to continue" the challenged conduct "regardless of what a federal court might say in an action that does not involve them."); *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1302 (11th Cir. 2019) (en banc) (no redressability in challenge to state law preempting local minimum-wage ordinance because "plaintiffs haven't sued their employers, and (to state the obvious) the relief that plaintiffs request in this action wouldn't constrain those employers, who are 'not parties to the suit'").

### C.    Plaintiffs Lack Standing to Alter Athletic Records for Athletes Other Than Those of Gaines, Gyorgy, and Track Athlete A

Plaintiffs also lack standing to alter athletic records for any Plaintiff other than Ms. Gaines, Ms. Gyorgy, and Track Athlete A. Although the SAC seeks injunctive relief to "render invalid and reassign and revise" NCAA athletic records affected by competition with transgender women, *see* SAC at 200, only those three Plaintiffs allege they have any records in need of alteration. *See id.* ¶¶ 587, 605, 638. Therefore, the remaining Plaintiffs' claims for injunctive relief with respect to athletics records should be dismissed.

---

[3] Furthermore, Plaintiffs' proposed remedy of invalidating awards is not aligned with Ms. Slusser's interests as a member of the SJSU Women's Volleyball program and does not remedy her alleged injuries of playing and rooming with a transgender woman. *See* SAC at 200.

## II.    Track Athlete A and Ms. Slusser's Claims Must Be Dismissed Because This Court Lacks Jurisdiction Over Indispensable Parties.

Track Athlete A and Ms. Slusser's claims must also be severed and dismissed for failure to join indispensable parties under Federal Rule of Civil Procedure 19. "In light of the interests Rule 19 protects, courts . . . are responsible for applying it *sua sponte*." *Nolen v. Fairshare Vacation Owners Ass'n*, No. 22-11128, 2023 WL 5622595, at *13 (11th Cir. Aug. 31, 2023) (Tjoflat, J., concurring) (emphasis in original); *accord Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1079 n.22 (11th Cir. 1983); 7 Wright, Miller & Kane, *Federal Prac. & Proc.* § 1609 (3d ed. 2016). Ms. Slusser and Track Athlete A seek to exclude two specific individuals—Blaire Fleming and Sadie Schreiner—from participating in women's sports. SAC ¶¶ 633–38. Because Fleming and Schreiner are required parties and joinder is not feasible because the Court lacks personal jurisdiction and venue, Track Athlete A and Slusser's claims must be severed and dismissed.

### A.    Ms. Fleming and Ms. Schreiner Are Required Parties for Ms. Slusser and Track Athlete A's Claims.

Ms. Fleming and Ms. Schreiner are required parties under Rule 19(a)(1)(B)(i) because they have an interest in the action, and resolving the action in their absence may "as a practical matter impair or impede [their] ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B)(i). First, the SAC seeks to bar the NCAA from allowing presumed transgender women, including Ms. Fleming and Ms. Schreiner

specifically, to participate on women's sports teams. SAC ¶ 630. Second, Plaintiffs seek to invalidate and reassign all awards won by Ms. Fleming and Ms. Schreiner while competing in a women's event. *See id.* at 200. Just as Plaintiffs have an interest in altering their athletic records, Ms. Schreiner and other transgender athletes "have an ongoing interest in litigating *against* any alteration of their public athletic records," *See Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 49 (2d Cir. 2023) (en banc). Proceeding in their absence impairs those interests. *See Delta Med. Sys., Inc. v. Dre Health Corp.*, No. 21 Civ. 1687, 2021 WL 6752169, at *4 (N.D. Ga. Nov. 8, 2021).

### B. Ms. Fleming and Ms. Schreiner Cannot Be Joined in this Action.

Joinder is not feasible when a court lacks personal jurisdiction over a non-party or venue is not proper. *See* Fed. R. Civ. P. 19(a)(1); *Tick v. Cohen*, 787 F.2d 1490, 1493–94 (11th Cir. 1986) ("Limitations on service of process, subject matter jurisdiction, and venue . . . may bar joinder in some cases."); *Cooley v. First Data Merch. Servs.*, No. 19 Civ. 1185, 2020 WL 13526633, at *3 (N.D. Ga. Feb. 7, 2020) (joinder not possible absent personal jurisdiction).

