IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RILEY GAINES, *et al*.<br><br>   *Plaintiffs*,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*,<br><br>   *Defendants*. | Civil Action No.<br>1:24-cv-1109-MHC |

**STATE DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

Josh Belinfante     047399
Vincent R. Russo    242628
Edward A. Bedard    926148
Javier Pico Prats   664717
Anna Edmondson      289667
ROBBINS ALLOY BELINFANTE
 LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
E: jbelinfante@robbinsfirm.com
   vrusso@robbinsfirm.com
   ebedard@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

*Counsel for State Defendants*

# TABLE OF CONTENTS

Introduction ................................................................................................... 1

Argument ...................................................................................................... 1

   I.    Plaintiffs lack standing to obtain relief against State Defendants. ............... 1

        A.    Plaintiffs lack standing to seek retrospective damages against State Defendants. ............................................................................................... 1

        B.    Plaintiffs with remaining eligibility lack standing to seek injunctive or declaratory relief against State Defendants. .................... 3

   II.    Plaintiffs' Title IX claim against State Defendants fails. ........................... 7

        A.    Plaintiffs fail to allege that State Defendants had sufficient notice. .................................................................................................... 8

        B.    State Defendants did not have "substantial control" over the 2022 National Championships. ........................................................... 9

   III.   Plaintiffs' equal-protection and right-to-bodily-privacy claims should be dismissed. ................................................................................ 10

        A.    Fourteenth Amendment Equal Protection. ...................................... 11

        B.    Plaintiffs misunderstand State Defendant's right-to-bodily-privacy argument. ............................................................................ 12

   IV.   Qualified immunity bars Plaintiffs' claims against the Individual State Defendants. ....................................................................................... 13

   V.    Plaintiffs' fictitious-defendant allegations must be dismissed. .................. 14

Conclusion ................................................................................................. 15

# INTRODUCTION

State Defendants file this Reply Brief in Support of Their Motion to Dismiss. As shown below, Plaintiffs fail to address various arguments raised in State Defendants' Motion to Dismiss (the "Motion") and have thus waived those arguments. Further, Plaintiffs fail to establish standing whether seeking either retrospective or prospective relief. Regardless of waiver and lack of standing, Plaintiffs: (1) fail to offer compelling legal support that State Defendants had notice and substantial control necessary to be liable under Title IX; (2) do not allege that a state action occurred, which is necessary for both their Fourteenth Amendment Right to Equal Protection and Right to Bodily Privacy claims; (3) fail to overcome their burden for State Defendants' qualified immunity defense; and (4) fail to argue that their fictitious-defendant allegations are not mere surplusage.

# ARGUMENT

I. **Plaintiffs lack standing to obtain relief against State Defendants.**

   A. **Plaintiffs lack standing to seek retrospective damages against State Defendants.**

Plaintiffs lack standing to sue for retrospective damages against State Defendants. As an initial matter, Plaintiffs suggest in their Response that "all Plaintiffs have standing to seek retrospective relief" against State Defendants. Doc. 108 at 55. But this is clearly not true, at least as to State Defendants. The only Plaintiffs who have suffered any identifiable injury in the past that could even

– 1 –

potentially be connected to State Defendants are those who competed in the 2022 Championships. None of the rest of the Plaintiffs' alleged past harms are remotely connected to State Defendants, having occurred in states far from Georgia. *See* Doc. 94 at ¶¶ 65, 67–73, 74, 77, 633, 699. Thus, the only ones who could satisfy Article III's injury-in-fact requirement as to State Defendants are those who participated in the 2022 Championships, *i.e.*, Ineligible Plaintiffs and Swimmer A.

But even Ineligible Plaintiffs and Swimmer A do not have standing to seek retrospective relief against State Defendants because the alleged injuries they suffered there are not traceable to State Defendants. *See* Doc. 100-1 at 11-13. Plaintiffs do not dispute that their injuries at the 2022 Championships were caused by the NCAA's policy and enforcement of that policy. *See* Doc. 94 at ¶¶ 537, 556, 763–64, 767, 848–49. Yet they still argue that these injuries are nevertheless traceable to State Defendants because "it was the [State] Defendants' Aquatic Center." Doc 108 at 59. But the mere fact that the Aquatic Center belongs to the Board of Regents is not enough to establish traceability. They must establish that the retrospective injuries they assert—having to compete against and share a locker room with a transgender athlete—are the responsibility of the State Defendants. *Baughcum v. Jackson*, 92 F.4th 1024, 1033 (11th Cir. 2024).[1] Rather, the "injuries at

---

[1] Plaintiffs attempt to use *Baughcum* in support of their own case by focusing on the probate judges at issue in that case. But State Defendants are far more like the

issue here" are directly traceable to the NCAA's policies and, maybe, indirectly traceable to the university Thomas attended, in its decision to certify Thomas as being in compliance with those policies. While State Defendants may (in their official capacities) own the building, they have no role in creating those policies.

