# EXHIBIT 1

25                                                                                    LC 49 2383S

Senate Bill 1

By: Senators Dolezal of the 27th, Kennedy of the 18th, Gooch of the 51st, Beach of the 21st,
Robertson of the 29th and others

**AS PASSED**

A BILL TO BE ENTITLED
AN ACT

1   To amend Title 20 of the Official Code of Georgia Annotated, relating to education, so as to
2   enact the "Riley Gaines Act of 2025"; to provide generally for competitively fair and safe
3   student participation in school and college sports; to provide for legislative findings and
4   intent; to promote fair and safe competition; to provide for equal athletic opportunities and
5   safety; to provide for specific designations of teams operated or sponsored by local school
6   systems, public schools, participating private schools, and postsecondary educational
7   institutions in this state; to prohibit males from participating in interscholastic and
8   intercollegiate competitions on teams designated as female; to prohibit females from
9   participating in competition on intercollegiate teams designated as male, subject to
10  exceptions; to provide for such exceptions; to provide for interscholastic coed team
11  designations; to provide for the use of student eligibility rules, standards, and classifications;
12  to provide for exceptions to general provisions; to require multiple occupancy restrooms and
13  changing areas and sleeping quarters to be designated for exclusive use by males or females;
14  to provide for reasonable accommodations; to provide for exceptions; to prohibit
15  postsecondary educational institutions that are covered entities from hosting or sponsoring
16  intercollegiate competitions that allow males to participate with teams designated as female
17  or use multiple occupancy restrooms or changing areas and sleeping quarters designated for
18  use by females; to prohibit such covered entities from awarding to males scholarships

LC 49 2383S

19  intended for female team members; to provide for policies, rules, and regulations; to provide

20  for investigation of complaints of noncompliance; to provide for sanctions; to provide for a

21  cause of action; to provide for definitions; to provide for statutory construction; to provide

22  for a short title; to provide for related matters; to repeal conflicting laws; and for other

23  purposes.


24          BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:


25                          **SECTION 1.**

26  This Act shall be known and may be cited as the "Riley Gaines Act of 2025."


27                          **SECTION 2.**

28  (a)  The General Assembly finds that:

29  (1)  There are inherent physical differences between males and females;

30  (2)  Decisions regarding the regulation of sports should be based on promoting and

31  preserving competitive fairness and protecting student safety;

32  (3)  Protecting student athletes from harm and promoting and preserving the competitive

33  fairness of sports are important state interests; and

34  (4)  Requiring the designation of separate, sex-specific athletic teams and sports is

35  necessary to protect student athletes from harm and to promote and preserve the

36  competitive fairness of sports.

37  (b)  It is the intent of the General Assembly that:

38  (1)  Student athletes have competitively fair and safe opportunities to participate and

39  succeed in sports; and

40  (2) Female student athletes have fair opportunities to demonstrate their strength, skills, and

41  athletic abilities and to obtain recognition, accolades, college scholarships, and the

42  numerous other long-term benefits that result from participating and competing in sports.

43                              **SECTION 3.**

44   Title 20 of the Official Code of Georgia Annotated, relating to education, is amended in

45   Part 14 of Article 6 of Chapter 2, relating to other educational programs under the "Quality

46   Basic Education Act," by revising Code Section 20-2-315, relating to gender discrimination

47   prohibited, authorized separate gender teams, equal athletic opportunity, physical education

48   classes, employee designated to monitor compliance, grievance procedures, and reporting

49   requirements, as follows:

50   "20-2-315.

51   (a)  This Code section shall be known and may be cited as the 'Riley Gaines Act.'

52   (b)  As used in this Code section, the term:

53   (1)  'Coed' means the inclusion of both males and females.

54   (2) 'Compete,' 'competitive,' or 'competition' means a contest, game, match, tournament,

55   or jamboree of teams in a sport.  Such term shall not include practices, exhibitions, or

56   scrimmages.

57   (3)  'Contact sport' means a sport the purpose or a substantial component of which

58   involves bodily contact.  Such term includes, but shall not be limited to, basketball,

59   boxing, football, ice hockey, lacrosse, martial arts, soccer, softball, rugby, volleyball, and

60   wrestling.

61   (4) 'Covered entity' means local school systems, public schools, and participating private

62   schools.

63   (5)  'Female' means an individual who has, had, will have, or, but for a developmental

64   or genetic anomaly or historical accident, would have the reproductive system capable

65   of producing human ovum.

66   (6)  'Male' means an individual who has, had, will have, or, but for a developmental or

67   genetic anomaly or historical accident, would have the reproductive system capable of

68   producing human sperm.

