EXHIBIT 14

Susan M. Cirilli, Esq. (017972012)
**CIRILLI, LLC**
100 Church Street, Suite 800
New York, NY 10007
646.992.3564
susie@cirilli.com
*Attorney for Plaintiff Sadie Schreiner*

| | |
|---|---|
| SADIE SCHREINER | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: CIVIL PART |
| | : MERCER COUNTY |
| Plaintiff, | : |
| | : Docket No. |
| v. | : |
| | : <u>Civil Action</u> |
| PRINCETON UNIVERSITY, | : |
| JOHN MACK AND KIMBERLY | : **COMPLAINT AND JURY DEMAND** |
| KEENAN-KIRKPATRICK, AND | : |
| LEONE TIMING AND RESULTS | : |
| SERVICES | : |
| Defendants. | : |

Plaintiff, Sadie Schreiner ("Plaintiff"), by and through her counsel, Cirilli, LLC, and by way of Complaint against Defendants, Princeton University, John Mack, Kimberly Keenan-Kirkpatrick and Leone Timing and Results Services (collectively "Defendants"), allege and state as follows:

## **INTRODUCTION**

1.      Sadie Shreiner is a woman who loves to run competitively.  She signed up to run in the 100 and 200 meter dashes as an athlete unattached to any University or club and qualified to participate based upon her past official race times for those distance to compete in the Princeton University sponsored invitational track meet named after Larry Ellis, the legendary Princeton track and field coach who crashed the color barrier to become was the first Black coach in any sport

throughout all the Ivy League universities. Unfortunately, the ground-breaking actions of Larry Ellis in overcoming discrimination was a lesson lost when Princeton University, aided and abetted by its employees (Defendants John Mack (:Mack") and Kimberly Keenan-Kirkpatrick (Keenan-Kirkpatrick) and the track meets timing vendor, Leone Timing and Results Services ("Leone Timing")  denied a transgender woman the right to compete in the very track meet that gives appropriate tribute to Coach Ellis' courage displayed in his groundbreaking action against discrimination invidious discrimination.

2.     While she had originally registered and was qualified to run in both the 100 Meter and 200-meter races based upon her past official race times, Sadie decided to finally declare for the 200 Meter race only.

3.     On May 3, 2025, Sadie timely reported for her 200-meter race and her name was added to the list of runners. She then warmed up and waited for her race to be called.

4.     Fifteen (15) minutes before the race was to start, Sadie became aware that her name had been deleted from the official listing of the pairings of all registered runners in the 200-meter race.  Seeking an answer to her unexplained exclusion, Sadie first complained to the persons employed by the official race-timing officials from Defendant Leone Timing and Race Services and then to the Princeton officials in charge of the meet, only to be told that despite the mandate of New Jersey law disallowing discrimination on the basis of being transgender, Princeton  would not allow her to run solely because she was a transgender woman.  Simply stated, when Princeton University, unlawfully aided and abetted by the other individually named defendants, denied her right to run in the Larry Ellis Invitational track meet, they broke the law controlling guaranteed protections of the rights of transgender women.

5.      Sadie files the instant complaint under the New Jersey Law Against Discrimination ("N.J.L.A.D"), N.J.S.A. 10:5-5, and seeks all relief that is just and proper for compensatory and punitive damages afforded under that specific state law,  the New Jersey common law protecting against unlawful conspiracies, and relief for the intentional infliction of emotional distress  affected by the Defendants, collectively and individually, as fully set forth in the following paragraphs.

## THE PARTIES

### Plaintiff, Sadie Schreiner

6.      Plaintiff Sadie Schreiner is an individual residing in New Jersey.

7.      Even before entering  high school, Sadie participated both as a student athlete running in sanctioned intercollegiate and other races as an athlete attached to a named school and in international meets as a qualified "unattached" runner based on her recorded times in prior events.

8.      During her high school years, Sadie followed her biological needs and transitioned to women hood with the full support of her family and continued to compete as a short distance runner through high school and thereafter at Rochester Institute of Technology ("RIT"), an NCAA division III institution.

