# Exhibit E

**RESOLUTION AGREEMENT**
**University of Pennsylvania**
*OCR Investigation Number 03256901*

The University of Pennsylvania ("University") has entered into this Resolution Agreement (the "Agreement") with the U.S. Department of Education's Office for Civil Rights ("OCR") to resolve the findings of noncompliance with Title IX in the above-referenced investigation. The University assures OCR that it will take the following actions.

**Action Item 1**

(A)  The University will issue a public statement to the University community stating that the University will comply with Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), as interpreted by the Department of Education, in all of its athletics programs.[1]

The statement shall:

(i)  Specify that Title IX compliance means the University will not – on the basis of ***sex*** – exclude ***female*** students from participation in, deny female students the benefits of, or subject female students to discrimination under, its athletics programs.

(ii)  Specify that Title IX compliance means the University will not allow ***male students*** to compete in any athletic program restricted to ***women,*** ensuring that only female students are eligible to compete as a member of women's athletics.

(iii)  Specify that the University will provide in Penn Athletics facilities to student-athletes intimate facilities such as locker rooms and bathrooms strictly separated on the basis of sex and comparably provided to each sex.

(iv)  Specify that Title IX applies irrespective of current or future policies from sporting or scholastic governing bodies, such as the Ivy League or individual sporting bodies.

(v)  Specify that the University will not delegate its obligation to comply with Title IX to an external association or other entity and may not contract with, or arrange with any third party entity to provide benefits of the University's athletics programs, if that third party entity is acting in violation of Title IX.

(vi)  State that under Title IX, as interpreted by the Department of Education, the words ***sex, female, male, women, men*** as used in the statement and as applicable in all practices, policies, and procedures adopted and

---

[1] Herein, any athletic opportunity, event, competition, category, program, or activity designated for women is referred to as "women's athletics."

    implemented by the University with respect to women's athletics pursuant to or consistent with Title IX shall be defined consistent with Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government (Jan. 20, 2025), in keeping with Executive Order 14201, Keeping Men Out of Women's Sports (Feb. 5, 2025).

    The University will post this statement in a prominent location on its main website and on each of its websites for women's athletics.

(B) The University will rescind or revise any guidance documents or previously issued notices, which advised or authorized its women's athletics to permit male athletes to compete in women's athletics, to reflect that pursuant to Title IX, as interpreted by the Department of Education, women's athletics must ensure that only female athletes are eligible to compete in women's athletics.

(C) The University will review all of its internal and public-facing websites for any statements, links, or documents that are inconsistent with Title IX on the points iterated in this Agreement (namely, eligibility to compete in women's athletics, and provision of intimate facilities for women) and remove or revise any such statements, links, or documents to reflect compliance with the Title IX requirements iterated in this Agreement. The University will promptly notify all staff and women's athletics of all rescissions or revisions undertaken pursuant to this Action Item 1(C).

**Reporting Requirements for Action Item 1**

1. The University provided OCR with its proposed statement on June 10, 2025. OCR approved the proposed statement on June 10, 2025. Within five business days after execution of the Agreement, the University will provide OCR with documentation reflecting (i) that the statement was sent to each of its women's athletics programs and posted on the University's websites as described in Action Item 1(A) (including a link to the location where the statement is posted); and (ii) each notice, if any, and copy thereof described in Action Item 1(B).

2. Within ten business days after execution of the Agreement, the University will submit to OCR evidence of (i) its rescission or revision of all prior guidance documents and/or statements, and (ii) revisions to its websites in compliance with Action Item 1(C), including information or documentation showing how such recissions or revisions were communicated to women's athletics.

**Action Item 2**

(A) The University will:

    (i) Review all Penn Division I swimming individual athletic records, titles, honors, awards or similar recognition (herein, "Recognitions") received by male athletes competing in women's athletics <u>at any time</u> up to and including the reporting date indicated below.

   (ii)  Officially recognize the restoration of all individual Recognitions that female athletes earned and would have been given but for the Recognitions being given to male athletes who competed in women's athletics, regardless of whether the female athlete remains currently, or is no longer, a student enrolled in the University.

   (iii)  Submit to OCR a list of all the reviews and restoration/correction actions described in Action Item 2(A)(i)-(ii) to the University. The University will send a personalized letter of apology to each impacted female swimmer.

**Reporting Requirements for Action Item 2**

1. Within ten business days after execution of the Agreement, the University will submit to OCR a list of all reviews conducted (including the underlying findings regarding male athletes competing in women's athletics) and restorations/corrections to Recognitions pursuant to Action Item 2(A).

**Other Provisions**

The University understands that by signing the Agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of the Agreement. Further, the University understands that during the monitoring of the Agreement, if necessary, OCR may visit the University, interview staff, and request such additional reports or data as are necessary for OCR to determine whether the University has fulfilled the terms and obligations of the Agreement. Upon OCR's acknowledgment of the University's satisfaction of the commitments made under the Agreement, OCR will close the case.

The University understands and acknowledges that OCR may initiate proceedings to enforce the specific terms and obligations of the Agreement and/or the applicable statute(s) and regulation(s). Before initiating such proceedings, OCR will give the University written notice of the alleged breach and reasonable opportunity to cure the alleged breach.

The Agreement will become effective immediately upon the signature of the University's authorized official below.


By: /s/                 Date: 6/30/2025

  J. Larry Jameson, MD, PhD

  President

  University of Pennsylvania