# Exhibit F

1                    UNITED STATES DISTRICT COURT

2                   DISTRICT OF MASSACHUSETTS (Boston)

3                              No. 1:25-cv-10281-WGY

4

5    GRACE ESTABROOK, et al
                Plaintiffs
6

7    vs.

8

9    THE IVY LEAGUE COUNCIL AND PRESIDENTS, et al,
                Defendants
10

11                         * * * * * * * * *
12

13
                          For Hearing Before:
14                       Judge William G. Young

15
                           Motion to Dismiss
16

17                       United States District Court
                         District of Massachusetts (Boston.)
18                       One Courthouse Way
                         Boston, Massachusetts 02210
19                       Monday, July 21, 2025

20
                             * * * * * * * *
21

22
                    REPORTER: RICHARD H. ROMANOW, RPR
23                       Official Court Reporter
                       United States District Court
24        One Courthouse Way, Room 5510, Boston, MA 02210
                           rhr3tubas@aol.com
25

```
 1                    A P P E A R A N C E S

 2
     WILLIAM BOCK, III, ESQ.
 3   JUSTIN OLSON, ESQ.
        Kroger, Gardis & Regas, LLP
 4      111 Monument Circle, Suite 900
        Indianapolis, IN 46204
 5      (317) 698-7332
        E-mail: Wbock@kgrlaw.com
 6   and
     SAMUEL WHITING, ESQ.
 7      Massachusetts Family Institute
        401 Edgewater Place, Suite 580
 8      Wakefield, MA 01880
        (781) 569-0400
 9      Email: Sam@mafamily.org
        For Plaintiffs
10
     STEPHEN J. KASTENBERG, ESQ.
11   ELIZABETH WEISSERT, ESQ.
        Ballard Spahr, LLP
12      1735 Market Street, 51st Floor
        Philadelphia, PA 19103
13      (215) 864-8122
        Email: Kastenberg@ballardspahr.com
14   and
     CAROLINE S. DONOVAN, ESQ.
15      Foley Hoag, LLP
        155 Seaport Boulevard
16      Seaport World Trade Center West
        Boston, MA 02210
17      (617) 832-1165
        Email: Cdonovan@foleyhoag.com
18      For Defendant The Ivy League Council and Presidents

19   ANTON METLITSKY, ESQ.
        O'Melveny & Myers, LLP
20      1301 Avenue of the Americas, Suite 1700
        New York, NY 10019-6022
21      Email: Ametlitsky@omm.com
     and
22   VICTORIA L. STEINBERG, ESQ.
        Cloherty & Steinberg, LLP
23      One Financial Center, Suite 1120
        Boston, MA 02111
24      (617) 481-0160
        Email: Vsteinberg@clohertysteinberg.com
25      For Defendant President and Fellows of Harvard College
```

```
 1      (Continued.)

 2

 3    JEFFREY A. STURGEON, ESQ.
      PAUL C. EVANS, ESQ.
 4        Paul Hastings, LLP
          200 Park Avenue
 5        New York, NY 10166
          (212) 318-6017
 6        Email: Jeffreysturgeon@paulhastings.com
          For Defendant the Trustees of the University
 7        Of Pennsylvania

 8    CHRISTOPHER CARL MARQUARDT, I, ESQ.
          Alston & Bird, LLP
 9        1201 West Peachtree Street
          Atlanta, GA 30309
10        (404)881-7000
          Email: Chris.marquardt@alston.com
11    and
      LON F. POVICH, ESQ.
12        Anderson & Kreiger, LLP
          50 Milk Street, 21st Floor
13        Boston, MA 02109
          (617) 621-6548
14        Email: Lpovich@andersonkreiger.com
          For Defendant National Collegiate Athletic Association
15

16

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2         (Begins, 2:40 p.m.)
 3         THE CLERK:  The Court will hear Civil Action
 4    Number 25-10281, Grace Estabrook, et al versus The Ivy
 5    League Council and Presidents, et al.
 6         THE COURT:  Would counsel identify themselves and
 7    who they represent.
 8         MR. BOCK:  Thank you, your Honor.  William Bock on
 9    behalf of the plaintiffs, Grace Estabrook, who is here
10    in court today, and Margot Kaczorowski, and Ellen
11    Holmquist.
12         MR. OLSON:  Justin Olson on behalf of the
13    plaintiffs.
14         MR. WHITING:  Sam Whiting on behalf of the
15    plaintiffs.
16         MR. STURGEON:  Good afternoon, your Honor, Jeff
17    Sturgeon on behalf of the University of Pennsylvania.
18         MR. EVANS:  Good afternoon, your Honor, Paul Evans
19    on behalf of the University of Pennsylvania.
20         MR. METILITSKY:  Good afternoon, your Honor, Anton
21    Metilitsky on behalf of Harvard.
22         MS. STEINBERG:  Good afternoon, your Honor,
23    Victoria Steinberg also on behalf of Harvard.
24         MR. KASTENBERG:  Good afternoon, your Honor,
25    Stephen Kastenberg and Valerie Spore on behalf of the
```