Joining Ms. Fleming and Ms. Schreiner is not feasible here. First, they are not "subject to service of process" of the Court because they reside in San Jose, California, and Rochester, New York, respectively. As noted above, the "bulge service" rule for joining third parties allows service only within "100 miles from

10

where the summons was issued," Fed. R. Civ. P. 4(k)(1)(B), and Georgia's long-arm statute is limited to Georgia and actions "affecting specific real property or status, or in any other proceeding in rem," Ga. Code Ann. § 9-11-4(f)(2). Moreover, even if personal jurisdiction were not a barrier, the SAC fails to allege facts establishing venue for Ms. Slusser or Track Athlete A's claims in this district. *See* 28 U.S.C. § 1391. Accordingly, Ms. Fleming and Ms. Schreiner cannot be joined.

### C.    Ms. Slusser and Track Athlete A's Claims Cannot Continue in Ms. Fleming and Ms. Schreiner's Absence.

Where joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). This requires assessing (1) the risk of prejudice to absent and existing parties; (2) available measures for avoiding such prejudice; (3) whether the court may render adequate judgment in the person's absence, and (4) the availability of an alternative forum if the matter is dismissed. *See Tick*, 787 F.2d at 1494 (setting forth factors). Here all factors favor dismissal.

First, a judgment rendered in Ms. Fleming and Ms. Schreiner's absence would prejudice their right to compete in NCAA sports and retain their records. *See Quinn v. Powell*, No. 21 Civ. 3163, 2024 WL 1395153, at *6–7 (N.D. Ga. Mar. 31, 2024).

Second and third, a judgment could not be tailored to reduce prejudice to Ms. Schreiner or Ms. Fleming while also providing Track Athlete A and Ms. Slusser the relief requested. *Tick*, 787 F.2d at 1495 (considering second and third factors

together). Any relief afforded to Ms. Slusser or Track Athlete A could not be tailored to lessen or avoid prejudice to Ms. Fleming or Ms. Schreiner because these Plaintiffs explicitly seek to bar Ms. Fleming and Ms. Schreiner from competing in the NCAA and nullify their athletic records. *See Steusloff v. Finelli*, No. 23 Civ. 207, 2024 WL 470251, at *7 (N.D. Ga. Jan. 2, 2024). Judgment rendered in their absence would be inadequate for similar reasons; it is "difficult to envision any conceivable way to fashion a meaningful judgment which will not affect the absent [non-party's] interests." *Tick*, 787 F.2d at 1495.

Finally, Ms. Slusser and Track Athlete A "would suffer minimal prejudice if the Court were to dismiss [their claims] because" neither plaintiff has claims against the Georgia State Defendants, and the Northern District of California and Western District of New York are "alternative forum[s] that will allow all required parties to join." *Steusloff*, 2024 WL 470251, at *6. Accordingly, Ms. Slusser and Track Athlete A's claims should be severed and dismissed.

## III.    The Second Amended Complaint Fails To State a Claim.

Unlike other matters percolating through the courts, this case is not about whether Title IX or the Fourteenth Amendment require that women who are transgender be *allowed* to participate on women's sports teams or use women's facilities. In those cases, the Fourth, Seventh, and Ninth Circuits have (correctly) held that categorically excluding transgender people from restrooms or sports teams

consistent with their identity violates Title IX and/or the Fourteenth Amendment.[4]

By contrast, the Sixth and Eleventh Circuit have (erroneously) held that schools may

exclude transgender students in these contexts.[5]

This case, however, presents a different question: whether Title IX or the

Constitution requires Defendants to *exclude* such students. No circuit has ever

accepted these arguments, and multiple circuits have rejected them.[6] Because

Plaintiffs have failed to state a claim for relief under either Title IX or the Fourteenth

Amendment, their claims must be dismissed.