### B. Plaintiffs with remaining eligibility lack standing to seek injunctive or declaratory relief against State Defendants.

Plaintiffs do not dispute that the Ineligible Plaintiffs lack standing to pursue any prospective relief. *See* Doc. 108 at 61-68. But those who do have remaining eligibility—SEC Plaintiffs, Division II & III Plaintiffs, and Swimmer A[2]—argue that they have suffered four alleged "injuries" that would support Article III standing to pursue prospective relief against State Defendants. These include: informational injuries, increased "safety risks," emotional/dignitary injuries, and competitive injuries. Plaintiffs' argument, however, suffers from numerous flaws.

**Informational injuries.** Plaintiffs' assertion of supposed "informational" injuries fails on multiple grounds. Doc. 108 at 64–65 (asserting injuries suffered when the "NCAA and its member institutions do not disclose which athletes

---

Commissioner, whose role in designing the forms at issue in that case was not related to the injury the plaintiffs were claiming.

[2] Slusser does not bring claims against State Defendants. Doc. 100-1 at 10 n.6. And while Track Athlete A appears to have credibly alleged that she will compete against a transgender track athlete in the near future, Plaintiffs do not dispute that such injuries cannot be traced to State Defendants nor redressed by any prospective relief against them. Doc. 108 at 62-63.

competing in women's sports are men."). To begin, Plaintiffs have not identified any statute that establishes a *right* to information about another athlete's sex. *See TransUnion v. Ramirez*, 594 U.S. 416, 441 (2021) (informational-injury cases "involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information").[3] But even if they had, they have not shown that the lack of that information has created any actual harm to them, *i.e.*, competing against a transgender athlete. *Id.* ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'") (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Their fears—though understandable—remain speculative and hypothetical.

In addition to its lack of concreteness, Plaintiffs' asserted informational injuries can be neither traced to nor redressed by State Defendants. Plaintiffs do not (cannot) plausibly allege that the information they believe they are entitled to—the biological sex of athletes they are competing against—is within State Defendants' possession. Each institution is responsible for its own student athletes—State Defendants may be just as in-the-dark as Plaintiffs when it comes to knowing whether there is a transgender athlete on another institution's team. And there is no

---

[3] Again, as a policy matter, State Defendants largely agree with Plaintiffs that female athletes *should* know whether they are competing against biologically male athletes. But this is not a Court of policy; it's a Court of law. And though it may be regrettable, there is no current law establishing a right to know the biological sex of another athlete, nor any plausible allegation that State Defendants caused any such injury.

– 4 –

allegation here that Georgia's universities have a transgender athlete competing on them, let alone that any of the Plaintiffs would compete against such an athlete. In short, Plaintiffs' novel informational-injury theory is insufficient to satisfy their obligations of Article III standing.

**Increased safety risks.** Plaintiffs also point to potential increased safety risks associated with playing against biologically male athletes. Even taking that as true, these increased safety risks only materialize if these athletes actually compete against a biologically male athlete. Plaintiffs who seek prospective relief against State Defendants have not plausibly alleged that there is a material risk that they will, in fact, compete against a male athlete. Any perceived risk is not traceable to State Defendants, as it is the NCAA who set the policies for biologically male athletes to be eligible to compete. Doc. 94 at ¶¶ 436, 442. Any increased safety risks Plaintiffs face is, therefore, not "sufficiently imminent and substantial" to support an Article III injury-in-fact, at least as to State Defendants. *Ramirez*, 594 U.S. at 415; *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020)

**Emotional/dignitary harm.** Of all of their theories, Plaintiffs' theory that they will suffer "emotional" or "dignitary" harms in "playing collegiate athletics under a policy that gives trans-identifying men license to take their opportunities … [e]ven if *no trans-identifying male competed against* any Plaintiff with remaining eligibility" is perhaps the most contrived. Doc. 108 at 65–66 (emphasis added).

– 5 –

Plaintiffs' theory of injury would essentially blow open the doors to the federal courts by allowing anyone who is simply disagrees with a given policy to file a lawsuit. *Id*. Plaintiffs cite to no authority for this novel theory, and the Court should quickly reject it.