69    (7) 'Multiple occupancy restroom or changing area' means an area in a covered entity's
70    building that is designed or designated to be used by one or more individuals of the same
71    sex at the same time and in which one or more individuals may be in various stages of
72    undress in the presence of other individuals.  Such term includes, but shall not be limited
73    to:
74    (A)  Restrooms;
75    (B)  Locker rooms;
76    (C)  Changing rooms; and
77    (D)  Shower rooms.
78    (8) 'Participating private school' means a private school in this state which operates or
79    sponsors one or more teams that compete against one or more teams operated or
80    sponsored by a local school system or public school in this state or that participate in
81    competitions that are organized, sanctioned, or scheduled by an athletic association with
82    members that include public schools.
83    (9) 'Sex' means an individual's biological sex, either male or female. An individual's sex
84    can be observed or clinically verified at or before birth and in no case is an individual's
85    sex determined by stipulation or self-identification.
86    (10) 'Sleeping quarters' means a room or other limited access designated space within a
87    building or facility, such as a limited access designated space within a gymnasium,
88    cafeteria, or auditorium or other performance space, in which more than one individual
89    is housed overnight.
90    (11) 'Sport' means an organized activity involving skill and physical effort undertaken
91    by one or more teams according to established rules.  Such term includes each such
92    organized activity regardless of whether it is designated as a sport, an activity, or another
93    similar designation by an athletic association that meets the requirements of Code
94    Sections 20-2-316 through 20-2-316.3, 20-2-319, and 20-2-319.6.

95    (12) 'Student athlete' means a student enrolled at a covered entity who participates or is

96    eligible to participate on any sport or team.  A student who is permanently ineligible to

97    participate on a particular sport or team is not a student athlete for the purposes of such

98    sport or team.

99    (13) 'Team' means a single student or a group of students operated and sponsored by a

100   covered entity for the purpose of participating in a sport.

101   (a)(c)(1)  No student shall, on the basis of sex gender, be excluded from participation in,

102   be denied the benefits of, be treated differently from another student, or otherwise be

103   discriminated against in any interscholastic or intramural athletics offered sport operated

104   or sponsored by a local school system or a public school, and no local school system shall

105   provide any such athletics separately on such basis.

106   (b)(2)  A Notwithstanding the requirements of subsection (a) of this Code section, a local

107   school system or public school shall be authorized to may operate or sponsor separate

108   teams for members of each gender sex where selection for such teams is based upon

109   competitive skill, competitive fairness, student safety, or the activity sport involved is a

110   contact sport.  However, where a local school system operates or sponsors a team in a

111   particular sport for members of one gender but operates or sponsors no such team for

112   members of the other gender, and athletic opportunities for members of that gender in

113   that particular sport have previously been limited, members of the excluded gender must

114   be allowed to try out for the team offered unless the sport involved is a contact sport.

115   Nothing in this subsection shall be construed to limit the authority of a local school

116   system to operate or sponsor a single team for a contact sport that includes members of

117   both genders.  As used in this subsection, the term 'contact sport' includes boxing,

118   wrestling, rugby, ice hockey, football, basketball, and any other sport the purpose or

119   major activity of which involves bodily contact.

120   (d)(1)  For all interscholastic competitions, each covered entity shall designate each team

121   operated or sponsored by such covered entity as one of the following:

122        (A)  Male;

123        (B)  Female; or

124        (C)  Coed.

125        (2)  Males shall not be allowed to participate in any interscholastic competition on any

126        team that is designated as female.

127        (3)  Females shall not be allowed to participate in any interscholastic competition on any

128        team that is designated as male; provided, however, that females may be allowed to

129        participate in an interscholastic competition on a team that is designated as male if a

130        corresponding team designated for females is not offered or available for interscholastic

131        competitions.

132        (4)  Any student shall be allowed to participate in any interscholastic competition on a

133        team that is designated as coed.

134        (5)  Nothing in this subsection shall be construed to prohibit males from participating in

135        practices, exhibitions, or scrimmages with teams designated as female.

136        (6)  Nothing in this subsection shall be construed to authorize a covered entity or an

137        athletic association, as such term is defined in Code Section 20-2-316,  to verify or

138        confirm a student's sex through visual inspection of such student's external sex organs for

139        purposes of participation in competitions; provided, however, that this paragraph shall

140        not prohibit reliance on medical records or other standard school medical procedures to

141        verify or confirm a student's sex.