### Defendant, Princeton University

9.      Defendant, Princeton University is an institution of higher learning located in Princeton, New Jersey.  Princeton was founded in 1746 as the College of New Jersey making it the fourth oldest university in the United States. The University changed its name to Princeton University in 1896.

10.     By vote of its Board of Trustees, Princeton first admitted women in 1969 and its student body presently consists of 5725 undergraduate and students and 3225 enrolled in graduate programs, with over 50% of its student now consisting of women.

11.     While suggesting on its website as welcome home for all students, it was not until 2005 that the University launched its LGBT Center.

12.     Since 1999, Princeton University has sponsored an invitational track meet to be run at the School's Weaver Track site.  The 2025 meet deadlines for participation by School and Club teams and well as Unattached runners was set for May 28, 2025, with each potential participant, male and female needing to meet specific qualifying times as published on the Princeton website.

13.     In the context of the present matter, Sadie qualified for participating in the meet with recorded previous times for women below the 26.00 time for the 200-meter races.

**Defendant, John Mack**

14.     Defendant, John Mack ("Mack"), at all times applicable hereto, was the Ford Family Director of Athletics for Princeton University and as a Princeton University employee maintained his office as a University official at or near the University's athletic facilities including the  Jadwin Gym, Baker Rink and Dillon Gym.

15.     As the Princeton University Athletic Director, Mack, acting on behalf of the Princeton University had full and final responsibility to control who would participate in the Larry Ellis Invitational track classic in 2025.

16.     At all times relevant to the Present action, John Mack aided and abetted the unlawful actions of Princeton University in denying the participation of Plaintiff Sadie Schreiner in the 200-meter race for which she properly registered and was qualified.

**Defendant, Kimberly Keenan-Kirkpatrick**

17.     Defendant, Kimberly Keenan-Kirkpatrick ("Keenan-Kirpatrick"), at all times applicable hereto, was the Director of Track Operations for Princeton University and as a Princeton University employee maintained her office as University official at or near the University's athletic facilities including the Jadwin Gym, Baker Rink and Dillon Gym.

18.     As the Princeton University Athletic Director, Keenan-Kirkpatrick, acting on behalf of the Princeton University had full and final responsibility together with Defendant John Mack to control who would participate in the Larry Ellis Invitational track classic in 2025.

19.     At all times relevant to the present action, Defendant Keenan-Kirkpatrick aided and abetted the unlawful actions of Princeton University in denying the participation of Plaintiff Sadie Schreiner in the 200-meter race for which she properly registered and was qualified.

**Defendant, Leone Timing and Results Services**

20.     Defendant, Leone Timing and Results Services ("Leone Timing"), is a privately owned organization and official race timing entity for the timing of organized track and field events throughout the United States.  It maintains its principal place of business at 414 W. Taylor Street, Syracuse, New York, 13202.

21.     At all times relevant for the present matter and on information, knowledge and belief, Defendant Leone Timing had the responsibility to verify eligibility for participation based on previous sanctioned race time for applying participants and controlled the setting of heats for the participants in the races for which they were qualified.

22.     At all times relevant to the present action, Leone Timing aided and abetted the unlawful actions of Princeton University in denying participation in Plaintiff Sadie Schreiner in the 200-meter race for which she properly registered and was qualified.

## JURISDICTION AND VENUE

23.     Venue is proper under Rule 4:3-2 as Defendant Princeton University is located in Mercer County and the cause of action arose there.

24.     Jurisdiction in this Court is proper under Rule 4:3-1.

## FACTUAL BACKGROUND

25.     At all times relevant to the present Complaint, Sadie Schreiner was transgender woman whose birth certificate, Social Security and Driver's license confirm that she is a female individual.

26.     Princeton University hosted and managed the Larry Ellis Invitational on May 3, 2025.

27.     Individuals competed in the Larry Ellis Invitational as student-athletes representing their college or university.

28.     Individuals who did not represent a college or university were also allowed to register and compete in the Larry Ellis Invitational as individuals representing themselves or a recreational or a professional track club. By the published rules of the Larry Ellis Invitational meet, runners not registered with a college or university registered and were listed as "Unattached Runners".