1   Ivy League Council and Presidents.

2      MS. DONOVAN:  Good afternoon, your Honor, Caroline

3   Donovan, Foley Hoag, also on behalf of the Ivy League

4   Council and Presidents.

5      MS. WEISSERT:  Good afternoon, your Honor,

6   Elizabeth Weissert also on behalf of the Ivy League

7   Council and Presidents.

8      THE COURT:  Anyone else standing?

9   Yes?

10      MR. POVICH:  Lon Povich of Anderson & Kreiger, on

11   behalf of the NCAA.

12      MR. MARQUARDT:  Last, but hopeful not least, your

13   Honor, Chris Marquardt, also on behalf of the NCAA.

14      THE COURT:  All right.  Please be seated.  It

15   would be helpful if the next time you speak you state

16   your name so the Court Reporter can sort you all out.

17      Let's, um -- let's start considering where we

18   stand now.  Quite a bit has happened since this case was

19   filed.  So let's just start with the plaintiffs.

20      Are you seeking to proceed now, today, against all

21   four defendants?

22      MR. BOCK:  Yes, your Honor.

23      THE COURT:  And break them out.  What relief do

24   you seek as to each one?

25      MR. BOCK:  Your Honor, we seek --

1         THE COURT:  Today.

2         MR. BOCK:  Yes, sir.

3         We seek, um, declaratory relief, um, related to

4    the Ivy League championships that occurred in 2022,

5    adjusting the results of those championships due to the

6    participation by --

7         THE COURT:  That identifies it enough.

8         MR. BOCK:  Thank you.

9         THE COURT:  Not argument, just what relief do you

10   seek, declaratory relief?

11        MR. BOCK:  We're also seeking compensatory

12   damages.

13        THE COURT:  Damages?

14        MR. BOCK:  Yes, your Honor.  We're seeking nominal

15   damages.

16        THE COURT:  Nominal damages?

17        MR. BOCK:  Yes, your Honor.

18        THE COURT:  What's the difference between

19   "compensatory" and "nominal"?

20        MR. BOCK:  Well "nominal damages" are not

21   "compensatory damages," that could be a dollar.  All

22   right?  So to make a statement --

23        THE COURT:  So damages.  And go ahead.  Against

24   the other defendants?