### A.    Plaintiffs Fail To Allege Cognizable Title IX Claims for Denial of Equal Athletic Opportunity.

Plaintiffs' Title IX claims (Counts I, II, III, V, VI) are based on a

fundamentally flawed premise: that, under Title IX, schools must always provide

---

[4] *See B.P.J. by Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), *petition for cert. filed* (July 16, 2024) (No. 24-44) (sports under Title IX); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (restrooms under Title IX and equal protection); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024) (restrooms and locker rooms under Title IX and equal protection); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2023), *petition for cert. filed* (July 15, 2024) (No. 24-38) (sports under equal protection).

[5] *See Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610–11 (6th Cir. 2024) (interpreting Title IX regulations on restrooms and athletics "[w]ithout deciding any substantive merits questions"); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (en banc) (restrooms under Title IX and equal protection).

[6] *See Tennessee*, 104 F.4th at 610–11 (restrooms & sports); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) (restrooms & locker rooms); *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018) (restrooms).

separate athletic teams and facilities for men and women as the exclusive means of providing equal athletic opportunity. *See e.g.*, SAC ¶¶ 748–810, 828–53. But sex-separated teams and facilities are only *one* way schools may seek to provide equal athletic opportunity; they are not required to fulfill Title IX's equal opportunity mandate. Thus, even assuming for argument's sake that inclusion of transgender women on women's teams and facilities could render these teams and facilities no longer "sex-separated"—an assumption that NWLC strongly disputes—Plaintiffs could not state a claim under Title IX.

### 1. Plaintiffs Fail To Allege Cognizable Title IX Claims for Denial of Equal Athletic Opportunity.

Far from mandating sex-separated teams, Title IX regulations in place since 1975 establish a "[g]eneral" rule *prohibiting* schools from "provid[ing] . . . athletics separately" on the basis of sex. 34 C.F.R. § 106.41(a).[7] Subsection (b) of the regulations carves out an exception to that general prohibition, stating "a recipient

---

[7] The SAC expressly relies on these regulations, and Plaintiffs have not contested their validity. SAC ¶¶ 22–25, 754, 758, 834–838. Instead of addressing athletics in Title IX's text, Congress directed the agency to promulgate "regulations implementing the provisions of Title IX" that "shall include with respect to intercollegiate athletic activities reasonable provisions considering the nature of particular sports." *See* Pub. L. 93-380, Title VIII, Sec. 844, 88 Stat. 612 (1974) ("Javits Amendment"). Under *Loper Bright Enterprises v. Raimondo*, the Javits Amendment requires continued deference to athletic regulations because the statute expressly "empower[s] an agency . . . to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'" 144 S. Ct. 2244, 2263 (2024).

*may* operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* § 106.41(b) (emphasis added). Subsection (b) mandates only that "where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited," members of the "excluded sex must be allowed to try-out" unless it is a contact sport. 34 C.F.R. § 106.41(b). Subsection (c) requires schools to provide "equal athletic opportunity," listing factors relevant to whether "equal athletic opportunity" is available, but not including sex separation as a factor for consideration. *Id.* § 106.41(c).

As numerous courts have acknowledged, these regulations are "purposely permissive and flexible on [allowing sex-separated teams], rather than mandatory." *Yellow Springs Exempted Vill. Sch. Dist. Bd. of Educ. v. Ohio High Sch. Athletic Ass'n*, 647 F.2d 651, 656 (6th Cir. 1981) (striking high school athletic association rule mandating sex separation for all teams as inconsistent with Title IX); *Force by Force v. Pierce City R-VI Sch. Dist.*, 570 F. Supp. 1020, 1024–25 (W.D. Mo. 1983) (holding that Title IX did not require sex separation for contact sports and "simply takes a neutral stand on the subject").