And even if such a harm were cognizable, it would be neither traceable to nor redressable by an order against State Defendants. After all, it's the *NCAA's* policy which they claim is causing this harm. State Defendants did not write it. So it is hard to see how any "emotional" or "dignitary" harms suffered from having to play under the specter of such a policy can support a claim against State Defendants.

**Competitive harms.** Lastly, Plaintiffs insist that women face competitive harms of having to compete against male athletes. State Defendants do not dispute that this is true, that some NCAA athletes have suffered or have a certainly impending threat of suffering such injuries, nor that—assuming competitive injuries are cognizable under Article III—such athletes might have standing to pursue prospective relief. The problem is that none of the Plaintiffs with remaining eligibility[4] have demonstrated that there is a "sufficiently immediate and substantial" risk that they will suffer this competitive disadvantage. *Ramirez*, 594 U.S. at 415.

---

[4] The only exceptions to this are Track Athlete A and Slusser, who have competed with or against and certainly will compete with or against trans-identifying male athletes. Doc. 94 at ¶¶ 627, 633–36, 644. But Plaintiffs do not allege that either Track Athlete A's or Slusser's injuries are remotely traceable to nor redressable by State Defendants. *See* Doc. 108 at 62-65.

Unless Plaintiffs actually compete against a biologically male athlete, then every competition is what it has always been: women's sports. Without something more, this fear of competitive injuries remains wholly speculative for these athletes and they lack the injury-in-fact necessary to establish Article III standing.

## II. Plaintiffs' Title IX claim against State Defendants fails.

Plaintiffs begin their Title IX argument by mischaracterizing State Defendants' position. While State Defendants are generally sympathetic to Plaintiffs' views as a policy matter, it does not mean State Defendants agree that they violated Title IX, nor that State Defendants received notice of such a violation during the 2022 National Championships.

As an initial matter, Plaintiffs ignore State Defendants' argument that State Defendants cannot be liable for their Title IX claim, as they ceded authority to the NCAA, and thus were not responsible for excluding, denying, or subjecting Plaintiffs to discrimination. "Failure to oppose arguments in response to a motion to dismiss results in waiver." *Whitten on behalf of FleetCor Techs., Inc. v. Clarke*, 2020 WL 6867073, fn.5 (N.D. Ga. Oct. 21, 2020) (citing *Borges v. Bank of N.Y. Mellon, No. 1:13-cv-2623-LMM*, 2015 WL 11233231, at *4 (N.D. Ga. Dec. 15, 2015).

Plaintiffs' Response solely concentrates on the argument that State Defendants were deliberately indifferent to the NCAA's alleged violations of Title IX because State Defendants retained substantial control over the environment where the alleged

– 7 –

discrimination occurred. As set out in *Davis*, in order to be liable for deliberate indifference: (1) there must be a known act of sexual harassment; and (2) an entity must "exercises substantial control over both the harasser and the context in which the known harassment occurs." *See Davis*, 526 U.S. at 629-630. Plaintiffs fail to establish both elements here.

### A. Plaintiffs fail to allege that State Defendants had sufficient notice.

First, Plaintiffs fail to allege in the Complaint that State Defendants knew of the alleged sexual harassment. Plaintiffs argue, without any supporting law, that State Defendants had notice that their alleged deliberate indifference to men stealing women's opportunities violated Title IX. The notice Plaintiffs allege is a hypothetical concept that the NCAA would violate Title IX, and State Defendants should have proactively refused to comply with their requirements. As mentioned above and in State Defendants' Motion, there is national disagreement on the subject of the NCAA's violation of Title IX through their policy. Aside from that broad and conclusory argument, Plaintiffs ignore the fact that notice of a *specific incident* is required. As the Supreme Court in *Davis* explained, "the regulatory scheme surrounding Title IX has long provided funding recipients with notice that they may be liable for their *failure to respond* to the discriminatory acts of certain nonagents." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 643 (1999) (emphasis added).

– 8 –

Here, even ignoring the argument for whether the NCAA violated Title IX, Plaintiffs failed to allege in their Complaint that State Defendants received actual notice of the NCAA's alleged violations. As no notice existed, State Defendants were unable to respond.

### B. State Defendants did not have "substantial control" over the 2022 National Championships.

Plaintiffs' argument regarding Title IX further fails, as they do not establish that State Defendants had substantial control over the McAuley Aquatic Center during the 2022 National Championships. Substantial control requires that the alleged misconduct must have occurred "under" an "operation" of State Defendants. *Davis*, 526 U.S. at 630. As an example, the Supreme Court found in *Davis* that the Board of Education had substantial control over the harasser, as the Board had disciplinary control over its students. *Id*.