142        (c)(e)(1)     A local school system or public school which operates or sponsors

143        interscholastic or intramural ~~athletics~~ teams shall undertake all reasonable efforts to

144        provide equal athletic opportunity for members of both ~~genders~~ sexes.  In determining

145        whether equal opportunities are available, the following factors shall be considered:

146        (1)(A)     Whether  the  selection  of  sports  and  levels  of  competition  effectively

147        accommodate the interests and abilities of members of both ~~genders~~ sexes;

148        (2)(B)  The provision of equipment and supplies;

149    (3)(C)  Scheduling of games and practice time;

150    (4)(D)  Travel allowance;

151    (5)(E)  Opportunity to receive coaching and academic tutoring;

152    (6)(F)  Assignment and compensation of coaches and tutors;

153    (7)(G)  Provision of ~~locker rooms~~ multiple occupancy restroom or changing areas and

154    practice and competitive facilities;

155    (8)(H)  Provision of medical and training facilities and services; and

156    (9)(I)  Publicity.

157    (2)  Unequal aggregate expenditures for members of each ~~gender~~ sex or unequal

158    expenditures for male and female teams if a local school system or public school operates

159    or sponsors separate teams ~~will~~ shall not constitute noncompliance with this subsection~~,~~

160    ~~but;~~ provided, however, that the failure to provide essential funds for the basic operations

161    of teams for one ~~gender~~ sex may be considered in assessing equality of opportunity for

162    members of each ~~gender~~ sex.

163    (3) Nothing in Code Section 20-2-411 shall be construed to limit the authority of a local

164    school system or public school to expend school tax funds as authorized by Article VIII,

165    Section VI, Paragraph I(b) of the Constitution in order to comply with the requirements

166    of this Code section.

167    (d)(f)(1)  Each covered entity shall ~~A local school system may~~ provide separate ~~toilet,~~

168    ~~locker room, and shower facilities~~ multiple occupancy restrooms or changing areas and

169    sleeping quarters on the basis of ~~gender, but~~ sex, and such facilities shall be comparable

170    to such facilities provided for students of the other ~~gender~~ sex.

171    (2)(A)  No covered entity shall operate or sponsor one or more teams in any

172    interscholastic competition involving a local school system or public school that

173    permits a male to use any multiple occupancy restroom or changing area or sleeping

174    quarters designated for females in conjunction with such competition.

175    (B)  No covered entity shall operate or sponsor one or more teams in any interscholastic
176    competition involving a local school system or public school that permits a female to
177    use any multiple occupancy restroom or changing area or sleeping quarters designated
178    for males in conjunction with such competition.
179    (3)(A)  To ensure the privacy and safety of student athletes, each covered entity that
180    operates or sponsors one or more teams in any interscholastic competition involving a
181    local school system or public school shall, in conjunction with such competition:
182    (i)  Designate each multiple occupancy restroom or changing area and sleeping
183    quarters for exclusive use by males or for exclusive use by females; and
184    (ii)  Provide a reasonable accommodation to individuals who are unwilling or unable
185    to use a multiple occupancy restroom or changing area or sleeping quarters designated
186    for each such individual's sex.
187    (B)  A reasonable accommodation under this paragraph may include, but shall not be
188    limited to, allowing such individual to access a single occupancy restroom or changing
189    area or sleeping quarters.
190    (C)  A reasonable accommodation under this paragraph shall not include allowing such
191    individual to access a multiple or single occupancy restroom or changing area or
192    sleeping quarters that is designated for use by members of the other sex while members
193    of the other sex of the individual are present or may be present in such restroom or
194    changing area or sleeping quarters.
195    (4)  Nothing in this subsection shall be construed or applied to prohibit an individual from
196    entering a multiple occupancy restroom or changing area designated for use by
197    individuals of the opposite sex when he or she enters such area for one of the following
198    reasons:
199    (A)  For authorized custodial, maintenance, or inspection purposes;
200    (B)  To render emergency medical assistance;

LC 49 2383S

201    (C)   To address an ongoing emergency, including, but not limited to, a physical
202    altercation;

203    (D)   A minor child is accompanied by his or her parent or legal guardian who deems
204    such entry necessary for the child's safety, welfare, or assistance; or

205    (E)   The performance of official duties and responsibilities as authorized coaches and
206    trainers for purposes directly related to a competition or other official activity of a team,
207    including practice.

208    (5)(A)  Except as provided in subparagraph (B) of this paragraph, a covered entity that
209    sponsors or supervises an overnight trip in conjunction with a competition involving
210    public school students shall ensure that each public school student attending such
211    overnight trip either:

212    (i)  Shares sleeping quarters with a member or, if necessary, multiple members, of the
213    same sex; or

214    (ii)  Is provided single-occupancy sleeping quarters.