29.     There is a popular website whereby individuals from the public can register for track meets and races as Unattached. This website is directathletics.com (hereinafter "Direct Athletics").

30.     Direct Athletics includes links to various meets where attached and unattached athletes including these athletes wishing to participate in the Larry Ellis Invitational could secure information needed to register for track meets across the country.

31.     The Larry Ellis Invitational was listed as a race on Direct Athletics.

32.     Members of the public could obtain information on how to register for the Larry Ellis Invitational from the website.

33.     On April 28, 2025, Sadie remitted the required registration fee of $44.00 stating her desire to run in both the 100 meter and 200-meter women's races through Direct Athletics.

34.     Sadie registered for these races as an Unattached Athlete, which is a runner not representing any institution of higher education or even track club, but as a member of the public, representing only herself.

35.     Upon reasonable information, knowledge and belief, approximately 141 other individuals also registered to participate at the Larry Ellis Invitational as "unattached." Just like Sadie, they were looking to compete at the Larry Ellis Invitational as a member of the public not representing an entity of institution.

36.     Upon reasonable information, knowledge and belief the 141 registered unattached participants were permitted to engage in the Larry Ellis Invitational and most posted the results of their participation   In fact, most of the 141 registered unattached runners posted results.

37.     On May 3, 2025, in preparation for the Larry Ellis Invitational, Sadie drove from her home in Hillsborough, New Jersey, to Princeton, New Jersey, leaving three hours before the scheduled start time of the race in which she decided to participate.

38.     Sadie arrived at Weaver Field 2 hours before the start of her event and "declared" for the 200-meter women's race by going to the table where officials logged each runners'

attendance (the "Check-In Table) and thereby notified the officials appointed by Princeton University that she was present to compete in the 200-meter women's race.

39.     After confirming with those officials that her name was on was on the list of runners ("Heat Sheet") as a participant in the women's 200-meter race, Sadie then commenced her pre-race warmup routine

40.     However, approximately thirty (30) minutes after declaring at the Check-In Table, Sadie reviewed the meet's official Heat Sheet on her phone and discovered that she had been omitted from any of the 200-meter women's heats.

41.     Sadie then went back to the Check-In Table and inquired as to why her name was removed from the Online Heat Sheet. The representative at the Check-In Table told Sadie that because she had been registered as being "declared" and was on the list of "Declared Athletes" and that she would still be able to compete.

42.     Sadie then returned to warming up for her participation in the women's 200-meter race.

43.     Approximately 15 minutes later, Princeton University posted the official Heat Sheet ("Official Posted Heat Sheet").  Despite the oral assurances she received from the officials at the Check-In table, she discovered that her name was not listed in any of the heats for the 200-meter women's race.

44.     Sadie then returned to the Check-In Table and inquired as to why her name was delisted on the Official Posted Heat Sheet.

45.     Without proffering an explanation, the individuals at the Check-In Table directed Sadie to talk with the timing officials who placed the names of participants competing in heat in accordance with their responsibilities as a vendor for Princeton University.

46.     Sadie then proceeded to the van outside the stadium's seating area and spoke with the Leone Timing Officials who had removed her name from the heat lists.  They refused to address the issue with her and only directed her to find Mack and Keenan-Kirkpatrick to discuss her non-listing as a race participant.

47.     Upon information and belief, the Timing Officials were aware that Sadie had been unlawfully removed as a participant in the women's 200-meter race by the Princeton University and its race officials and therefore, knowingly and substantially aided and abetted the unlawful discrimination against Sadie because she is a transgender woman.

48.     Sadie then went back to the starting line area and found Mack and Keenan-Kirkpatrick, who reacted with the comment demonstrating her bias ("I do not want to assume, but you are transgender").

49.     Still wanting to participate. Sadie pleaded with John Mack and Kimberly Kennan-Kirkpatrick by offering to take any physical tests that would further demonstrate her gender and agreeing to allow them to inspect the official papers (birth certificate and driver's license) that reflected that Sadie was formally recognized as a woman by those agencies.