25        MR. BOCK:  Against each of the defendants.

```
 1          THE COURT:  The same?

 2      MR. BOCK:  Except for, um, the -- the change in

 3  records requests goes to Harvard, as to pool records, to

 4  the Ivy League, as to Ivy League records, and that claim

 5  does not persist against the NCAA.

 6          THE COURT:  And that claim -- and that's because

 7  the records have been changed by the NCAA, right?

 8      MR. BOCK:  No, your Honor.  It's because the NCAA

 9  doesn't -- is not the recordkeeping body for the Ivy

10  League.

11          THE COURT:  Very well.

12      Now shouldn't I -- in view of the *Georgia* case, an

13  earlier case filed, shouldn't I stay this case to see

14  how that one comes out?

15      MR. BOCK:  Your Honor, we believe that there's no

16  authority really for doing that.

17          THE COURT:  Try the action pending.

18      MR. BOCK:  Yeah, the first-to-file rule typically

19  is a matter of comity, and in this -- and typically it

20  only applies if there's substantial overlap of the

21  parties and claims, which we don't have here.

22          THE COURT:  Right, that's because you've got

23  Harvard and the Ivy League here?

24      MR. BOCK:  We have Harvard, the Ivy League, and we

25  have none of the current plaintiffs are plaintiffs in
```

```
 1    that case, and the relief sought is different, your
 2    Honor, because the claims are different.  But that case
 3    relates to the NCAA championships.  It also relates to
 4    ongoing prospective relief against the NCAA's
 5    transgender eligibility policies, which is not a claim
 6    in this case.
 7         THE COURT:  Um, very quickly, because this is now
 8    not the argument, how do the others feel about staying
 9    this case, um, just to see how the *Georgia* case comes
10    out?
11         (Silence.)
12         THE COURT:  Well I guess we can't be clear.
13         MR. STURGEON:  Your Honor, this is Jeff Sturgeon
14    speaking on behalf of Penn.  We take no issue with your
15    Honor staying the case pending resolution of --
16         THE COURT:  You've just assumed.  All right.
17         (Silence.)
18         MR. METLITSKY:  Your Honor, Anton Metlitsky on
19    behalf of Harvard.
20         We don't have any problem with staying the case,
21    although of course we think we should be out of it.
22         THE COURT:  I'm not speaking to that really.
23         (Pause.)
24         THE COURT:  All right, here's -- here's what I'd
25    like argument on.
```

1          Why, um -- let's start with Harvard.  Why
2     shouldn't I dismiss Harvard, because Harvard, as the
3     host to these events, hasn't injured the plaintiffs in
4     any sense recognized by the Title IX case law.  That's
5     what they argue.
6          Why is that wrong?
7          MR. BOCK:  Is that a question directed to the
8     plaintiffs, your Honor?
9          THE COURT:  Yes.
10         MR. BOCK:  All right.  Thank you.
11         For several reasons, your Honor.  First of all,
12    the plaintiffs' position is that Harvard participated in
13    what is essentially an agreement or a conspiracy amongst
14    the Ivy League, the Ivy League Council and Presidents,
15    to change the NCAA's ruling -- to put pressure on the
16    NCAA to change its rules and make a transidentifying
17    male eligible to compete specifically in the Ivy League
18    championships.  That's Point Number 1.
19         Point Number 2, is that the Ivy League
20    championship, which is what this case is about, um,
21    involves a -- the pool at Harvard University, which is
22    controlled and owned by Harvard, and the locker rooms at
23    Harvard, controlled and owned by Harvard.  Harvard knew,
24    because it participated in those precompetition
25    deliberations related to the rules and the disputes over

1    the rules, um, they knew that a man was going to be in

2    the locker room, and that a man, by the speaking terms

3    of biology, was going to be competing in the pool, and

4    that that man had previously competed on the

5    Pennsylvania -- the University of Pennsylvania's men's

6    team and had earlier in the season established the

7    leading times in the nation, um, far beyond what was

8    capable that season by many women.  So Harvard knew that

9    that conglomeration of facts and issues was going to

10   take place on its property, so it had a responsibility

11   to follow Title IX, which is to provide equal

12   opportunities for women, and not be deliberately

13   indifferent to what would happen in the locker room at

14   Harvard University's pool.

15        THE COURT:  Thank you.

16        And still now as to you, the question, how do you

17   deal with the Ivy League argument that it's not

18   federally funded?