The Sixth Circuit recently applied these principles in the context of transgender athletes, holding that Title IX's athletics and restroom regulations

15

allowed schools to separate athletics and restrooms "in accordance with one's biological sex without accommodating gender identity." *Tennessee*, 104 F.4th at 610; *contra B.P.J.*, 98 F.4th at 564. But the Sixth Circuit also explained that the regulations "do not require" schools to do so. *Tennessee*, 104 F.4th 610. "Schools could, for example, choose coeducational teams and facilities. It follows that they could also separate programs and facilities by gender identity." *Id.* at 610–11. Plaintiffs' contrary assertions, SAC ¶¶ 759–61, 839–41, conflict with the plain text of the regulations and should be rejected.

### 2. Plaintiffs Have Not Alleged Cognizable Claims of Unequal Athletic Opportunity Under the Department of Education's 1979 PI.

Plaintiffs assert "Title IX requires sex-separation *from men* where women have less opportunity than men without it," SAC ¶¶ 759, 839. But the term "equal athletic opportunity" in 34 C.F.R. § 106.41(c) is not a free-floating concept. The elements of such a claim are detailed in the Department of Education's controlling "policy interpretation," originally issued in 1979. *See* Title IX of the Education Amendments of 1972: A Policy Interpretation (the "1979 PI"), 44 Fed. Reg. 71, 413 (Dec. 11, 1979) (Ex. A); *see also* SAC ¶¶ 24–29 (citing extensively to 1979 PI). The 1979 PI "explains the regulation so as to provide a framework within which the complaints can be resolved, and to provide institutions of higher education with additional guidance on the requirements for compliance with Title IX." 1979 PI §

16

II.[8] The 1979 PI divides the factors listed in 34 C.F.R. § 106.41(c) into claims for "effective accommodation" and claims for "equal treatment." *See Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 92 (2d Cir. 2012). Plaintiffs state no claims under either framework.[9]

**Effective Accommodation: Selection of Sports**. Plaintiffs have failed to allege a denial of effective accommodation under the 1979 PI's "Selection of Sports" provision, which is the only provision that mandates sex-separate teams—and only does so in narrow ways. *See Berndsen v. N.D. Univ. Sys.*, 7 F.4th 782, 789 (8th Cir. 2021) (discussing 1979 PI § VII.C.4)). The 1979 PI states, "[W]here an institution sponsors a team in a particular sport for members of one sex, it may be required *either* to permit the excluded sex to try out for the team *or* to sponsor a separate team for the previously excluded sex." 1979 PI § VII.C.4 (emphases added). Sex-separated teams in non-contact sports such as swimming and track and field are required only if, among other things, "[m]embers of the excluded sex do not possess sufficient skill to be selected for a single integrated team or to compete actively on such a team if selected." *Id.* § VII.C.4.b(3); *see Brooks v. State Coll. Area Sch. Dist.*,

---

[8] The SAC expressly relies on the 1979 PI. *See* SAC ¶¶ 24–29. As the agency's authoritative and longstanding interpretation of the athletic regulations, the 1979 PI is entitled to substantial deference. *See Kisor v. Wilkie*, 588 U.S. 558, 580 (2019).

[9] An "effective accommodation" claim implements the first factor: "Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." 34 C.F.R. § 106.41(c)(1). Equal treatment claims implement the remaining factors in 34 C.F.R. § 106.41(c)(2)–(10).

643 F. Supp. 3d 499, 508 (M.D. Pa. 2022) (concluding that "[m]erely allowing female athletes to show up for co-ed tryouts is not enough to satisfy Title IX," when "none of those slots were offered to interested females" after tryouts).

Thus, Plaintiffs cannot state a claim under the 1979 PI unless they can show they lack sufficient skill "to be selected for a single integrated team, or to compete actively" on a mixed team. 1979 PI § VII.C.4.b(3). Plaintiffs fail to allege a denial of effective accommodation under this standard. Any argument that Plaintiffs and other cisgender girls were unable to "be selected for" the team or to "compete actively" on a team with transgender women is belied by facts incorporated in the SAC itself. Ms. Gaines not only competed actively against Ms. Thomas but *tied* with her for fifth place behind four cisgender women. SAC ¶¶ 574–77.