Here, such substantial control did not exist, as it is undisputed that the NCAA had control over the forum and the championships. Georgia Tech, and thus the State Defendants, are twice removed from control of the 2022 National Championships by Plaintiffs' own statements.

First, the SAC's addition of GTAA as a new defendant contained the argument that GTAA is a separate legal entity from Georgia Tech, and that Georgia Tech has "ceded control over its athletics programs to GTAA." (Doc. 94 ¶ 85.) Second, as plainly stated in the SAC, "Georgia Tech and GTAA gave the NCAA the privilege

– 9 –

to *operate and control* the McAuley Aquatic Center during the period of the Championships." (Doc. 94 ¶¶ 419-21.)[5]

As such, pursuant to Plaintiffs own allegations in the SAC, either GTAA is responsible for the athletic event, or the NCAA is solely responsible, as both the GTAA and Georgia tech ceded control to them for the 2022 National Championships. In no event did Georgia Tech have control over the event, much less the heightened substantial control required for a Title IX violation.

### III. Plaintiffs' equal-protection and right-to-bodily-privacy claims should be dismissed.

Plaintiffs combine their response to State Defendants' Motion regarding their Fourteenth Amendment Right to Equal Protection and Right to Bodily Privacy claims. As shown in State Defendants' Motion, Plaintiffs failed to allege in their Complaint that a "state action" occurred, which is required to prove for both claims that the "state is responsible for the specific conduct of which [the plaintiff] complains." *See* Doc 100-1 at 22 (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1357 (11th Cir. 1986)). *See also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982).

---

[5] To be clear, State Defendants are not claiming GTAA is liable under Plaintiffs' Title IX claim either. Merely, State Defendants are highlighting the discrepancies Plaintiffs have in their SAC and Response brief, as Plaintiffs allege that control was ceded to the NCAA by both GTAA and the State Defendants, yet conflictingly argue that State Defendants still retained substantial control. *Compare* Doc. 94 at ¶¶ 85, 419-21 *with* Doc. 108 at 32-34.

### A. Fourteenth Amendment Equal Protection.

For State Defendants to be liable for the acts of a private actor (the NCAA), the State Defendants must have either (1) coerced or compelled Thomas to use the same locker room as the Plaintiffs; or (2) exercised powers that are "traditionally the exclusive prerogative of the state." *See Blum*, 457 U.S. at 1004-1005; *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982).

Plaintiffs appear to solely rely on the second theory of recovery in their Response—that State Defendants exercised powers that are "traditionally the exclusive prerogative of the state." However, Plaintiffs' sole argument is that the Complaint contains allegations that State Defendants "knowingly invit[ed] the NCAA to conduct the 2022 NCAA Championships in a public facility … knowing that the NCAA intended to implement the NCAA [TEP]." Doc. 108 at 53.

Plaintiffs do not respond or oppose the arguments provided by State Defendants that "regulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function." *McHale v. Cornell University*, 620 F. Supp. 67, 70 (N.D.N.Y. 1985); *see also NCAA v. Alston*, 594 U.S. 69, 74–79 (2021) (discussing the history of intercollegiate sports). Further, Plaintiffs do not provide any case law of their own. Plaintiffs' mere conclusory arguments are insufficient. *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1300 (N.D. Ga. 2021) ("Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal,

'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'").

### B. Plaintiffs misunderstand State Defendant's right-to-bodily-privacy argument.

Plaintiffs' argument regarding their right-to-bodily-privacy claim similarly fails. Plaintiffs solely claim that the cases State Defendants cite rely on prisoners' privacy rights, and college athletes should have greater policy rights. *See* Doc. 108 at 51-52. Plaintiffs' sole citation is to an unbinding Ninth Circuit opinion in *Sepulveda v. Ramirez*, which states that "The prison cases are instructive because the constitutional rights of parolees are even more extensive than those of inmates." 967 F.2d 1413, 1416 (9th Cir. 1992). This is irrelevant to State Defendants' argument.

State Defendants' argument does not involve whether college athletes have more privacy rights than prison inmates. Instead, State Defendants solely argue that the only cases involving a similar claim required that the State maintain physical custody or control of the individuals. *See, e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993). Here, no state action occurred, as the allegations did not occur while the athletes were under State custody or control. *See* Doc. 100-1 at 25; *see also Fortner*, 983 F.2d at 1030. Plaintiffs fail to provide a response to that argument, and thus waive it. *See Whitten*, 2020 WL 6867073 at fn.5.

For the foregoing reasons, Plaintiffs' Fourteenth Amendment Right to Equal Protection and Right to Bodily Privacy claims should be dismissed.