215    (B)   A public school student attending an overnight trip in conjunction with a
216    competition may share sleeping quarters with a member of the opposite sex if the
217    member of the opposite sex is a member of such student's immediate family.

218    ~~(e)~~(g)  This Code section ~~does~~ shall not prohibit the grouping of students in physical
219    education classes by ~~gender~~ sex.

220    ~~(f)~~(h)(1)  Subject to the provisions of paragraph (3) of this subsection, if a local school
221    system or public school sponsors ~~an athletic activity or~~ a sport at a particular school that
222    is similar to a sport for which an institution in the University System of Georgia offers
223    an athletic scholarship, it ~~must~~ shall sponsor the ~~athletic activity or~~ sport for which a
224    scholarship is offered at that school.  This paragraph ~~does~~ shall not affect academic
225    requirements for participation nor prevent the local school system or public school from
226    sponsoring activities in addition to those for which scholarships are provided.

227    (2)  Two ~~athletic activities or~~ sports that are similar may be offered simultaneously.

228    (3)  If a local school system or public school demonstrates by a bona fide survey of

229    eligible students at the school, which is approved by the Department of Education for

230    compliance with generally accepted opinion survey principles regarding neutral wording

231    and other matters, that there is insufficient interest among students at the school to field

232    a team described in paragraph (1) of this subsection, then the local school system or

233    public school shall not be required to sponsor such ~~athletic activity or~~ sport at that school.

234    The exemption provided for by this paragraph shall be valid for 24 months following the

235    date when the most recent bona fide student survey demonstrating a lack of student

236    interest was completed, unless a new bona fide student survey is conducted within the 24

237    month period that demonstrates sufficient interest to field a team.  If such a new bona fide

238    student survey demonstrates such sufficient interest, then the local school system or

239    public school shall ~~must~~ comply with paragraph (1) of this subsection during the ~~local~~

240    ~~school system's~~ next ~~fiscal~~ school year and until such time as a new bona fide student

241    survey demonstrates insufficient interest to field a team described in paragraph (1) of this

242    subsection.  A local school system or public school shall conduct the bona fide student

243    survey described in this paragraph regarding interest in a team described in paragraph (1)

244    of this subsection upon the request of nine students at the school, but no more frequently

245    than once every 12 months.

246    (4)  Nothing in this subsection shall be construed to preclude the application of generally

247    applicable policies or rules regarding the cancellation of ~~an athletic activity or~~ a sport due

248    to lack of student participation in scheduled practices or ~~contests~~ competitions.

249    ~~(g)~~(i)  Each ~~local school system~~ covered entity shall designate at least one employee to

250    coordinate its efforts to comply with and carry out its responsibilities under this Code

251    section, including the investigation of any complaint communicated to such ~~local school~~

252    ~~system~~ covered entity alleging its noncompliance with this Code section.  The employee

253    designated under this subsection may be the same ~~person~~ individual required to be

254    designated under 34 C.F.R. Section 106.8, as it existed on June 30, 2024.  Each covered

255  entity ~~The local school system annually~~ shall <u>annually</u> notify all its students of the name,

256  office address, and office telephone number of the employee or employees appointed

257  pursuant to this subsection.  Such notification may be included in a student ~~handbook~~ <u>code</u>

258  <u>of conduct</u> distributed pursuant to Code Section 20-2-736.

259  ~~(h)~~<u>(j)</u>  Each local ~~school system~~ <u>covered entity</u> shall adopt and publish grievance

260  procedures providing for prompt and equitable resolution of written student complaints,

261  including complaints brought by a parent or guardian on behalf of his or her minor child

262  who is a student, alleging any action which would be a violation of this Code section.  Such

263  procedures shall require that:

264      (1)<u>(A)  Except as provided in subparagraph (B) of this paragraph, the</u> ~~The~~ employee

265      designated under subsection ~~(g)~~ <u>(i)</u> of this Code section shall render his or her decision

266      in writing no later than 30 days after receipt of the complaint, and such decision shall

267      set forth the essential facts and rationale for the decision;

268      <u>(B)(i)  A student who is aggrieved by an alleged violation or anticipated violation of</u>

269      <u>this Code section or his or her parent or guardian shall have a right to file a complaint</u>

270      <u>with the employee designated in subsection (i) of this Code section with a request for</u>

271      <u>an expedited preliminary determination as to whether a violation of this Code section</u>

272      <u>exists or is about to occur.</u>

273      <u>(ii)  If an alleged violation or anticipated violation of this Code section is</u>