50.     In a further biased response, Keenan-Kirpatrick further suggested that she had tried to organize a separate segregated event just for Sadie so that she could run.

51.     The actions of the two Princton officials were in blatant and willful disregard of Sadie's rights based on Sadie's rights as a transgender woman under controlling New Jersey law thereby causing Sadie Shreiner to foreseeable emotional and physical harm.

52.     Upon information and belief, none of the 141 other Unattached Runners were transgender women nor were they denied the right to compete.

53.     The unlawful actions of Princeton University, aided and abetted by the three other defendants, caused Sadie's relatives and friends who were present at the meet (including Sadie's mother, step-father, step-sister, and the step-sister's girlfriend and her sister's boyfriend) to witness the humiliating, dehumanizing and dignity-stripping ordeal and the effect of the Defendant's collective unlawful behavior against Sadie.

## COUNT ONE
### SCHREINER VS. PRINCETON UNIVERSITY, JOHN MACK, KIMBERLY KEENAN-FITZPATRICK, AND LEONE TIMING
### NEW JERSEY LAW AGAINST DISCRIMINATION (N.J.S.A. 10:5-12(f)(1))

54.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

55.     Defendant, Princeton University, is a "person" as defined by the New Jersey Law Against Discrimination ("NJLAD").  N.J.S.A. 10:5-5(a).

56.     Defendant, Princeton University, is a university in the state of New Jersey.  It is itself  a "public accommodation" entity as defined by NJLAD. N.J.S.A. 10:5-5(l) as is the Larry Ellis Invitational.

57.     Gender identity or expression is a protected status under the NJLAD.  N.J.S.A. 10:5-12(f)(1).

58.     "Gender identity or expression" under the NLAD "means having or being perceived as having a gender related identity or expression whether or not stereotypically associated with a person's assigned sex at birth." N.J.S.A. 10:5-5(rr).

59.     It is simply unlawful discrimination for an owner of any place of public accommodation to "directly or indirectly refuse, withhold from or deny any person of any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person

in the furnishing thereof…on account of sex, gender identity or expression…" N.J.S.A 10:5-12(f)(1).

60.     At all times applicable to the present matter, each of the Defendants were aware that Sadie was a transgender woman and knowingly and maliciously discriminated against Sadie Schreiner on the basis of her gender identity and expression.

61.     Defendant, Princeton University, aided and abetted by the other three defendants, discriminated against Sadie when they individually and collectively prohibited Sadie from Competing in the women's 200-meter race on account of her gender identity and expression.

62.     Plaintiff suffered and continues to suffer great emotional harm as a direct result of Princeton University's actions.

63.     Princeton University, and the other three defendants, acted with actual malice when it discriminated against Sadie by removing her from the races because she is a transgender woman.

64.     Princeton University acted with wanton and willful disregard for the rights of Sadie, to participate under New jersey law when it was foreseeable that Sadie would suffer great harm by the act of excluding her from the race.

**WHEREFORE**, Plaintiff demands judgment against each of the Defendants follows:

a.      The Courts Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey;

b.      An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.      An awarding to Plaintiff for interests, costs of litigation and reasonable attorneys' fees; and

d.      An award of such other and further relief as the Court determines just and equitable.

**COUNT TWO**
**SCHREINER VS. JOHN MACK**
**NEW JERSEY LAW AGAINST DISCRIMINATION (N.J.S.A. 10:5-12(e))**

65.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

66.     Defendant, John Mack, is a "person" as defined by the NJLAD.  N.J.S.A. 10:5-5(a).

67.     It is unlawful discrimination for "any person…to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NJLAD] or attempt to do so."  N.J.S.A 10:5-12(e).

68.     John Mack, actively aided and abetted Princeton University in the affecting of the discrimination that caused harm to Sadie.

69.     John Mack was generally aware of his role in the scheme of discrimination against Sadie and knowingly and substantially assisted in the acts that were violations of the New Jersey Law Against Discrimination, which caused Sadie harm.