19        MR. BOCK:  Your Honor, um, it cannot be that an

20   unincorporated association, which is just an

21   organization that's the sum of its parts, can, um --

22   that a group of schools can gather together -- that are

23   all subject to Title IX, can gather together in an

24   unincorporated association --

25        THE COURT:  That's the whole point, they're not.

1    The schools may be, but the association is not, it's not

2    federally funded and no suggestion that it is.

3         MR. BOCK:  Your Honor, under the, um, the CRRA

4    provision that we've cited to the Court in our brief,

5    um, the Civil Rights Restoration Act, there's a

6    provision that says that two entities -- two more

7    entities that are covered establish a third entity,

8    which is what happened here with the Ivy League, and

9    that that third entity can be liable under Title IX if

10   any of its parts are liable.

11        When you have -- and it's completely the decision

12   of the NCAA and the Ivy League to form an unincorporated

13   association, and when they did that, the parts of an

14   unincorporated association are its members, those are

15   schools, and those parts are subject to Title IX.  So as

16   a clear matter of statute, there is coverage over --

17        THE COURT:  I guess I don't understand what more

18   relief?  Now taking everything your way in this motion

19   to dismiss --

20        MR. BOCK:  Sure.

21        THE COURT:  -- that let's say your argument as to

22   Harvard factually carries the day and as to Penn carries

23   the day, um, what else is there here?

24        MR. BOCK:  Um --

25        THE COURT:  I mean you want -- the other members

1    of this association are liable?

2          MR. BOCK:  Yes.

3          THE COURT:  As members of the association?

4          MR. BOCK:  Yes.

5          THE COURT:  Instead you sued the League.

6          MR. BOCK:  We did, your Honor, and two of the

7    members of the League, yes.

8          THE COURT:  And in answer to my question, assume

9    that you can go forward as to them.

10          MR. BOCK:  As to them being --

11          THE COURT:  Harvard and Penn.

12          MR. BOCK:  Okay.

13          THE COURT:  Why do we need the League here?

14          MR. BOCK:  Well because the League -- the second

15    theory of liability, in addition to the Civil Rights

16    Restoration Act, is the control that the League, um,

17    exercises.  And you'll note in the pleadings that the

18    Universities point their fingers at the NCAA and at the

19    Ivy League.  And so we follow their rules.  We have to

20    follow their rules.

21          So you can't avoid a Title IX, um, obligation by

22    joining together and then being directed by the entity

23    that you created, when you joined together, not to

24    follow Title IX.  But that's what happened here.  And it

25    shouldn't happen again and --

1          THE COURT:  I understand the argument.  We'll hear

2     Harvard and we'll hear from the League.  That's the

3     point I want to focus on.

4          MR. METLITSKY:  Thank you, your Honor.  Anton

5     Metlitsky here for Harvard.

6          I think the claims with respect to Harvard, I

7     guess with respect to the complaint generally, sort of

8     rolls out into two categories, there's the talk about

9     eligibility that Thomas was allowed to swim, um, in the

10    -- under the NCAA policies and at the meet, and then

11    there's the way that the meet itself is run, which I

12    think is basically the claim of how the locker rooms

13    were set up.

14         As to that first category, Harvard was just

15    following NCAA policies, which they say are mandatory,

16    Harvard has no control over, and Penn's rostering

17    decision, which obviously Harvard has no control over.