**Effective Accommodation: Participation Opportunities**. Plaintiffs also fail to allege an "effective accommodation" claim based on lack of "participation opportunities." *See* 1979 PI § VII.C.5.a.[10] Under the policy, "participants" are defined based on number of players on a team, not by number of post-season competitions for which an athlete qualifies. *See Biediger*, 691 F.3d at 92–93 (quoting

---

[10] Under the 1979 PI, a covered entity must either provide (i) "participation opportunities for male and female students . . . in numbers substantially proportionate to their respective enrollments"; (ii) show "a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of [the underrepresented] sex"; or (iii) show "that the interests and abilities of the members of [the underrepresented] sex have been fully and effectively accommodated by the present program." *Id.*

1979 PI § VII.A.). As the district court in *Soule* recognized: "Plaintiffs do not claim that the policy operated to deprive them of opportunities to be team members, practice, or receive material institutional support. Therefore, they have not plausibly alleged a violation of 34 C.F.R. § 106.41(c)(1) based on participation opportunities." *Soule*, 2024 WL 4680533, at *11.

**Effective Accommodation: Competitive Schedules.** Plaintiffs have also failed to plausible allege denial of effective accommodation based on competitive schedules. Under that test, the 1979 PI examines, *inter alia*, "[w]hether the competitive schedules for men's and women's teams, on a program-wide basis, afford proportionally similar numbers of male and female athletes equivalently advanced competitive opportunities." 44 Fed. Reg. 71,413, 71,418 (1979). The district court in *Soule* erroneously reasoned that the participation of transgender girls plausibly ran afoul of this provision by "decreas[ing] the number of competitive opportunities available to female athletes." *Soule*, 2024 WL 4680533, at *11. But the "competitive schedules" provision of the 1979 PI refers only to whether advanced competitive opportunities are negatively affected by "the competitive schedules for men's and women's teams"—not by other factors. Thus, a school would violate the "competitive schedules" provision if the school scheduled men's teams according to a schedule that allowed them to participate in post-season competition, but scheduled women's teams in a way that made the team ineligible

for post-season competition. *See McCormick Ex. Rel. v. Sch. Dist. Of Mamaroneck*, 370 F. 3d 275, 301 (2d. Cir. 2004). Here, by contrast, Plaintiffs do not allege that there was any disparity in scheduling to give rise to such a claim.

Moreover, even if the "competitive schedules" provision of the 1979 PI applied to matters other than scheduling, and even assuming a transgender woman should be classified as "male" for this test, Plaintiffs have still failed to show that the participation of a few transgender women created a sufficient systemic imbalance so that "proportionally similar" opportunities were no longer available. 44 Fed. Reg. 71,413, 71,418 (1979). The sporadic success of a handful of transgender women does not come close to establishing the systemwide imbalance to support such a claim. *Cf. Hecox v. Little*, 479 F. Supp. 3d 930, 977 (D. Idaho 2020), *aff'd*, 79 F.4th 1009 (9th Cir. 2023) ("It is inapposite to compare the potential displacement allowing approximately half of the population (cisgender men) to compete with cisgender women, with any potential displacement one half of one percent of the population (transgender women) could cause cisgender women.").

**Equal Treatment**. Plaintiffs similarly fail to state a claim for denial of equal treatment. Under the 1979 PI, a school may be liable for denial of equal treatment "[i]f comparisons of program components reveal that treatment, benefits, or opportunities are not equivalent in kind, quality or availability," for "members of both sexes." *See* 1979 PI § VII.B.2.