## IV. Qualified immunity bars Plaintiffs' claims against the Individual State Defendants.

As the State Defendants raised the defense of qualified immunity in their Motion, the burden of persuasion has shifted to the Plaintiffs. *See* Doc. 100-1 at 19-22; *see also St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Qualified immunity shields government officials unless it is clear from "preexisting caselaw which is sufficiently similar in facts" mandates that "every objectively reasonable officer" would have "fair notice" that the alleged conduct violated a recognized right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

Plaintiffs argue that they do not need to cite sufficiently similar case law when "the words of a federal statute…[are] so clear and the conduct so bad th[en] case law is not needed to establish that the conduct cannot be lawful." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). The Court in *Vinyard* calls this the "obvious clarity" standard. *Id.* However, Plaintiffs fail to explain what courts have found to be a federal statute that is sufficiently clear for this exception. First, the Court makes clear that the "'obvious clarity' standard is often difficult to meet." *Id.* at 1355. Second, Plaintiffs fail to mention that the context and cases cited by the Court in *Vinyard* involved the use of excessive force in the Fourth Amendment context, which are inapplicable here. *See Id*. at fn. 18. For instance, in *Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir.2000), the obvious clarity standard was met

"when officer released police dog to attack plaintiff who was lying on the ground, did not pose a threat to officers or to anyone else, and was not attempting to flee or resist arrest." Similarly in *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir.2000), the Court concluded that the obvious clarity standard was met when "the officers used excessive force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way." These are clearly distinguishable cases that involved what a reasonable person would consider excessive force. The same does not hold true here.

Despite Plaintiffs' contradiction, caselaw on the issue remains unsettled. *See* Doc. 100-1 at fn. 13. Plaintiffs' sole citation for their assertion that Title IX is not "recently unsettled" is a 2024 district court case from Connecticut that was ruled *after* the 2022 National Championships. *Soule Connecticut Ass'n of Sch.*, No. 3:20-CV-00201(RNC), 2024 WL 4680533, at *11 (D. Conn. Nov. 5, 2024). Regardless, the slew of recent unsettled caselaw on the issue gives credence to the argument that the obvious clarity standard is inapplicable here. As such, Plaintiffs were required to provide caselaw with sufficiently similar facts to overcome their burden. *Willingham*, 321 F.3d at 1301. As Plaintiffs have failed to do so, qualified immunity bars the Ineligible Plaintiffs' damages claims.

### V. Plaintiffs' fictitious-defendant allegations must be dismissed.

Binding precedent also requires Plaintiffs' claims against fictitious defendants

John Does 27–50 to be dismissed. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Contrary to Plaintiffs' brief, fictitious-defendant pleading is not simply "disfavored," it is "not permitted in federal courts." *Id.* The *sole* exception to that rule recognized in the Eleventh Circuit—when the "description of the defendant is so specific as to be at the very worst, surplusage"—is not applicable here, where Plaintiffs have provided broad descriptions of State Defendants' unknown "agents or employees." *Id.* (quotations omitted); Doc. 94 ¶ 119; *see also Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020).

Plaintiffs' single citation to an out-of-district report and recommendation for a supposed "discovery" exception is unavailing. Doc. 108 at 79. As the Eleventh Circuit noted in *Vielma*, "our precedent has *never* permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity." 808 F. App'x at 880 (emphasis added). "Instead, our precedent has always required an unambiguous description of a defendant that enables service of process"—a description not present here. Accordingly, the Doe defendants must be dismissed.

## **CONCLUSION**

For the foregoing reasons, State Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' claims against them.[6]

---

[6] For the sake of clarity, Plaintiffs only assert claims against State Defendants in Counts I, III–IV, and VI. Counts II and V do not contain claims against State Defendants.

Respectfully submitted, this 24th day of January, 2025.

        */s/ Josh Belinfante*
        Josh Belinfante    047399
        Vincent R. Russo    242628
        Edward A. Bedard   926148
        Javier Pico Prats   664717
        Anna Edmondson   289667
        ROBBINS ALLOY BELINFANTE
         LITTLEFIELD, LLC
        500 14th St. NW
        Atlanta, GA 30318
        T: (678) 701-9381
        E: jbelinfante@robbinsfirm.com
           vrusso@robbinsfirm.com
           ebedard@robbinsfirm.com
           jpicoprats@robbinsfirm.com
           aedmondson@robbinsfirm.com

        *Counsel for State Defendants*

## **LOCAL RULE 7.1(D) CERTIFICATION**

I certify that this State Defendants' Brief in Support of Their Motion to Dismiss has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 14-pt Times New Roman font and type.

*/s/ Josh Belinfante*
Josh Belinfante