274      <u>preliminarily determined by the employee designated in subsection (i) of this Code</u>

275      <u>section to have occurred or is reasonably likely to occur, such designated employee</u>

276      <u>shall issue a preliminary decision immediately and shall be authorized to direct in</u>

277      <u>writing that the alleged violation or anticipated violation cease and desist pending a</u>

278      <u>final resolution of such complaint.</u>

279      <u>(iii)  If a complaint with a request for an expedited preliminary determination brought</u>

280      <u>pursuant to this subparagraph is rejected in whole or in part by the employee</u>

281      <u>designated in subsection (i) of this Code section, such designated employee shall</u>

282    render his or her decision rejecting such complaint in writing to the complainant, and

283    such decision shall set forth the essential facts and rationale for the decision;

284    (2)  A copy of such decision shall be provided to the complainant ~~within five days of~~ as

285    soon as practicable but not later than the second business day following the date of the

286    decision; and

287    (3)  A complainant shall have a right to appeal such decision to the local board of

288    education or other public school governing body, in the case of a public school, or the

289    participating private school's governing body, in the case of a participating private school,

290    within 35 days of the date of the decision.  A ruling on such appeal shall be rendered in

291    writing in writing no later than 35 days after receipt of the appeal, and such decision shall

292    set forth the essential facts and rationale for the ruling.

293    ~~(i)~~(k)(1)  A complainant may appeal a decision ~~of a local board~~ that is rendered under

294    subsection ~~(h)~~ (j) of this Code section in accordance with the procedures specified in

295    Code Section 20-2-1160.  If the State Board of Education determines that a local school

296    system or public school has failed to comply with this Code section, then the state board

297    shall provide the local school system or public school with opportunities to prepare a

298    corrective plan.  If the state board determines that a corrective plan of the local school

299    system or public school adequately plans and provides for future compliance with this

300    Code section, then the state board shall approve the plan and direct the local school

301    system or public school to implement such plan.

302    (2)  If, upon a complaint filed pursuant to subsection ~~(h)~~ (j) of this Code section after one

303    year following the date of a state board order directing implementation of a corrective

304    plan pursuant to paragraph (1) of this subsection but within four years of the date of such

305    order, the state board determines that the local school system or public school which was

306    subject to such order has willfully failed to comply with this Code section, the state board

307    may, after consideration of the local school system's or public school's efforts to

308    implement the corrective plan approved in the earlier proceeding and of any other

309    corrective plan that may be submitted by the local school system or public school,
310    transmit a certification of such determination to the Department of Community Affairs.
311    If the state board's determination of noncompliance is later reversed or vacated upon
312    appeal, the state board shall immediately notify the Department of Community Affairs
313    of such action.

314    (3) If, upon a complaint filed pursuant to subsection (h) (j) of this Code section after one
315    year following the date of a state board certification to the Department of Community
316    Affairs pursuant to paragraph (2) of this subsection but within four years of the date of
317    such order, the state board determines that the local school system or public school which
318    was subject to such order has willfully failed to comply with this Code section, the state
319    board may, after consideration of the local school system's or public school's efforts to
320    implement a corrective plan approved in an earlier proceeding and of any other corrective
321    plan that may be submitted by the local school system or public school, order that a team
322    or teams within the local school system or public school within the local school system
323    shall not participate in interscholastic postseason athletic contests competitions and that
324    participation in violation of such an order may result in withholding of state funds allotted
325    pursuant to Code Section 20-2-186.  An order of the state board barring participation in
326    interscholastic postseason athletic contests competitions shall be made and announced
327    before the beginning of a school year.

328    (4) If, upon a complaint filed pursuant to subsection (h) (j) of this Code section after one
329    year following the date of a state board order prohibiting participation in interscholastic
330    postseason athletic contests competitions pursuant to paragraph (3) of this subsection but
331    within four years of the date of such order, the state board determines that the local
332    school system or public school which was subject to such order has willfully failed to
333    comply with this Code section, the state board may, after consideration of the local school
334    system's or public school's efforts to implement a corrective plan approved in an earlier
335    proceeding and of any other corrective plan that may be submitted by the local school

336    system or public school, withhold state funds that are allotted pursuant to Code

337    Section 20-2-186 in an amount that the state board determines is sufficient to secure the

338    local school system's or public school's compliance with this Code section.  In the event

339    that state funds are withheld pursuant to this paragraph, such funds shall later be allotted

340    to the local school system or public school at such time as the state board determines that

341    the local school system or public school is in compliance with this Code section.