70.     John Mack acted with actual malice when he aided and abetted Princeton University's discrimination against Sadie by removing her from the 200-meter race because she is a transgender woman.

71.     John Mack acted with wanton and willful disregard for the rights of Sadie, who was foreseeably harmed by the act of aiding and aiding and abetting the unlawful actions of Princeton University by excluding her from the women's 200-meter race because she is a transgender woman.

72.     As a direct result of John Mack's actions, Plaintiff has suffered *inter alia* severe and continuing emotional distress, humiliation and embarrassment.

**WHEREFORE**, Plaintiff demands judgment against Defendant John Mack and in favor of Plaintiff, Sadie Shreiner as follows:

a.      The Court's Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey

b.      An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.      An award to Plaintiff for interest, costs of litigation and reasonable attorneys' fees; and

d.      An award of such other and further relief as the Court determines just and equitable.

**COUNT THREE**
**SCHREINER VS. KIMBERLY KEENAN-KIRKPATRICK**
**NEW JERSEY LAW AGAINST DISCRIMINATION (N.J.S.A. 10:5-12(e))**

73.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

74.     Defendant, Kimberly Keenan-Kirkpatrick, is a "person" as defined by the NJLAD. N.J.S.A. 10:5-5(a).It is unlawful discrimination for "any person…to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NJLAD] or attempt to do so."  N.J.S.A 10:5-12(e).

75.     Kimberly Keenan-Kirkpatrick was aware of her role in the scheme of discrimination against Sadie and knowingly and substantially assisted in the acts that were violations of the New Jersey Law Against Discrimination, which caused Sadie harm.

76.     Kimberly Keenan-Kirkpatrick acted with actual malice when he aided and abetted Princeton University's discrimination against Sadie by removing her from the 200-meter race because she is a transgender woman.

77.     Kimberly Keenan-Kirkpatrick acted with wanton and willful disregard for the rights of Sadie, who was foreseeably harmed by the act of aiding and abetting the unlawful actions of Princeton University by excluding her from the 200-meter race.

78.     As a direct result of the actions of Kimberly Keenan-Kirkpatrick, Plaintiff has suffered *inter alia* severe and continuing emotional distress, humiliation and embarrassment.

**WHEREFORE**, Plaintiff demands judgment against Defendants follows:

a.     The Court's Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey

b.     An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.     An award to Plaintiff for interest, costs of litigation and reasonable attorneys' fees; and

d.     An award of such other and further relief as the Court determines just and equitable.

**COUNT FOUR**
**SCHREINER VS. LEONE TIMING AND RESULTS**
**NEW JERSEY LAW AGAINST DISCRIMINATION (N.J.S.A. 10:5-12(e))**

79.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

80.     Defendant, Leone Timing is a "person" as defined by the NJLAD.  N.J.S.A. 10:5-5(a).

81.     It is unlawful discrimination for "any person…to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NJLAD] or attempt to do so."  N.J.S.A 10:5-12(e).

82.     Leone Timing actively aided and abetted Princeton University in the affecting of the discrimination that caused harm to Sadie.

83.     Leone Timing, was aware of its role in the scheme of discrimination against Sadie and knowingly and substantially assisted in the acts that were violations of the New Jersey Law Against Discrimination, which caused injury and harm to Sadie.

84.     Leone Timing acted with actual malice when it aided and abetted Princeton University's discrimination against Sadie by removing her from the women's 200-meter race because she is a transgender woman.

85.     Leone Timing acted with wanton and willful disregard for the rights of Sadie, who was foreseeably harmed by the act of aiding and abetting the unlawful actions of Princeton University by excluding her from the women's 200 meter race.

86.     As a direct result of the actions of Leone Timing, Plaintiff has suffered *inter alia* severe and continuing  emotional distress, humiliation and embarrassment.

**WHEREFORE**, Plaintiff demands judgment against Defendant Leone Timing and in favor of Plaintiff, Sadie Shreiner as follows:

a.      The Court's Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey

b.  An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.  An award to Plaintiff for interest, costs of litigation and reasonable attorneys' fees; and

d.  An award of such other and further relief as the Court determines just and equitable.