18    So there's a standing problem, there's a traceability,

19    sort of redressability problem, because they're suing us

20    over something that we didn't do.  And then there's a,

21    um, for basically the same reasons, no violation,

22    because as to Harvard, Harvard did not make any

23    decisions with respect to eligibility.  They were in the

24    pool, which is their argument, but that just means they

25    had a meet at the pool and the meet was subject to the

1    NCAA policy.

2         As to the locker room, Harvard did control that.

3    But our argument there is twofold.  First, there's a

4    standing problem because none of the plaintiffs allege

5    that they actually shared a locker room with Lia Thomas,

6    so to the extent that that would even be an injury, and

7    the Ninth Circuit held that it's not, they don't even

8    allege that.  I think what they allege is that they took

9    pains to sort of avoid that possibility.  But that is

10   exactly the kind of theory of standing that the Supreme

11   Court rejected in *Clapper*, that you can't have sort of

12   like a, you know, speculative potential future injury

13   and then do something to avoid that speculative

14   potential future injury and then all of a sudden create

15   an injury for yourself.

16        And on the merits, um, you know we think there's a

17   strong argument that under *Bostock*, it would be a

18   violation of Title IX to require, um, Thomas to use a

19   separate locker room.  But even if that's not true,

20   that's what the Court in the Fourth Circuit held in

21   *Grimm.*  Even if that's not true, no one has ever held

22   that it would be a violation of Title IX, that Title IX

23   requires separate locker rooms, as the Third Circuit

24   held before *Bostock,* that's not true, there's no sense

25   in which is sex discrimination to not create separate

1    facilities.  And the regulation that they cite says you

2    can create separate facilities, but you don't have to.

3    So that's our basic argument.

4            THE COURT:  Thank you.

5            And for the Ivory League?

6            MR. KASTENBERG:  Your Honor, Stephen Kastenburg.

7    A few points, your Honor.

8            With respect to this issue of whether, um, because

9    the Ivory League is an unincorporated association, it

10   somehow does not have a separate existence, which seems

11   to be the gist of the plaintiffs' arguments.  I mean,

12   Number 1, the plaintiffs have chosen to sue the Ivory

13   League.  They could have chosen to sue every member of

14   the Ivory League if they thought there was a

15   "conspiracy," which was a word that was used today.  But

16   they have not sued the institutions, they've sued that

17   thing, which is an incorporated association called the

18   "Ivy League."

19           And then two points, your Honor.  First, under the

20   plain language of the statute, and then under **Smith I**, I

21   think that it's very clear that the plaintiffs' theory

22   has been foreclosed.

23           First, your Honor, with respect to the statute --

24   and by that I mean 20 USC 1687, the CRRA amendment, um,

25   the actual text of the statute is informative because it

1    says "For the purposes of this title, the term 'program

2    or activity,' and 'program,' mean all the operations on

3    them," and then they kind of have indented various

4    categories of things that could fall within a program or

5    activity.  One of which they focused on Section 4, is

6    "any other entity established by two or more of the

7    entities described in other paragraphs."

8         So that's -- those are indented, that's the

9    definition of "program or activity."  And then the text

10   comes back out, your Honor, and finishes.  "So the term

11   'program or activity' means all the operations of these

12   things 'any part of which is extended federal financial

13   assistance'."

14        So the "any part of which," your Honor, very

15   clearly modifies the phrase "the program or activity."

16   So it is the Ivy League itself, the thing that has been

17   formed by other entities, um, that must be extended

18   federal financial assistance, and it's not.

19        And if the statute weren't clear enough, your

20   Honor, the plaintiffs' argument runs headlong into the

21   Supreme Court's holding in *Smith I*.  There's simply no

22   possibility that *Smith I* was decided consistent with the

23   plaintiffs' argument.

24        If you look on Pages 462, 466, and 469, your

25   Honor, of that case, what the case is saying -- first of

1   all at 462 it's the general holding, "Dues, payments,

2   from the recipients of federal funds do not suffice to

3   render the dues recipient subject to Title IX."

4         So that's exactly what they're arguing here, that

5   because the Ivy League has members who presumably pay

6   funds into the Ivy League, that the payment of those

7   funds qualifies.