Plaintiffs allege they have been denied equal treatment because the NCAA's policy "authorize[s] [people designated male at birth] to compete on women's teams where [people designated female at birth] lack an equal opportunity to access competitive athletic opportunities on men's teams." SAC ¶ 801. But the NCAA policy says the opposite: It allows transgender women to play on women's teams, and it also allows transgender men to play on men's teams. Transgender men may also receive gender-affirming testosterone, which provides them with the same average levels of circulating testosterone as cisgender men. SAC App. B at 35, 130 (explaining that transgender men with a medical exception for testosterone may compete on men's team but not women's team). The Court can take judicial notice that transgender men have already played on fencing and swimming teams.[11]

Plaintiffs also allege deprivation of equal treatment with respect to locker rooms. Title IX regulations state that in evaluating equal athletic opportunity, the enforcement agency will consider factors including the "[p]rovision of locker rooms, practice and competitive facilities." 34 C.F.R. § 106.41(c)(7). The 1979 PI further

---

[11] *See* Christina Hall, *Trans male fencer Bobbie Hirsch is 'making history' at Wayne State University*, Detroit Free Press (Mar. 28, 2023), https://wsuathletics.com/news/2023/3/28/trans-male-fencer-bobbie-hirsch-is-making-history-at-wayne-state-university.aspx [https://perma.cc/VCL7-XDEN]; Mike Freeman, *The pool was safety to transgender swimmer Schuyler Bailar. He wants it that way for others*, USA Today (Mar. 29, 2024), https://www.usatoday.com/story/sports/2024/03/29/schuyler-bailar-trans-swimmer-athlete-harvard/72295645007/ [https://perma.cc/X7TG-KLYV].

clarifies that claims related to locker rooms should be assessed by reference to the:

> "(1) Quality and availability of the facilities provided for practice and competitive events; (2) Exclusivity of use of facilities provided for practice and competitive events; (3) Availability of locker rooms; (4) Quality of locker rooms; (5) Maintenance of practice and competitive facilities; and (6) Preparation of facilities for practice and competitive events."

1979 PI § VII.B.3.f. For example, schools violate Title IX when "the quality, size and location of the locker rooms were better for male athletes than female athletes." *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1111 (S.D. Cal. 2012); *see Daniels v. Sch. Bd. of Brevard Cnty. Fla.*, 985 F. Supp. 1458, 1461 (M.D. Fla. 1997) (restrooms on boys' baseball field but not girls' softball field).

Here, Plaintiffs do not allege the quality and location of women's locker rooms are inferior to the men's. Instead, Plaintiffs allege that allowing women who are transgender to use women's locker rooms "depriv[es] women of equal opportunities to protect their bodily privacy." SAC ¶ 36; *see also id.* ¶ 490. But, as explained, that is wrong: just as transgender women can use the women's locker room, transgender men can use the men's. Nor have Plaintiffs alleged any other basis for a Title IX violation, such as hostile environment. "[T]he use of facilities for their intended purpose, without more, does not constitute an act of harassment simply because a person is transgender." *Parents for Priv.*, 949 F.3d at 1229.[12]

---

[12] Another regulation, 34 C.F.R. § 106.33, states that schools "may provide separate

22

**B.    The Equal Protection Clause Does Not Prohibit Transgender Women from Participating on Women's Teams.**

Plaintiffs similarly fail to state a claim (Counts III and VI) that allowing women who are transgender to participate on women's teams violates the Equal Protection Clause. As with Title IX, the Equal Protection Clause does not require sex-separated teams as the sole means of providing equal athletic opportunity. "[J]ust because the Constitution *permits* separate teams for girls and boys doesn't mean that the Constitution *requires* separate teams." *Gordon v. Jordan Sch. Dist.*, No. 21-4044, 2023 WL 34105, at *4 (10th Cir. Jan. 4, 2023) (emphasis in original). "[E]qual opportunity can be given . . . either by mixed-sex or comparable separate-sex teams," and "[a]ny of these actions would satisfy the equal protection requirements of the Constitution." *Hoover v. Meiklejohn*, 430 F. Supp. 164, 172 (D. Colo. 1977). Indeed, courts have long recognized that allowing girls to play on boys' teams, and vice versa, can be necessary to provide equal athletic opportunity under the Fourteenth Amendment.[13]

---

toilet, locker room, and shower facilities on the basis of sex." But the regulation "is permissive—Title IX does not require that an institution provide separate privacy facilities for the sexes." *Boyertown*, 897 F.3d at 533. "[J]ust because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity." *Parents for Priv.*, 949 F.3d at 1227.