342    (j)(l) The Department of Education may publish an annual report of local school systems

343    and public schools which may to include information regarding expenditures and

344    participation rates for each gender sex and such other information as the state board and

345    department deem relevant.

346    (m)(1)  In addition to any other rights or remedies otherwise provided by law, any

347    student:

348    (A)  Who is deprived of an athletic opportunity or suffers any harm as a result of a

349    violation of this Code section shall have a private cause of action for injunctive relief,

350    damages, and any other relief available under law.  If an aggrieved student or such

351    student's parent or guardian is the prevailing party in such action, such student or such

352    student's parent or guardian shall be entitled to an award of monetary damages,

353    including for any psychological, emotional, or physical harm suffered, reasonable

354    attorney's fees, court costs, and expenses of litigation, and any other appropriate relief;

355    or

356    (B)  Who is subject to retaliation or other adverse action by a covered entity or a local,

357    state, regional, or national athletic conference or association as a result of reporting a

358    violation of this Code section to an employee or representative such covered entity,

359    athletic association or conference, or to any state or federal agency with oversight over

360    covered entities in this state, shall have a private cause of action for injunctive relief,

361    damages, and any other relief available under law.  If an aggrieved student or such

362    student's parent or guardian is the prevailing party in such action, the student or

363    student's parent or guardian is the prevailing party in such action, such student shall be

364    entitled to an award of monetary damages, including for any psychological, emotional,

365    or physical harm suffered, reasonable attorney's fees, court costs, and expenses of

366    litigation, and any other appropriate relief.

367    (2)  All civil actions brought under this subsection shall be initiated within two years after

368    the alleged harm occurred.

369    (n)  Nothing in this Code section shall be construed to authorize or require a local school

370    system, a public school, or any employee or agent thereof to confirm the sex of a student

371    by visual inspection of such student's exterior sex organs.

372    (o)  Nothing in this Code section shall be construed to abrogate or otherwise affect the

373    operation or application of the federal Individuals with Disabilities Education Act (IDEA),

374    Section 504 of the federal Rehabilitation Act of 1973, or the federal Americans with

375    Disabilities Act of 1990."


376                                          **SECTION 4.**

377    Said title is further amended in said part by revising paragraph (1) of subsection (b) and

378    subparagraph (c)(1)(E) of Code Section 20-2-316, relating to involvement of athletic

379    association in high school athletics, as follows:

380    "(1)  The athletic association shall comply with the requirements of subsections (a)

381    through (f) (h) of Code Section 20-2-315, as those requirements relate to the athletic

382    association's functions of organizing, sanctioning, scheduling, or rule making for events

383    in which public high schools participate;"

384    "(E)  The authority and duties of the executive oversight committee shall include:

385    (i)  To meet in person or remotely not less than twice each school year;

386    (ii)  To meet in person or remotely upon the call of the chairperson or a majority of

387    the executive oversight committee;

388    (iii)  To establish policies and procedures for the executive oversight committee;

389    (iv)    To conduct any independent audit, review, or investigation the executive

390    oversight committee deems necessary, including, but not limited to, the audit, review,

391    or investigation of the classifications of participating schools and ~~travel-related~~ travel

392    related issues of participating schools; and

393    (v)    ~~If the athletic association determines that it is necessary and appropriate to~~

394    ~~prohibit students whose gender is male from participating in athletic events that are~~

395    ~~designated for students whose gender is female, then the athletic association may~~

396    ~~adopt a policy to that effect; provided, however, that such policy shall be applied to~~

397    ~~all of the athletic association's participating public high schools; and~~

398    ~~(vi)~~    To conduct an annual evaluation of the athletic association as a whole and

399    present a report of its findings, recommendations, and conclusions to the General

400    Assembly's High School Athletics Overview Committee; and"

401                                    **SECTION 5.**

402    Said title is further amended in Article 1 of Chapter 3, relating to postsecondary education

403    generally, by designating Code Section 20-3-1, relating to definitions, as Part 1, and by

404    adding a new part to read as follows:

405                                    "Part 3

406    20-3-15.

407    As used in this part, the term:

408    (1) 'Competition' means a contest, game, match, tournament, or jamboree of teams in a

409    sport.  Such term shall not include practices, exhibitions, or scrimmages.

410    (2) 'Covered entity' means Georgia state schools and participating nonstate schools.

411    (3) 'Female' means an individual who has, had, will have, or, but for a developmental or

412    genetic anomaly or historical accident, would have the reproductive system capable of

413    producing human ovum.