## **COUNT FIVE**
## **SCHREINER VS. ALL DEFENDANTS**
## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

87.  Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

88.  Defendants, individually and collectively, acted intentionally when it removed Sadie from the women's 200-meter event.

90.  Defendant's individual actions were outrageous, extreme, atrocious and utterly intolerable in a civilized community and go beyond the possible bounds of decency.

91.  Defendants individually and collectively caused Sadie great emotional distress that was and is so severe that no reasonable person could be expected to endure it.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually and collectively as follows:

a.  The Court's Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey

b.  An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.      An award to Plaintiff for interest, costs of litigation and reasonable attorneys' fees; and

d.      An award of such other and further relief as the Court determines just and equitable.

**COUNT SIX**
**SCHREINER VS. ALL DEFENDANTS**
**CIVIL CONSPIRACY**

92.      Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if fully set forth herein.

93.      Under New Jersey law, a civil conspiracy claim requires proving an agreement between two or more people to commit an unlawful act, resulting in damages to the plaintiff. The agreement must be for the purpose of committing an unlawful act, and at least one of the conspirators must have taken an overt act in furtherance of the agreement.

94.      The Defendants acted in concert to unlawfully deny Sadie from participating in the 200-meter race even, resulting in her non-participation in the race and causing her great emotional harm.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually and collectively as follows:

a.      The Court's Declaration that the actions of the defendants were individually and collectively discriminatory under the controlling laws of the State of New Jersey

b.      An award to Plaintiff for compensatory and punitive damages in an amount to be determined at trial;

c.      An award to Plaintiff for interest, costs of litigation and reasonable attorneys' fees; and

d.     An award of such other and further relief as the Court determines just and

equitable.


Respectfully Submitted,

**CIRILLI, LLC**

By:_____
Susan M. Cirilli, Esq.
(017972012)
100 Church Street, Suite 800
New York, New York 10007
susie@cirilli.com
646.992.3564


Dated:  July 15, 2025

## JURY DEMAND

Plaintiff hereby demands a trial by jury of 12 members on all issues triable by a jury.

Good cause exists for a jury of 12 members because the triable issues are in the public domain
and of public interest.

Respectfully Submitted,

**CIRILLI, LLC**

By: _____
Susan M. Cirilli, Esq.
(017972012)
100 Church Street, Suite 800
New York, New York 10007
susie@cirilli.com
646.992.3564

Dated: July 15, 2025

## <u>DESIGNATION OF TRIAL COUNSEL</u>

In accordance with <u>Rule</u> 4:25-4, Plaintiff hereby designates Susan M. Cirilli, Esquire as trial counsel in this action.

Respectfully Submitted,

**CIRILLI, LLC**

By: _Susan M Cirilli_
Susan M. Cirilli, Esq.
(017972012)
100 Church Street, Suite 800
New York, New York 10007
susie@cirilli.com
646.992.3564

Date: July 15, 2025

## <u>RULE 4:5-1 CERTIFICATION</u>

I hereby certify that to the best of my knowledge, information, and belief, the within matter in controversy is not the subject of any other pending or contemplated court actions or arbitration proceedings.

I further certify that to the best of my knowledge, information, and belief, I am not aware of any non-parties who should be joined in the action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully Submitted,

**CIRILLI, LLC**

By: _Susan M Cirilli_
Susan M. Cirilli, Esq.
(017972012)
100 Church Street, Suite 800
New York, New York 10007
susie@cirilli.com
646.992.3564

Dated: July 15, 2025

## <u>RULE 1:38-7(b) CERTIFICATION</u>

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted to the Court in the future in accordance with <u>Rule</u> 1:38-7(b).

Respectfully Submitted,

**CIRILLI, LLC**

By: _____
Susan M. Cirilli, Esq.
(017972012)
100 Church Street, Suite 800
New York, New York 10007
susie@cirilli.com
646.992.3564

Dated: July 15, 2025