8         But then the Supreme Court gets, your Honor, more

9   specific, and on Page 466 it specifically addresses the

10  same subsection of 1687, Subsection 4.  And, your Honor,

11  it says, um, it quotes 1687(4), and then what it says is

12  that the "Any part" -- and this is about the NCAA,

13  another unincorporated association, "Any part of the

14  NCAA that received federal assistance means all

15  operations would be subject to Title IX."

16        So the plaintiffs are saying "part" means any of

17  our members.  What the Supreme Court is saying is what

18  "part" means that if one section of the association gets

19  funding, then all of the association is subject to Title

20  IX.

21        And then the final point, your Honor, from **Smith**,

22  is that, um -- is, your Honor, and we're on Page 469,

23  here is where it gets again very specific.  It says "The

24  NCAA is created and comprised of schools that receive

25  federal funds, just like the Ivy League, an

1   unincorporated association, and the association governs
2   its members with respect to athletic rules."
3       And the respect -- in this respect, the Third
4   Circuit observed that "The relationship between the
5   association and its members is qualitatively different
6   from that between an airline and airline operators.
7   Evident as the distinction may be, they do not bear on
8   the narrow question we decide today, whether an entity
9   that received dues from the recipients of federal funds
10  is for that reason a recipient itself."
11      So the Supreme Court is addressing Section 4 and
12  saying that "part" refers to the operations, and then
13  the Supreme Court is saying that the NCA, just like the
14  Ivy League, is an association created by and comprised
15  of its members, but that that is irrelevant to the
16  Supreme Court's holding that simply receiving funds
17  makes you subject to Title IX.
18      THE COURT:  I follow the argument.  All right.
19      MR. KASTENBERG:  Thank you, your Honor.
20      THE COURT:  I just want to be clear.  Did I ask,
21  the NCAA's represented here?
22      MR. MARQUARDT:  Yes, your Honor.
23      THE COURT:  That's right.
24      Last but not at least, your position with respect
25  to the stay?

1          MR. MARQUARDT:  So we have cited case law, your

2     Honor, and the cases, as we read them, indicates that

3     your Honor does have discretion to enter a stay.

4          THE COURT:  All right, here's what we're going to

5     do.

6          The Court does allow the motion to dismiss of the

7     Ivy League -- the Ivy League, um, substantially for the

8     grounds raised in its brief and argued here.  The Court

9     takes under advisement the position of Harvard.  The

10    Court, um, advises that if the Court thinks it

11    appropriate to dismiss Harvard, the two cases, the one

12    in Georgia and this case, are sufficiently similar that

13    this Court ought stay its hand.  If Harvard is not

14    dismissed, then I will allow further oral argument,

15    should the parties want it, as to the motion of the

16    University of Pennsylvania to dismiss, because I'm not

17    staying then and I'm getting into the merits.  That's

18    the order of the Court.  We'll take so much of it as I

19    just mentioned under advisement.

20         MR. MARQUARDT:  Your Honor, if I may?

21         THE COURT:  Yes.

22         MR. MARQUARDT:  I didn't -- perhaps I didn't hear

23    your -- did the Court enter a ruling with respect to the

24    NCAA?

25         THE COURT:  No.  In other words, you're not

1  dismissed, maybe the case will be stayed.

2         MR. MARQUARDT:  Okay.

3         THE COURT:  That's my position.

4         MR. MARQUARDT:  All right.

5         THE COURT:  That if it's not -- well I said I'll

6  hear the University of Pennsylvania, and I'll hear you

7  too, if I'm not going to stay it.

8         All right.

9         (Ends, 3:00 p.m.)

```
 1              C E R T I F I C A T E

 2

 3       I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

 4    hereby certify that the forgoing transcript of the

 5    record is a true and accurate transcription of my

 6    stenographic notes, before Judge William G. Young, on

 7    Monday, July 21, 2025, to the best of my skill and

 8    ability.

 9

10

11

12

    /s/ Richard H. Romanow 08-04-25
13  _____
    RICHARD H. ROMANOW   Date
14

15

16

17

18

19

20

21

22

23

24

25
```