[13] *See, e.g.*, *D.M. by Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1003 (8th Cir. 2019) (injunction allowing boys to compete on girls' competitive dance team); *Bednar v. Neb. Sch. Activities Ass'n*, 531 F.2d 922, 923 (8th Cir. 1976) (injunction allowing girl to compete on boys' cross-country team).

As with Title IX, the inability of one sex to actively compete on mixed teams may violate the Equal Protection Clause when it creates a systemic imbalance for an entire athletic program. *See Haffer v. Temple Univ. of the Com. Sys. of Higher Educ.*, 678 F. Supp. 517, 525 (E.D. Pa. 1987), *on reconsideration sub nom*. No. 80 Civ. 1362, 1988 WL 3845 (E.D. Pa. Jan. 19, 1988) (triable question of fact where women comprised half of enrollment but only one third of participants in athletics). But, as discussed above, Plaintiffs fail to allege systemic imbalance.

### C. Plaintiffs Do Not Have a Fundamental Right to Exclude Transgender Women from Women's Facilities.

Plaintiffs' Count IV—that substantive due process requires exclusion of transgender women from women's facilities—also fails to allege a constitutional violation, much less a "clearly established" right to overcome qualified immunity. Courts have consistently rejected "a privacy right to avoid any risk of being exposed briefly to opposite-sex nudity by sharing locker facilities with transgender students in public schools." *Parents for Priv.*, 949 F.3d at 1224; *accord Boyertown*, 897 F.3d at 531 ("[W]e decline to recognize such an expansive constitutional right to privacy—a right that would be violated by the presence of students who do not share the same birth sex. Moreover, no court has ever done so.").

To be sure, the Eleventh Circuit has recognized a "right to bodily privacy," but that fundamental right does not extend beyond situations "involving certain compelled nudity." *Padgett v. Donald*, 401 F.3d 1273, 1281 (11th Cir. 2005); *see*

24

also *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (prisoners); *Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) (arrestees). The SAC does not allege forced or involuntary nudity for a substantive due process claim within the scope of these precedents. To the contrary, it concedes that Plaintiffs were able to, and did, change privately in stalls or a separate storage area. *See* SAC ¶¶ 478, 485.[14]

Plaintiffs allege those alternatives were uncomfortable, inconvenient, and inadequate for them, but the solution is not to exclude transgender students. It is for school institutions to provide better privacy options "for any student who does not feel comfortable being in the confines of a communal restroom or locker room." *Boyertown*, 897 F.3d at 531.

## CONCLUSION

For all these reasons, the Second Amended Complaint should be dismissed.

Dated: November 15, 2024

Joshua A. Block*
Jennesa Calvo-Friedman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

/s/ Nneka Ewulonu
Nneka Ewulonu
Georgia Bar No. 373718
Cory Isaacson
Georgia Bar No. 983797
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
GEORGIA, INC.
P.O. Box 570738
Atlanta, GA 30357
Phone: (770) 303-8111

---

[14] *Adams* held schools can *choose* to protect a broader "privacy interest in using the bathroom away from the opposite sex." 57 F.4th at 804. But that does not mean they are constitutionally *required* to do so as a matter of substantive due process. The constitutional right to bodily privacy is limited to compelled nudity.

jcalvo-friedman@aclu.org

Patrick J. Hayden*
Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
phayden@cooley.com
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
Phone: (202) 776-2353
ereinhardt@cooley.com

newulonu@acluga.org
cisaacson@acluga.org

Kathleen R. Hartnett*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
zhelstrom@cooley.com

Celene Chen*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
celene.chen@cooley.com

*Counsel for Intervenor-Defendant*
*Pro hac vice*

26

## **RULE 7.1 CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

Pursuant to Local Rule 7.1D, I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

This 15th day of November, 2024.

*/s/ Nneka Ewulonu*
Nneka Ewulonu

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 15th day of November, 2024.

*/s/ Nneka Ewulonu*
Nneka Ewulonu