414    (4) 'Georgia state school' means a postsecondary educational institution which is:

415        (A) An institution of the University System of Georgia; or

416        (B) A unit of the Technical College System of Georgia.

417    (5) 'Governing body' means the individual or entity responsible for establishing the

418    policies, rules, and regulations for a covered entity, including, but not limited to, such

419    policies, rules, and regulations for the operation of such covered entity's athletic

420    department, if any, and the operation or sponsorship of such covered entity's

421    intercollegiate competitions, sports, and teams. Such term shall not include any local,

422    state, regional, or national athletic conference or athletic association.

423    (6) 'Male' means an individual who has, had, will have, or, but for a developmental or

424    genetic anomaly or historical accident, would have the reproductive system capable of

425    producing human sperm.

426    (7) 'Multiple occupancy restroom or changing area' means an area in a postsecondary

427    educational institution's building that is designed or designated to be used by one or more

428    individuals of the same sex at the same time and in which one or more individuals may

429    be in various stages of undress in the presence of other individuals. Such term includes,

430    but shall not be limited to:

431        (A) Restrooms;

432        (B) Locker rooms;

433        (C) Changing rooms; and

434        (D) Shower rooms.

435    (8) 'Participating nonstate school' means a private postsecondary educational institution

436    that is eligible for tuition equalization grants in accordance with the provisions of Code

437    Section 20-3-411 or any other private or public postsecondary educational institution that

438    is not a Georgia state school whose students or teams participate in intercollegiate

439    competitions against students or teams from a Georgia state school in this state; provided,

440    however, that such term shall apply to such an institution only when and to the extent that

441    such institution is participating in an intercollegiate competition against a Georgia state

442    school in this state; and provided, further, that such term shall not apply to institutions

443    when participating in intercollegiate competitions in this state exclusively against one or

444    more other such institutions.

445    (9) 'Sex' means an individual's biological sex, either male or female. An individual's sex

446    can be observed or clinically verified at or before birth and in no case is an individual's

447    sex determined by stipulation or self-identification.

448    (10) 'Sleeping quarters' means a room or other limited access designated space within a

449    building or facility, such as a limited access designated space within a gymnasium,

450    cafeteria, or auditorium or other performance space, in which more than one individual

451    is housed overnight.

452    (11) 'Sport' means an organized activity involving skill and physical effort undertaken

453    by one or more teams according to established rules.

454    (12) 'Student athlete' means a student enrolled at a covered entity who participates in or

455    is eligible to participate on any sport or team. A student who is permanently ineligible

456    to participate on a particular sport or team is not a student athlete for the purposes of such

457    sport or team.

458    (13) 'Team' means a single student or a group of students operated and sponsored by a

459    covered entity for the purpose of participating in a sport.


460    20-3-16.

461    (a) Each governing body in this state shall adopt such policies, rules, and regulations as

462    necessary to ensure the following for all intercollegiate competitions involving covered

463    entities in this state:

464    (1) Each covered entity shall designate each team operated or sponsored by such covered

465    entity as one of the following:

466    (A)  Male; or

467    (B)  Female;

468    (2)(A)  Males shall not be allowed to participate in any intercollegiate competition in

469    this state on any team that is designated as female.

470    (B)  Females shall not be allowed to participate in any intercollegiate competition in

471    this state on any team that is designated as male; provided, however, that females may

472    be allowed to participate in an intercollegiate competition in this state on a team that

473    is designated as male if a corresponding team designated for females is not offered or

474    available for intercollegiate competitions;

475    (3)(A)  Multiple occupancy restrooms or changing areas and sleeping quarters shall be

476    available to student athletes on the basis of sex and such facilities shall be comparable

477    to such facilities provided for students of the other sex.

478    (B)  No covered entity shall operate or sponsor one or more teams in any intercollegiate

479    competition in this state that permits a male to use any multiple occupancy restroom or

480    changing area or sleeping quarters designated for use by females in conjunction with

481    such competition.

482    (C)  No covered entity shall operate or sponsor one or more teams in any intercollegiate

483    competition in this state that permits a female to use any multiple occupancy restroom

484    or changing area or sleeping quarters designated for use by males in conjunction with

485    such competition.

486    (D)  To ensure the privacy and safety of student athletes, each covered entity that

487    operates or sponsors one or more teams in any intercollegiate competition shall, in

488    conjunction with such competition:

489    (i)  Designate each multiple occupancy restroom or changing area and sleeping

490    quarters for exclusive use by males or for exclusive use by females; and

LC 49 2383S

491    (ii)  Provide a reasonable accommodation to individuals who are unwilling or unable

492    to use a multiple occupancy restroom or changing area or sleeping quarters designated

493    for each such individual's sex; and

494    (E)(i)  A reasonable accommodation under this paragraph may include, but shall not

495    be limited to, allowing such individual to access a single occupancy restroom or

496    changing area or sleeping quarters.

497    (ii)  A reasonable accommodation under this paragraph shall not include allowing

498    such individual to access a multiple or single occupancy restroom or changing area

499    or sleeping quarters that is designated for use by members of the other sex while

500    members of the other sex of the individual are present or may be present in such

501    restroom or changing area or sleeping quarters;

502    (4) No covered entity shall host, sponsor, or participate in any intercollegiate competition

503    in this state that permits a male to:

504    (A)  Participate in any intercollegiate competition in this state on any team that is

505    designated as female; or

506    (B)  Use any multiple occupancy restroom or changing area or sleeping quarters

507    designated for use by females in conjunction with such competition;

508    (5)  Nothing in subparagraph (a)(3)(D) or (a)(4)(B) of this Code section shall be

509    construed or applied to prohibit an individual from entering a multiple occupancy

510    restroom or changing area designated for use by individuals of the opposite sex when he

511    or she enters such area for one of the following reasons:

512    (A)  For authorized custodial, maintenance, or inspection purposes;

513    (B)  To render emergency medical assistance;

514    (C)  To address an ongoing emergency, including, but not limited to, a physical

515    altercation;

516    (D)  A minor child is accompanied by his or her parent or legal guardian who deems

517    such entry necessary for the child's safety, welfare, or assistance; or

LC 49 2383S

518        (E)  The performance of official duties and responsibilities as authorized coaches and

519        trainers for purposes directly related to a competition or other official activity of a team,

520        including practice; and

521    (6)  No covered entity shall award to a male an athletic scholarship allocated to,

522    associated with, or otherwise intended for a female team member.

523    (b)  Nothing in this Code section shall be construed to prohibit males from participating in

524    practices, exhibitions, or scrimmages with teams designated as female; provided, however,

525    that nothing in this subsection shall be construed to permit a male to receive a scholarship

526    in conjunction with such participation.

527    (c)  Nothing in this Code section shall be construed to authorize a covered entity or

528    governing body to verify or confirm a student athlete's sex through visual inspection of

529    such student athlete's external sex organs for purposes of participation in competitions;

530    provided, however, that this paragraph shall not prohibit reliance on medical records or

531    other standard school medical procedures to verify or confirm a student's athlete's sex.

532    (d)  Any covered entity or governing body that violates any provision of subsection (a) of

533    this Code section shall be subject to the withholding of state funding.  Such withholding

534    of state funding may include funds provided to one or more postsecondary educational

535    institutions or governing bodies directly, as well as funding for scholarships, loans, and

536    grants pursuant to this chapter for students of such postsecondary educational institutions.

537        (e)(1)  In addition to any other rights or remedies otherwise provided by law, any student:

538        (A)  Who is deprived of an athletic opportunity or suffers any harm as a result of a

539        violation of this Code section shall have a private cause of action for injunctive relief,

540        damages, and any other relief available under law.  If an aggrieved student is the

541        prevailing party in such action, such student shall be entitled to an award of monetary

542        damages, including for any psychological, emotional, or physical harm suffered,

543        reasonable attorney's fees, court costs, and expenses of litigation, and any other

544        appropriate relief; or

545     (B)   Who is subject to retaliation or other adverse action by a covered entity, a

546     governing body, or a local, state, regional, or national athletic conference or athletic

547     association as a result of reporting a violation of this Code section to an employee or

548     representative such covered entity, governing body, athletic conference or athletic

549     association, or to any state or federal agency with oversight over postsecondary

550     educational institutions in this state, shall have a private cause of action for injunctive

551     relief, damages, and any other relief available under law.  If an aggrieved student is the

552     prevailing party in such action, such student shall be entitled to an award of monetary

553     damages, including for any psychological, emotional, or physical harm suffered,

554     reasonable attorney's fees, court costs, and expenses of litigation, and any other

555     appropriate relief.

556     (2) All civil actions brought under this subsection shall be initiated within two years after

557     the alleged harm occurred.

558     (f)   Nothing in this Code section shall be construed to abrogate or otherwise affect the

559     operation or application of Section 504 of the federal Rehabilitation Act of 1973, the

560     federal Americans with Disabilities Act of 1990, or the federal Health Insurance Portability

561     and Accountability Act of 1996, P.L. 104-191."

**SECTION 6.**

562

563     All laws and parts of laws in conflict with this Act are repealed.